CHAD A. READLER
Acting Assistant Attorney General, Civil Division
BRIAN STRETCH
United States Attorney
SARA WINSLOW
Chief, Civil Division
DOUGLAS CHANG
Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7102
    Facsimile:  (415) 436-6748
    E-mail: douglas.chang@usdoj.gov

MICHAEL D. GRANSTON
SARA McLEAN
JEFFREY A. HALL
Attorneys, Civil Division
    P.O. Box 261
    Ben Franklin Station
    Washington, D.C. 20044
    Telephone:  (202) 353-1329
    Facsimile:   (202) 514-0280
    E-mail: jeffrey.a.hall@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>GWEN THROWER<br><br>               Plaintiff and Relator,<br><br>      v.<br><br>ACADEMY MORTGAGE CORP.<br>          Defendant. | CASE NO. CV-16-02120-EMC<br><br>**UNITED STATES'<br>NOTICE OF MOTION AND MOTION TO<br>DISMISS RELATOR'S AMENDED<br>COMPLAINT;**<br><br>**MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT**<br><br>The Honorable Edward M. Chen<br>Courtroom 5, 17th Floor<br>Date: August 24, 2017<br>Time: 1:30 p.m. |

U.S. MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV-16-02120-EMC

1           **NOTICE OF MOTION AND MOTION TO DISMISS**

2    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3       **PLEASE TAKE NOTICE THAT** on August 24, 2017, at 1:30 p.m., or as soon

4 thereafter as the matter may be heard by the Court, in the courtroom of the Honorable Edward

5 M. Chen, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, real party

6 in interest the United States of America ("United States") will and hereby does move the Court,

7 pursuant to 31 U.S.C. § 3730(c)(2)(A), for an order dismissing each claim for relief asserted in

8 Relator's Amended Complaint.

9       The United States brings this motion on the grounds that it has a valid governmental

10 purpose in dismissing the case, and that there is a rational relationship between dismissal and

11 accomplishment of the purpose.  It respectfully submits that this motion to dismiss, which

12 constitutes a determination by the United States as a matter of its prosecutorial discretion that

13 Relator's pursuit of this case is contrary to the United States' interests on whose behalf Relator is

14 supposed to be pursuing the case, should be decided before the Defendant Academy Mortgage

15 Corporation's Motion to Dismiss the Amended Complaint on the merits (ECF No. 50) and

16 Defendant Academy Mortgage Corporation's Amended Motion to Transfer Venue (ECF No.

17 48), and if granted obviates the need for the Court to consider Academy's motions.

18       The United States' motion is based on this Notice of Motion and Motion, the attached

19 Memorandum of Points and Authorities, all pleadings and papers filed in this action, oral

20 argument of counsel, and any other matters as may come before the Court.

21

22

23

24

25

26

27

28

U.S. MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV-16-02120-EMC

**STATEMENT OF ISSUES TO BE DECIDED**

**CIVIL LOCAL RULE 7-4(a)(3)**

1.   Whether Relator's Amended Complaint should be dismissed where the United States, real party in interest, has moved for dismissal pursuant to 31 U.S.C. § 3730(c)(2)(A) and has shown a valid government purpose in dismissing the case and a rational relationship between dismissal and accomplishment of the purpose.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

