J. NELSON THOMAS (admitted *pro hac vice*)
JONATHAN W. FERRIS (admitted *pro hac vice*)
MICHAEL J. LINGLE (admitted *pro hac vice*)
ANNETTE M. GIFFORD - 270777
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
Email:       nthomas@theemploymentattorneys.com
             jferris@theemploymentattorneys.com
             nthomas@theemploymentattorneys.com
             amgifford@gmail.com

SANFORD JAY ROSEN – 062566
VAN SWEARINGEN – 259809
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       srosen@rbgg.com
             vswearingen@rbgg.com

Attorneys for
RELATOR GWEN THROWER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA ex rel. GWEN THROWER,

  Plaintiff,

  v.

ACADEMY MORTGAGE CORPORATION,

  Defendant.

Case No. 16-CV-02120-EMC

**RELATOR'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS**

Judge: Hon. Edward M. Chen
Date:  November 9, 2017
Time:  1:30pm
Courtroom: 5, 17th Floor

## PRELIMINARY STATEMENT

The United States' Motion to Dismiss should be denied because there is no evidence to support it. The United States bears the initial burden of identifying a valid government purpose warranting dismissal and a rational basis between dismissal and the governmental purpose. Despite that burden, there is absolutely no evidence before this Court that supports the United States' position, and in fact, the record evidence shows that the United States' actual interest lies with the continued pursuit of this action by Relator. As the United States has therefore failed to meet its initial burden for dismissal, the United States' motion must be denied.

## FACTS

Relator Gwen Thrower ("Relator") originally filed this action against Defendant Academy Mortgage Corporation ("Academy") on April 21, 2016, followed by the filing of any amended complaint on April 27, 2017. *See* Affirmation of Jonathan W. Ferris dated September 25, 2017 ("Ferris Aff.") at ¶ 3. Relator's amended complaint alleges violations of the False Claims Act and ensuing damages to the United States Department of Housing and Urban Development ("HUD") in connection with Academy's origination of residential mortgage loans underwritten and approved by Academy and endorsed for Federal Housing Administration ("FHA") insurance. *Id*. at ¶ 4.

Under the False Claims Act, the United States is entitled to three times the amount of damages the United States sustains as a result of a False Claims Act violation. 31 U.S.C. § 3729(a)(1). Additionally, a defendant is liable for a civil penalty for each violation of the False Claims Act in the amount of at least $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, which is currently at least $10,957 per violation and up to $21,916 per violation. 31 U.S.C. § 3729(a)(1); *see also* 82 FR 9131. Even if there are not actual damages to the United States, the United States may still recover civil penalties under the False Claims Act. *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (*citing Rex Trailer Co. v. U.S.*, 350 U.S. 148, 153 n.5 (1956)).

*Academy's Fraudulent Underwriting Practices*

As discussed in Relator's Amended Complaint, *see* Docket Number ("Dkt. No.") 45, FHA provides insurance against losses on mortgage loans to single family home buyers originated and held by approved lenders. *Id*. at ¶ 6. Under this program, FHA insures loans so long as they satisfy certain requirements and has outsourced to lenders the task of underwriting loans, who thereby profit from the approval of loans. *Id*. at ¶¶ 11-15. For these loans, FHA guarantees that mortgage holders will be reimbursed by the government if the borrower ultimately does not repay the loan. *Id*. at ¶ 14. In other words, because the United States insures the loans, lenders suffer no risk of loss if the loan fails. *Id*. at ¶ 16. That means that there is a strong incentive for lenders to endorse as many loans as possible, even those that are not qualified, in order to maximize profits, provided the lender is not caught in the process. *Id*. at ¶ 17. Therefore, as ensuring that lenders only endorse loans that meet government mortgage requirements is an essential part of the program, the government requires lenders to conduct due diligence on loans before endorsing them for government insurance, and relies on the lenders' certifications to the government in regards to their conduct. *Id*. at ¶¶ 19-20.

Despite these requirements, Academy's management instituted and encouraged practices that led underwriters to break HUD rules and to approve ineligible loans. *Id*. at ¶ 27. Academy established a culture that valued getting a loan approved and endorsed for government insurance over complying with the government's rules. *Id*. at ¶ 30. Academy's aim was to get loans insured by the United States and sold for a profit—even when Academy could not truthfully certify to the government that the loan qualified for government insurance. *Id*.

