UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ACADEMY MORTGAGE CORPORATIONN, <br><br> Defendant. | Case No. 16-cv-02120-EMC <br><br> **ORDER RE REQUEST FOR EVIDENTIARY HEARING** <br><br> Docket No. 60 |

## I. INTRODUCTION

Relator Gwen Thrower ("Relator") brought this *qui tam* action on behalf of the United States of America ("Government") against Defendant Academy Mortgage Corporation ("Academy Mortgage"), alleging violations of the False Claims Act ("FCA"). The Government moved to dismiss the action pursuant to 31 U.S.C. § 3730(c)(2)(A). *See* Docket No. 60 ("Mot."). The Relator requested an evidentiary hearing and both parties submitted briefing on whether evidentiary hearing was warranted. *See* Docket Nos. 79 (Relator's supplemental brief), 83 (Government's supplemental brief). For the reasons stated below, both Relator and the Government are **ORDERED** to proffer evidence as to whether there is a sufficient basis to believe that the Government's decision to seek dismissal is unreasonable, not a result of a full investigation, or based on arbitrary and improper considerations so as to warrant an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Under the Federal Housing Administration ("FHA") Direct Endorsement program, the Government insures residential mortgages and becomes fully liable for any mortgage loan that

defaults. *See* Docket No. 45 ("FAC") ¶ 7. Extensive regulations govern loans approved for this program, *id*. at ¶¶ 20-21, and lenders must annually certify compliance with these regulations to participate in the program. *Id*. at ¶¶ 120-26.

Relator alleges that Academy Mortgage, a lender approved for the program, has repeatedly and annually certified to the Government that it was complying with all of these FHA requirements, but was actually engaged in a fraudulent scheme to approve improper loan files to enrich itself at the expense of the taxpayers. *Id*. at ¶¶ 435-37. Defendant allegedly used a variety of methods to approve unqualified loans, such as pressuring underwriters and making exceptions to government-required conditions on file. *Id*. at ¶¶ 28-29. Relator asserts two causes of action under the FCA: violation of § 3729(a)(1)(A) for knowingly presenting false claims for payments or approval and violation of § 3729(a)(1)(B) for use of false statements. *Id*. at ¶¶ 525-34. Relator alleges that Academy's false certifications and noncompliance with governmental underwriting requirements resulted in ineligible loans being insured, and that since May 1, 2010, Academy has submitted at least 17 claims for government insurance, though it does not allege that these claims were for ineligible loans. *Id.* at ¶¶ 504-17.

Government is currently litigating the same type of mortgage origination fraud against Quicken Loans, Inc., and Wells Fargo Bank. *See* Docket No. 69-1 ("Reimer Decl."); *United States v. Quicken Loans*, No. 16-cv-14050-MAG-RSW, No. 15-cv-00613 (E.D. Mich.); *United States v. Wells Fargo Bank*, No. 12-cv-7527 (S.D.N.Y.). In the *Wells Fargo* case, United States produced more than 1.7 million documents in discovery, totaling more than 15 million pages. *See* Reimer Decl. at ¶ 6. In the *Quicken Loans* case, United States so far has responded to 196 Requests for Production and produced more than 100,000 documents in discovery, totaling 1 million pages. *Id.* at ¶ 8.

Relator filed the *qui tam* action against Academy Mortgage on April 21, 2016. *See* Docket No. 1. The Government investigated Relator's action and found that Relator's complaint copied many of the general allegations from a prior complaint filed by the United States against Quicken Loans and did not provide any details unique to Academy Mortgage. *See* Mot. at 2. In addition, the Government also found that Academy Mortgage had submitted only three insurance claims for