On April 21, 2016, Plaintiff-Relator, Gwen Thrower ("Relator"), filed a *qui tam* action alleging that Defendant Academy Mortgage Corp. ("Academy"), violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 *et seq.*, by causing the submission of false claims for Federal Housing Administration (FHA) mortgage insurance by endorsing ineligible loans for FHA mortgage insurance. Compl. (ECF No. 1.) In her initial complaint, Relator alleged that Academy, a participant in HUD's Direct Endorsement program, caused its underwriters to endorse loans for FHA insurance that were in violation of FHA requirements. Compl. (ECF No. 1.) In the few pages of the complaint detailing Academy's conduct, the complaint copied many of the general allegations from a prior complaint filed by the United States against a different lender. *Compare id.* ¶¶ 27–91 *with United States v. Quicken Loans, Inc.*, No. 15-cv-00613, ECF No. 1, ¶¶ 28–97 (D.D.C. April 23, 2015). For example, relator's claim that Academy used a "management exception process"—in which underwriters received management approval to ignore FHA underwriting guidelines—is borrowed virtually verbatim from the Government's complaint against *Quicken*. *Compare id.* ¶¶ 115–17 *with* Compl. ¶¶ 99–101. (ECF No. 1.) Notably, Relator's complaint lacked virtually any specific details unique to Academy, such as even the names of the Academy employees that allegedly told underwriters to "make it work." *See, e.g.*, Compl. ¶ 98. (ECF No. 1.) In addition, Relator's complaint made no allegation that the misconduct at issue extended beyond her single year at Academy or the specific branch in which she worked. Notably, even after her complaint was filed, all of the Academy branches as a whole had submitted only three claims for insurance to HUD for loans endorsed during her time at Academy—totaling less than one million dollars.

After investigating these limited allegations, the United States declined to intervene in the action, pursuant to 31 U.S.C. § 3730(b)(4)(B), in December 2016. Relator elected to proceed with the action, and filed an amended complaint on April 27, 2017. It is nearly double the length of the original. It adds additional allegations (such as violations of HUD's rule against underwriter commissions, never mentioned in the original complaint) and now names some

1    Academy employees allegedly complicit in the fraud.  Nevertheless, the amended complaint

2    continues to lack specificity in key areas.  For, example, it describes problems with only a few

3    loans, identifies no more than five loans that were ineligible for FHA insurance, and does not

4    identify a single ineligible loan for which FHA insurance was actually claimed.  Relator filed the

5    amended complaint after the United States declined to intervene without a seal period for the

6    United States to investigate.

7            Academy has moved to dismiss the amended complaint (ECF No. 50), and the motion is

8    fully briefed and pending before the Court, with argument set for July 27, 2017.[1]

9    **II.      STATEMENT OF LEGAL AUTHORITY**

10           **A.   The False Claims Act**

11           The FCA enables the United States to recover monies lost due to the submission of false

12   claims.  31 U.S.C. § 3729.  Among the unique features of the FCA is that it allows private

13   parties, known as relators, to bring an action on behalf of the United States through filing a *qui*

14   *tam* action.  A *qui tam* suit is brought in the name of the United States, but a relator has a right to

15   a share of up to thirty percent of the recovery, plus attorneys' fees and costs.  *Id*. § 3730(b), (d).

16           The *qui tam* provisions include a number of mechanisms to ensure that the United States

17   retains substantial control over lawsuits brought on its behalf for fraud allegedly perpetrated

18   against it.  Among other things, the FCA directs that the relator must file his or her complaint

19   under seal and serve it, together with a "written disclosure of substantially all material evidence

20   and information the person possesses," upon the United States.  *Id*. § 3730(b)(1), (2).  The

21   United States has a period of time to investigate the allegations and elect whether or not to

22   intervene in the litigation that lasts at least 60 days with extensions for good cause.  *Id*.

23   § 3730(b)(2), (3).

24

25   [1] The Government intends to file a Statement of Interest pursuant to 28 U.S.C. § 517 (authorizing the Attorney General of the United States to attend to the interests of the United

26   States in any action in federal or state court) setting forth its position on the substantive issues raised by Academy's motion to dismiss.  However, the Government suggests that the Court

27   postpone ruling on Academy's motion to dismiss and motion to transfer pending a decision on the Government's dismissal motion, which the Government submits should be resolved first, and

28   if granted, would obviate the need for the Court to resolve Academy's motions.

1    If the United States intervenes in the action, "the action shall be conducted by the

2 Government." *Id*. § 3730(b)(4)(A).  The government assumes "the primary responsibility for

3 prosecuting the action" and is not bound by any act of the relator.  *Id*. § 3730(c)(1).  The relator

4 remains a party to the suit, but the government may settle the case over the relator's objection, *id*.