Relator's amended complaint describes in detail the numerous ways Academy violated the rules governing FHA insurance, rendering its loans ineligible for that insurance.  These violations included pressuring employees to approve ineligible loans for government insurance, allowing managers to make "exceptions" to government-required conditions on files, allowing sales employees who did not have the proper Direct Endorsement certification required to underwrite government loans to remove or override an underwriter's conditions, improperly paying bonuses

to underwriting employees in violation of the government regulations, adversely treating employees who did not approve loans, repeatedly running the automated underwriting system to "work backwards" to find values that would allow a loan to be approved, hiding or intentionally excluding adverse documentation, and disregarding underwriting rules relating to borrowers' income calculations, debt obligations, property tax amounts, and gift funds. *Id*. at ¶¶ 159-434. None of these actions are permitted by the FHA guidelines and disqualify Academy's loans from government insurance.

These systemic violations of the FHA guidelines are borne out by Academy's default rates of borrowers who were seriously delinquent in terms of payments (payments over 90 days due, which often foreshadows complete default on the loan, and which HUD uses to assess lender performance). *Id*. at ¶¶ 508-09.  As discussed in Relator's amended complaint, these default rates have always exceeded the industry average by statistically significant amounts, including rates of 33% above the average of all other lenders over a recent period. *Id*. at ¶ 508. The default and delinquency rate of Academy's loans compared to all other lenders nearly reaches the 99% statistically significant confidence level, which is the highest conventional confidence level used. *Id*. at ¶ 509.  It would be difficult to imagine a mortgage lender performing worse.

### *In Hasty Fashion, the United States Declines to Intervene*

Following the filing of Relator's complaint and providing the United States with her written disclosure materials, Relator met with the United States on October 14, 2016 to discuss the allegations in her complaint. Ferris Aff. at ¶ 5.

On or about December 21, 2016, less than two months later, counsel for the United States informed Relator's counsel that the United States intended to decline to intervene in the action and on December 28, 2016, the United States filed its declination paperwork with the Court. *Id*. at ¶ 6. Given that the United States had declined to intervene, by statute, the Relator has the right to prosecute the case without further involvement of the United States. *See* 31 U.S.C. § 3730(c)(3) ("If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action.").

# ARGUMENT

## I. LEGAL STANDARD FOR DISMISSAL

The United States sets forth the showing it claims it needs to meet under 31 U.S.C. § 3730(c)(2)(A) to dismiss an action under a burden-shifting test citing *United States rel. Sequoia Orange Co. v. Baird-Neece Packaging Corp., et al.*, 151 F.3d 1139, 1145 (9th Cir. 1998). Under this standard, the United States must satisfy a two-step test: (1) identification of a valid governmental interest for dismissal, and (2) show a rational relationship between dismissal and accomplishment of that purpose. 151 F.3d at 1145. Only if the United States meets that initial burden does the burden shift to the relator to demonstrate that the dismissal is fraudulent, arbitrary and capricious, or illegal. *Id*.

## II. THE UNITED STATES' FAILS TO MEET ITS BURDEN UNDER *SEQUOIA ORANGE*

The United States does not identify the federal rule under which it submits its motion. In any event, whether under Rule 12(b)(6) or some other rule, the motion fails.

### A. Dismissal is Not Warranted Under Rule 12(b)(6)

To the degree that the United States' motion is made pursuant to Rule 12(b)(6), it fails. Motions pursuant to Rule 12(b)(6) are factually limited to those facts stated in the complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to [] moving papers, such as a memorandum in opposition…") (emphasis in original).

Here, Relator's amended complaint contains no factual support (and the United States cites to none from the amended complaint) for its motion. Indeed, of the 534 paragraphs in the amended complaint, none address a valid governmental interest for dismissal, or a rational relationship between dismissal and such interest. Thus, dismissal under Rule 12(b)(6) is not warranted.

### B. There is No Evidence To Support The United States' Motion to Dismiss

Even if the motion is pursuant to some other (unknown) rule, there still is no evidence to

support the motion either in the amended complaint or anything else the United States has submitted.

Clearly, the Local Rules require that motions be accompanied by affidavits or declarations that are supported by appropriate reference to the record. N.D. Cal. Rules 7-2(d); 7-5(a). Further, courts routinely deny or strike motions that contain facts only in their arguments or briefs that are not properly supported by affidavits or another form of admissible evidence. *Amerson v. Kindredcare,* No. C-12-05715 JCS, 2013 WL 632115, at *2 n.2 (N.D. Cal. Feb. 20, 2013) (plaintiff's statements in a brief were inadmissible because counsel did not provide a sworn declaration to facts included in a brief); *Zoom Elec., Inc. v. Int'l Broth. of Elec. Workers, Local 595*, No. C 11-1699 CW, 2013 WL 192515, at *4 (N.D. Cal. Jan. 17, 2013) ("To support the facts outside of the record underlying his [legal conclusions], [defendant] was required to submit admissible evidence."); *Foti v. Cty. of San Mateo*, No. C 00-4783 SI, 2001 WL 969044, at *2 n.1 (N.D. Cal. Aug. 17, 2001) *rev'd on other grounds*, 90 F. App'x 488 (9th Cir. 2003) ("facts outside the record must be presented by affidavits or depositions."); *Emerson v. N. Idaho College*, No. CV 05-425-N-LMB, 2006 WL 3253585, at *2 (D. Idaho Nov. 7, 2006) (striking facts asserted in only a memorandum of law as they were not properly submitted through declaration or affidavit).[1] Similarly, factual assertions presented as legal argument in a brief are not part of the record and will not be considered. *Perdana Capital Inc. v. Chowdry*, No. C 09-1479 RS (JL), 2010 WL 11475933, at *5 (N.D. Cal. Sept. 2, 2010); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988).