loans endorsed during Relator's one-year employment at Academy, totaling less than $1 million dollar. *Id*. Meanwhile Academy Mortgage, relying on public records, discovered ten insurance claims submitted for loans endorsed for the same period. *See* Docket No. 23 at 2 (Defendant's Motion to Dismiss the Complaint). The Government declined to intervene in the action pursuant to 31 U.S.C. § 3730 (b)(4)(B) on December 28, 2016. *See* Docket No. 10. Relator elected to proceed with the action and filed an amended complaint on April 27, 2017. *See* FAC. Relator alleged that Academy knowingly approved and certified loans that violated government rules, that Academy's management encouraged the practice of approving these ineligible loans, and that Academy made inaccurate calculations of borrowers' income to justify the loan approvals. *See id.* ¶¶ 23-29. Relator alleged that there have been at least 17 claims made for government insurance, from 2010 to the present, that have resulted in losses for the government, though Relator does not specify how many claims were due to ineligible loans. *See id.* ¶¶ 501-04. To further support this, Relator offered statistics that purport to show that loans generated by Academy, which resulted in claims against the government or became delinquent, were at rates that exceeded the industry average and "33% above the average of all other lenders." *See* Docket No. 45 ¶ 508.

The Government then filed a motion to dismiss Relator's amended complaint because continuing this case would be burdensome for United States, as the lack of strong evidence in its possession would likely result in the Relator propounding extensive discovery requests, much of which would be directed at the Government. *See* Mot. The Court heard arguments on the motion on November 30, 2017. The Court permitted supplemental briefing on whether an evidentiary hearing was appropriate. *See* Docket Nos. 75 (minute entry requesting supplemental briefing), 79 (Relator's supplemental brief), 83 (Government's supplemental brief).

### III. LEGAL STANDARD

Under the False Claims Act, "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action [the relator] if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Although the statute does not specify the type of hearing required, the Ninth Circuit, relying on the Senate Report for the False Claims

Amendments Act of 1986, noted that an evidentiary hearing "should be granted when the *qui tam* relator shows a 'substantial and particularized need' for a hearing." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.11 (9th Cir. 1993) (quoting S. Rep. No. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291). The relator is not entitled to an evidentiary hearing as a matter of right. *See Kelly,* 9 F.3d at 753 n.11 (quoting S. Rep. No. 99-345, at 26). Rather, the relator must "present a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary and improper considerations." *Id.* (quoting S. Rep. No. 99-345, at 26).[1] In *United States ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998), the Ninth Circuit again quoted this language from the Senate Report in describing the kind of rational basis review the Court applies in assessing the Government's motion to dismiss an FCA claim. *See also United States ex rel. Mateski v. Mateski*, 634 Fed. Appx. 192, 194 (9th Cir. 2015) (quoting language from the Senate Report).

In assuming the application of this standard applies to determine whether an evidentiary hearing on the Government's motion to dismiss is warranted, the Ninth Circuit acknowledged that such a hearing "should not pose a significant burden for the government or courts," and that does not pose a separation of powers problem. *Kelly*, 9 F.3d at 753 n.11. A number of circuits have adopted the Ninth Circuit's standard for an evidentiary hearing. *See, e.g.*, *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 935-37 (10th Cir. 2005) (adopting the Ninth Circuit's burden-shifting

---

[1] The full quote from the Senate Report provides:

> Any objections filed by the qui tam plaintiff may be accompanied by a petition for an evidentiary hearing on those objections. The Committee does not intend, however, that evidentiary hearings be granted as a matter of right. We recognize that an automatic right could provoke unnecessary litigation delays. Rather, evidentiary hearings should be granted when the qui tam relator shows a 'substantial and particularized need' for a hearing. Such a showing could be made if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary and improper considerations.

S. Rep. No. 99-345, at 26.

and evidentiary hearing standards because of the protection they offer "to the rights of relators to judicial review of a government motion to dismiss," among other reasons); *United States v. Everglades College, Inc.*, 855 F.3d 1279, 1290 (11th Cir. 2017) (relying on the court's "inherent equitable power to give more than the FCA minimally commands" in holding that a court could give a *qui tam* relator "the opportunity to present and develop new evidence when he shows a substantial and particularized need for such a hearing"). The D.C. Circuit has taken a different position. *See Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003). In rejecting the Ninth Circuit's standard, *Swift* held that 31 U.S.C. § 3730(c)(2)(A) does not permit the judiciary to review the Government's decision to dismiss a *qui tam* action. *Id.* at 252. The court held that § 3730(c)(2)(A) gives the Government the "unfettered right to dismiss [the] action" and the function of the hearing under the statute is "simply to give the relator a formal opportunity to convince the government not to end the case." *Id.* at 252-53. *Swift* took issue with the Ninth Circuit's reliance on the Senate Report, saying it "relates to an unenacted . . . version of the 1986 amendment." *Id.* at 253. The unenacted version read: "If the Government proceeds with the action . . . the [relator] shall be permitted to file objections with the court and to petition for an evidentiary hearing to object to . . . any motion to dismiss filed by the Government." S. Rep. No. 99-345, at 42. Further, the unenacted version specifically required "a showing of substantial and particularized need" to grant an evidentiary hearing. *Id.* However, the enacted statute does not mention an "evidentiary" hearing per se; it simply requires that the court provide the relator with "an opportunity for a hearing on the motion" when the Government seeks dismissal. 31 U.S.C. § 3730(c)(2)(A).