5 § 3730(c)(2)(B), or may otherwise seek to limit the relator's participation in the litigation, *id*.

6 § 3730(c)(2)(C).

7    Even if the United States declines to intervene in the action, the government retains

8 substantial control over the action.  For example, the Court may stay discovery in the *qui tam*

9 action if it interferes with the government's investigation or prosecution of another matter.  *Id*.

10 § 3730(c)(4).  The relator cannot dismiss the action without written consent of the Attorney

11 General.  *Id*. § 3730(b)(1).  And if the Attorney General initially declines to intervene in the suit,

12 the court "may nevertheless permit the Government to intervene at a later date upon a showing of

13 good cause."  *Id*. § 3730(c)(3).

14    Most important for purposes of the present motion, the FCA authorizes the United States

15 to dismiss the action over the relator's objection:

16       The Government may dismiss the action notwithstanding the objections of the
17       person initiating the action if the person has been notified by the Government of
         the filing of the motion and the court has provided the person with an opportunity
18       for a hearing on the motion.

19 *Id*. § 3730(c)(2)(A).  The United States can move to dismiss a FCA action even though it did not

20 intervene in the litigation, as it remains the real party in interest.  *See United States ex rel.*

21 *Sequoia Orange Co. v. Baird-Neece Packing Corp., et al.*, 151 F.3d 1139, 1145 (9th Cir. 1998)

22 (noting that § 3730(c)(2)(A) "may permit the government to dismiss a qui tam action without

23 actually intervening in the case at all"); *Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 932

24 (10th Cir. 2005) (affirming dismissal after declination); *Swift v. United States*, 318 F.3d 250,

25 251-52 (D.C. Cir. 2003) (affirming dismissal prior to intervention); *cf. United States ex rel. Hyatt*

26 *v. Northrop Corp.*, 91 F.3d 1211, 1215 (9th Cir. 1996) ("[*Q*]*ui tam* plaintiffs are merely agents

27 suing on behalf of the government, which is always the real party in interest.") (citing cases).

28

**B.  The United States' Decision to Dismiss a *Qui Tam* Case is a Matter of Prosecutorial Discretion Entitled to Deference.**

The Ninth Circuit, in *Sequoia Orange*, adopted a highly deferential standard of review for a government motion to dismiss a *qui tam* case pursuant to 31 U.S.C. § 3730(c)(2)(A).  151 F.3d at 1145.  In order to dismiss a matter such as this, the United States need only (1) identify a "valid government purpose" for dismissing the case, and (2) show a "rational relationship between dismissal and accomplishment of the purpose." *Id*. (quotations omitted).  If the United States satisfies this two-step test, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id*. (internal quotation marks omitted).

In developing this test, the Ninth Circuit observed that "the decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws," and the dismissal provision in the FCA should not be construed to grant the Judiciary an impermissible power to approve or disapprove the Executive's exercise of prosecutorial discretion. *Id*. at 1143.  Consequently, the Ninth Circuit reasoned that when a court considers a motion by the government to dismiss a *qui tam* case, it should "respect[] the Executive Branch's prosecutorial authority by requiring no greater justification of the dismissal motion than is mandated by the Constitution itself." *Id*. at 1146.  There are very good reasons for this type of deference:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise.  Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.  An agency generally cannot act against each technical violation of the statute it is charged with enforcing.  The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Hecker v. Chaney*, 470 U.S. 821, 831-32 (1985).  In this matter, the government's legitimate purpose for dismissal is the preservation of government resources.  As this purpose is both

1  legitimate and rationally related to dismissal, the United States meets its burden and this matter

2  should be dismissed.