The lack of any evidence supporting the United States' motion is hardly surprising given

---

[1] Relator acknowledges that this Court has, in extremely limited circumstances, overlooked the requirements of the Local Rule 7-5(a) that factual contentions must be supported by an affidavit or declaration with appropriate citations to the record when the party who made the error was proceeding *pro se*. *See Lewis v. Doe*, No. 16-cv-01167-EMC, 2016 WL 4411818, at *2 (N.D. Cal. Aug. 19, 2016). However, given the legion of attorneys representing the United States, it is far from being a *pro se* litigant.

RELATOR'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS

the clear merits of this action. As alleged in Relator's amended complaint, Academy engaged in a widespread fraudulent scheme designed to defraud the United States and HUD by approving loans for FHA insurance that did not comply with the government's rules for approving and endorsing such loans. This included practices and policies such as pressuring employees to approve ineligible loans for government insurance, allowing managers to make "exceptions" to government-required conditions on files, allowing sales employees who did not have the proper Direct Endorsement certification required to underwrite government loans to remove or override an underwriter's conditions, improperly paying bonuses to underwriting employees in violation of the government regulations, adversely treating employees who did not approve loans, repeatedly running the automated underwriting system to "work backwards" to find values that would allow a loan to be approved, hiding or intentionally excluding adverse documentation, and disregarding underwriting rules relating to borrowers' income calculations, debt obligations, property tax amounts, and gift funds. Amended Complaint, Dkt. 45, ¶¶ 159-434.

Due to these pervasive and systemic underwriting issues, Academy's loan performance is very poor. Academy's FHA loans were so problematic that over a recent two year period discussed in Relator's amended complaint, loans from Academy resulted in claims against the government or had borrowers who were seriously delinquent in terms of payment, at rates that have always exceeded the industry average by significant amounts, including rates of 33% above the average of all other lenders. *Id.* at ¶ 508. In fact, the default and delinquency rate of Academy's loans compared to all other lenders nearly reaches the 99% statistically significant confidence level, which is the highest conventional confidence level used. *Id.* at ¶ 509.

In any event, there is no evidence supporting the United States' motion requiring it to show a valid governmental interest and a rational relation between dismissal and the accomplishment of a valid interest. Certainly, if any such evidence existed, the United States would have submitted it. The fact that no evidence has been submitted is therefore telling. Indeed, there is not one shred of evidence, not one document, not one affidavit, or anything other evidence in the record that supports the United States' motion. Given that there is no evidence to support the motion, it must

be denied.

## III. RELATOR IS ENTITLED TO AN EVIDENTIARY HEARING

In the unlikely event that this Court does not deny the motion for the reasons stated above, before the motion can be decided, Relator requests an evidentiary hearing on the motion as provided by the statute. *See* 31 U.S.C. § 3730(c)(2)(A) ("The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."); *see also Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 930 (10th Cir. 2005) (five-day evidentiary hearing held that included cross-examination of witnesses for the government); *Sequoia*, 151 F.3d at 1143 ("A hearing is appropriate 'if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations.'") (quoting S.Rep. No. 99–345, at 26 (1986)). Given the huge potential recovery for the United States and the lack of any evidence supporting dismissal, an evidentiary hearing is readily appropriate to address the questions relating to these issues.

## CONCLUSION

As the United States has failed to meet its burden because there is no evidence to support its motion, the United States' motion must be denied. In the unlikely event that the Court does not deny the motion due to the absence of any evidence in support of the motion, Relator requests an evidentiary hearing under 31 U.S.C. § 3730(c)(2)(A).

Dated: September 25, 2017

By: /s/ Jonathan W. Ferris
    J. Nelson Thomas
    Michael J. Lingle
    Jonathan W. Ferris
    Annette M. Gifford
    THOMAS & SOLOMON LLP
    693 East Avenue
    Rochester, NY  14607
    Telephone:  585-272-0540
    Facsimile:  585-272-0574

    Sanford Jay Rosen
    Van Swearingen
    ROSEN BIEN GALVAN &
    GRUNFELD LLP
    50 Fremont Street
    19th Floor
    San Francisco, CA 94105

    Counsel for Relator