It is not clear whether the change in the language of the statute as it was ultimately enacted was sufficiently material so as to render the legislative history inapt. Regardless, this Court is bound by Ninth Circuit precedent. The Ninth Circuit has now thrice indicated that an evidentiary hearing is appropriate "if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations." *Sequoia Orange*, 151 F.3d at 1145 (quoting S. Rep. No. 99-345, at 26). While courts generally apply rational basis analysis and afford difference to the exercise of prosecutorial discretion – the

Government's decision to seek dismissal of the relator's action may be characterized as such an exercise[2]—*Kelly* and *Sequoia Orange* indicate that a more searching form of rational basis analysis applies where the factual record, not any conceivable justification, matters. *Cf. Romer v. Evans*, 517 U.S. 620 (1996); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

The critical question at this juncture is what the relator must do to establish a "colorable claim." In this regard, *United States v. Armstrong*, 517 U.S. 456 (1996), is instructive since it involves the potential scrutiny of prosecutorial discretion. *Armstrong* concerned criminal defendants who were indicted for drug-related offenses. *See Armstrong*, 517 U.S at 458. The defendants moved for discovery, claiming that they had been selectively prosecuted on the basis of race. *Id.* The Court held that in view of the concerns about the separation of powers and the judicial policy of deferring to prosecuting decisions, the defendants first had to show "some evidence" of this unconstitutional selection to be entitled to discovery. *Id.* at 468. Thus, applying *Armstrong* here suggests a prima facie showing of arbitrariness or fraud be made before an evidentiary hearing should be granted.

Therefore, to establish a colorable claim to obtain an evidentiary hearing on the Government's motion to dismiss, a relator must present "some evidence" that the Government's decision to dismiss was unreasonable, not a result of a full investigation, or based on arbitrary and improper considerations. *Sequoia Orange*, 151 F.3d at 1145. Mere allegations as those contained in the amended complaint and in the briefs (such as data regarding the number of Academy loans resulting in false claims, the assertion that the Government conducted no investigation on any of the relevant claims submitted by Academy; that the Government relied solely on an inadequate two-year look back database; or that the Government retaliated because Relator did not file her Amended Complaint under seal, etc.) are insufficient. A prima facie showing based on facts must

---

[2] The prosecutorial discretion model arguably would apply with less force where the Government has chosen not to intervene and thus is not seeking to dismiss its own case. Notably, after declining to take an FCA case, the Government must first demonstrate "good cause" to intervene. 31 U.S.C. § 3730(c)(3). This would suggest its ability to seek dismissal of the Relator's case without intervening should likewise be so constricted. However, the Ninth Circuit has assumed that the Government may seek dismissal without moving to intervene. *See Sequoia Orange,* 151 F.3d at 1145 (citing *Kelly*, 9 F.3d at 753 n.10).

6

be made to warrant an evidentiary hearing.

## IV. CONCLUSION

For the foregoing reasons, Relator is **ORDERED** to proffer evidence that dismissal sought by the Government is unreasonable, that the Government has not fully investigated the allegations, or that the Government's decision to dismiss is based on arbitrary or improper considerations. Relator shall submit such evidence by May 17, 2018. The Government shall respond by presenting contrary or rebuttal evidence by May 31, 2018. The Court will then deem the matter resubmitted subject to further hearing if so ordered.

**IT IS SO ORDERED**.

Dated: April 25, 2018

_____
EDWARD M. CHEN
United States District Judge