3  **III.     DISCUSSION**

4
       **A. Continued Pursuit of this Case Imposes An Unwarranted Burden on the United
5          States.**

6          Dismissal of the complaint is warranted because of the burdens the litigation has placed

7  and can be expected to place on the government.  This case follows in the footsteps of other

8  cases alleging fraud in mortgage origination in which the United States has either litigated or

9  reached a settlement, including both *qui tam* actions and cases brought by the United States in

10  the first instance.  *See, e.g., United States ex rel. Dougherty v. Guild Mortg. Co.*, No. 16-cv-2909

11  (C.D. Cal.); *Quicken Loans*, No. 15-cv-00613; *United States v. Wells Fargo Bank, N.A.*, 12-cv-

12  7527 (S.D.N.Y.).  The United States has chosen which cases to pursue with its limited resources

13  with great care.  After careful review of Relator's complaint, her written disclosures, all other

14  information known to her, and other additional information available to the government, the

15  United States declined to use its resources to pursue this case.  However, Relator's continued

16  pursuit of the case will necessarily entail expenditure of government resources.

17          The goal of minimizing expenses and government resources is "a legitimate objective,

18  and dismissal of the suit is furthered by that objective." *Swift*, 318 F.3d at 254; *see Sequoia*

19  *Orange*, 151 F.3d at 1146.  As noted above, in a *qui tam* action, the relator sues on behalf of the

20  United States, for fraud against the United States, to recover damages suffered by the United

21  States.  Accordingly, even where the United States declines to intervene in a *qui tam* action, its

22  resources often are still burdened if the relator opts to pursue the case.  Such has already been the

23  case here.

24          If the litigation were to proceed, the United States would face continuing burdens.  The

25  theories underlying Relator's claims, appearing in the explanatory sections of the complaint

26  copied verbatim from the government's briefs in other litigation, are also being litigated in that

27  other litigation.  *See, e.g.*, Mot. to Dismiss, *Guild Mortg.*, No. 16-cv-2909, ECF No. 33.  The

28

1   United States has actively monitored Academy's motion to dismiss the amended complaint, and,

2   as noted *supra*, will seek to share with the Court its position on arguments raised by Academy

3   that could impact many of its other cases.  If this case moves forward, the United States expects

4   to be further burdened by discovery requests that tax many of the same resources being used in

5   other litigation and investigations.  Both parties are expected to file burdensome *Touhy* requests

6   for HUD documents and HUD employee testimony, *see* 24 CFR §§ 15.021–.206, as occurred in

7   *Quicken Loans* and *Wells Fargo*.  The same HUD personnel who are already being diverted from

8   their regular tasks to respond to other discovery requests (and to investigatory inquiries) will be

9   further burdened by requests in this case.  Government resources will be required to monitor this

10  process and assist in any depositions and document productions that proceed under *Touhy*.

11  Following discovery, the United States would further monitor and participate in any briefing or

12  settlement discussions, and the same HUD employees relevant to discovery would be potential

13  witnesses at any trial.

14          Having already spent resources investigating Relator's claims, reviewing the merits of the

15  case as presented by Relator, and monitoring the case after declination, the United States has the

16  right to undertake a cost-benefit analysis and to conclude it is not in the public interest to spend

17  further time and resources on Relator's litigation of this matter.  Accordingly, the additional

18  burdens that litigation of this case would impose on the United States present a rational basis for

19  the government to seek dismissal under § 3730(c)(2)(A).  *See, e.g., Sequoia Orange*, 151 F.3d at

20  1146 ("the government can legitimately consider the burden imposed on taxpayers by its

21  litigation, and that, even if the relators were to litigate the FCA claims, the government would

22  continue to incur enormous internal staff costs"); *Swift*, 318 F.3d at 254 (holding, in the

23  alternative, that "[a]lthough [the relator] believes that the costs would be relatively small, the

24  government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the

25  suit furthered that objective"); *c.f. United States ex rel. California v. Washington Township*

26  *Health Care Dist.*, 2006 WL 2053494, No. 06-cv-00261 (N.D. Cal. July 21, 2006) (noting, in

27  context of relator's voluntary motion to dismiss qui tam suit, that "consideration of cost" is a

28  "sufficient justification to approve dismissal" of action).  It is also appropriate for such a

1  dismissal to occur now, rather than after any further developments, to conserve maximal

2  government and judicial resources.  It makes no difference whether further litigation would

3  prove that the complaint has merit.  *See Sequoia Orange*, 151 F.3d at 1134 (affirming dismissal

4  of action despite Government's concession, for purposes of motion to dismiss, that the action

5  was meritorious).

6      **B.  No Evidentiary Hearing is Required**

7          Should the Relator request an evidentiary hearing, the Court has discretion to deny such a

8  hearing.  *Swift*, 318 F.3d at 253.  In *Swift*, the D.C. Circuit concluded that "the function of a

9  hearing when the relator requests one is simply to give the relator a formal opportunity to

10  convince the government not to end the case," and not to give the Court a role in second-

11  guessing the United States' exercise of its prosecutorial discretion.  *Id.* at 253; *see also United*

12  *States ex rel. Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008).  As the *Swift* Court

13  explained: "Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical

14  prerogative to decide which cases should go forward in the name of the United States."  *Swift*,

15  318 F. 3d at 253.  While the district court in *Ridenour* provided the relators with a five-day

16  evidentiary hearing, it did so before the *Swift* case was decided.  After *Swift*, the Tenth Circuit

17  suggested that a hearing is not always necessary.  "These hearings, however, are only to be

18  granted if relators can show a 'substantial and particularized need for a hearing.'"  *Ridenour*, 397

19  F.3d at 931 (citing to the Congressional history, S. Rep. 99-345, at 26 (1986), *reprinted in* 1986

20  U.S.C.C.A.N. 5266, 5291).  The *Ridenour* Court went on to clarify that the notice and hearing

21  provision should not be interpreted to "pose a significant burden for the government or courts."

22  *Id.* at 931 n.10.  The Ninth Circuit has similarly noted that "Congress apparently intended that

23  the provision authorizing relators to formally object . . . should not pose a significant burden for

24  the government or courts."  *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.11 (9th Cir.

25  1993).  Given the record established to date, the government believes that an evidentiary hearing

26  is neither necessary nor appropriate.  A hearing would not change the United States' assessment

27  of how best to use its resources nor would it reveal some unlawful purpose regarding the same.

28

1    **IV.    Conclusion**

2        The government moves to dismiss this action brought in its name for the legitimate

3    purpose of conserving scarce resources that would need to be expended by the government to

4    monitor this case and respond to pleadings, *Touhy* requests, and trial subpoenas.  As the Relator

5    cannot establish that this reason is arbitrary, capricious, fraudulent or illegal, the government's

6    motion to dismiss should be granted.

                                    Respectfully submitted,

7
                                    CHAD A. READLER
8                                   Acting Assistant Attorney General

9                                   BRIAN STRETCH
                                    United States Attorney
10

11   Dated: July 19, 2017           By:  _____
                                         DOUGLAS CHANG
12                                       Assistant United States Attorney

13

14   Dated: July 19, 2017           By:  _____
                                         MICHAEL D. GRANSTON
15                                       SARA McLEAN
                                         JEFFREY A. HALL
16                                       Civil Division, Department of Justice
                                         Attorneys for the United States
17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.    **Conclusion**

The government moves to dismiss this action brought in its name for the legitimate

purpose of conserving scarce resources that would need to be expended by the government to

monitor this case and respond to pleadings, *Touhy* requests, and trial subpoenas.  As the Relator

cannot establish that this reason is arbitrary, capricious, fraudulent or illegal, the government's

motion to dismiss should be granted.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIAN STRETCH
United States Attorney

Dated: July 19, 2017                    By:    _____
DOUGLAS CHANG
Assistant United States Attorney

Dated: July 19, 2017                    By:    _____
MICHAEL D. GRANSTON
SARA McLEAN
JEFFREY A. HALL
Civil Division, Department of Justice
Attorneys for the United States