1  J. NELSON THOMAS (admitted *pro hac vice*)
   JONATHAN W. FERRIS (admitted *pro hac vice*)
2  MICHAEL J. LINGLE (admitted *pro hac vice*)
   ANNETTE M. GIFFORD - 270777
3  THOMAS & SOLOMON LLP
   693 East Avenue
4  Rochester, New York 14607
   Telephone: (585) 272-0540
5  Email:          nthomas@theemploymentattorneys.com
                   jferris@theemploymentattorneys.com
6                  nthomas@theemploymentattorneys.com
                   amgifford@gmail.com
7

8  SANFORD JAY ROSEN – 062566
   VAN SWEARINGEN – 259809
9  ROSEN BIEN GALVAN & GRUNFELD LLP
   50 Fremont Street, 19th Floor
10 San Francisco, California 94105-2235
   Telephone:     (415) 433-6830
11 Facsimile:     (415) 433-7104
   Email:         srosen@rbgg.com
12                vswearingen@rbgg.com

13 Attorneys for
   RELATOR GWEN THROWER
14

15             UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
16

17 UNITED STATES OF AMERICA ex rel.          Case No. 16-CV-02120-EMC
   GWEN THROWER,
18                                           **RELATOR'S SUBMISSION OF**
                                             **EVIDENCE PURSUANT TO THE**
19               Plaintiff,                  **COURT'S APRIL 25, 2018 ORDER**

20        v.
                                             Judge:   Hon. Edward M. Chen
21 ACADEMY MORTGAGE CORPORATION,             Date:    To be determined
                                             Time:    To be determined
22               Defendant.                  Courtroom: 5, 17th Floor

23

24

25

26

27

28
                                                              16-CV-02120-EMC

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................... iii

**PRELIMINARY STATEMENT** ...............................................................1

**FACTS** .................................................................................................1

    *The Original Complaint* ......................................................................1

    *Relator Interview.* ...............................................................................2

    *Declination Explanation* ....................................................................2

    *Additional Investigation.* ...................................................................3

    *Government threatens retaliation if amended complaint is not filed under seal.* ..........3

    *Amended Complaint.* ..........................................................................5

    *Size of the Academy case – Governments' representations.* ..........................5

    *Size of the Academy case – Data.* .....................................................6

**ARGUMENT** ........................................................................................6

  **I.**    **Legal Standard** ..........................................................................6

  **II.**    **There is "some evidence" that the Government's purported rationale for dismissing the case is arbitrary and improper and reflects selective prosecution by the Government** .........8

      *A.*  *The actual data does not support the Government's purported rationale for dismissal and is therefore arbitrary and improper* ....................8

          1.  HUD data reveals the true value of claims made by Academy and that the Government's cost-benefit analysis was arbitrary and improper .....................9

          2.  HUD claims data also reveals that Academy's claims fall well within the cases the Government prosecutes and that the Government is engaging in selective prosecution here ...........10

      *B.*  *There is "some evidence" that the data relied on by the Government is misleading and therefore arbitrary and improper* ...............11

**III.**    **The Government Failed to Fully Investigate the Complaints in this Matter** .......12

    A.   *The Government concedes it did not conduct an investigation of the complaint against which it moves* ...........................................................................12

    B.   *The Government did not even perform a full investigation of the original complaint*........................................................................................................13

       1.  The Government's investigation should encompass the allegations in the complaint......................................................................................................13

       2.  Despite allegations of systemic mortgage fraud, the Government arbitrarily limited its investigation..................................................................................14

       3.  Even the Government's limited investigation was not a full investigation .....14

**IV.**   **"Some evidence" exists that the Government's actual reason for moving to dismiss the case is based on "improper considerations"** ........................................16

    A.   *"Some evidence" suggests that the Government's decision to move to dismiss this case is based improperly because Relatordid not accede to the Government's request to file the amended complaint under seal*...................16

       1.  The Government has proffered no legitimate reason for seeking dismissal.................................................................................................16

       2.  The Government threatened to seek dismissal if Relator did not file the amended complaint under seal................................................................17

          a.   The Government's written statements threaten retaliation ............17

          b.   The Government also made threats verbally ................................19

    B.   *The Government's request that the amended complaint be filed under seal was contrary to law*.........................................................................................19

       1.  The plain language of the statute only requires the original complaint to be filed under seal ..................................................................................20

       2.  Once an FCA case is unsealed, courts do not allow actions to be resealed ...................................................................................................21

       3.  The Government failed to provide any authority for its position ..............22

**CONCLUSION** ...........................................................................................................23

**Table of Authorities**

**Page(s)**

**Cases**

*Bruce v. Ylst*,
351 F.3d 1283 (9th Cir. 2003) ...................................................................................................7

*Harrison v. McGrath*,
No. C 02-1924 SI, 2004 WL 1465698 (N.D. Cal. June 21, 2004) .............................................7

*Int'l Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977) .................................................................................................................10

*Rille v. PricewaterhouseCoopers LLP*,
803 F.3d 368 (8th Cir. 2015) ...................................................................................................13

*State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*,
137 S. Ct. 436 (2016)................................................................................................................22

*Superintendent v. Hill*,
472 U.S. 445 (1985) .............................................................................................................7, 8

*United States ex rel. Bibby v. Wells Fargo Bank, N.A.*,
165 F. Supp. 3d 1340 (N.D. Ga. 2015) ....................................................................................13

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*,
668 F. Supp. 2d 780 (E.D. La. 2009) ..................................................................................20, 22

*United States ex rel. Davis v. Prince*,
766 F. Supp. 2d 679 (E.D. Va. 2011) .......................................................................................20

*United States ex rel. Griffith v. Conn*, Civ.,
No. 11-157-ART, 2013 WL 3935074 (E.D. Ky. July 30, 2013)....................................20, 21, 22

*United States ex rel. Kolchinsky v. Moody's Corp.*,
162 F. Supp. 3d 186 (S.D.N.Y. 2016) ...............................................................................20, 21, 22

*United States ex rel. Mikes v. Straus*,
931 F.Supp. 248 (S.D.N.Y. 1996) ............................................................................................22

*United States ex rel. Milam v. Regents of the Univ. of Cal.*,
912 F. Supp. 2d 868 (D. Md. 1995)..........................................................................................20

*United States ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*,
972 F.Supp.2d 1317, 1325 (N.D.Ga 2013) ...............................................................................22

United S*tates ex rel. Schaengold v. Mem. Heal*th, Inc.,
No. 4:11-cv-58, 2014 WL 7272598 (S.D. Ga. Dec. 18 .............................................................21

*United States ex rel. Sequoia Orange v. Baird-Neece Packing Corp.*,
151 F.3d 1139 (9th Cir. 1998) ..........................................................................................*passim*

RELATOR'S SUBMISSION OF EVIDENCE PURSUANT TO THE COURT'S APRIL 25, 2018 ORDER

*United States ex rel. Stewart v. Altech Servs., Inc.*,
   No. CV-07-0213-LRS, 2010 WL 4806829 (E.D. Wash. Nov. 18, 2010) ...........................19, 20

*United States ex rel. Ubl v. IIF Data Sols.*, Civ. A. No. 1:06-cv-641,
   2009 WL 1254704 (E.D. Va. May 5, 2009) .........................................................................21, 22

*United States ex rel. Wisz v. C/HCA Dev., Inc.*,
   31 F. Supp. 2d 1068 (N.D. Ill. 1998) ...............................................................................20

*United States v. Armstrong*,
   517 U.S. 456 (1996) ..............................................................................................*passim*

**Statutes and Regulations**

31 U.S.C. § 3730(a) ...................................................................................................13

31 U.S.C. § 3730(b)(2) ...............................................................................................20

31 U.S.C. § 3730(c)(4) ...............................................................................................22

31 U.S.C. § 3730(e)(3) ...............................................................................................23

31 U.S.C. § 3730(e)(4) ...............................................................................................23

L.R. 7-10 ..................................................................................................................23

L.R. 7-11 ..................................................................................................................22

L.R. 79-5(d) ..............................................................................................................22

RELATOR'S SUBMISSION OF EVIDENCE PURSUANT TO THE COURT'S APRIL 25, 2018 ORDER

**Preliminary Statement**

The Court's most recent Order has made clear that all Relator must do for an evidentiary hearing is meet the minimal "some evidence" threshold that the Government's motion to dismiss is unreasonable, not the result of a full investigation or based on arbitrary or improper considerations. Here, there is at least "some evidence" of all three as well as that the Government has engaged in selective prosecution in seeking dismissal of this action.

Below, Relator sets out at least "some evidence" that the Government did not rely on the actual claims data for defendant, meaning its purported reason for seeking dismissal is arbitrary and improper, and that it is engaging in selective prosecution. Further, the Relator sets out at least "some evidence" that the Government did not conduct a full investigation of either the operative amended complaint or the original complaint. Finally, Relator provides at least "some evidence" that the Government's true motivation for filing the motion is retaliation for Relator not filing the amended complaint under seal, as the Government (improperly) demanded and is therefore an improper consideration by the Government.

This evidence is more than enough to meet the low "some evidence" threshold and an evidentiary hearing should be granted. In fact, Relator respectfully suggests that the evidence is enough that the Court should deny the Government's motion to dismiss outright.

**Facts**

*The Original Complaint*

Relator originally filed this action under seal on April 21, 2016. *See* Dkt. 1. The case alleged systemic mortgage fraud by Academy's management. The original complaint alleged "systemic" mortgage fraud directed by Academy management. *Id*. at ¶ 106. The complaint alleged that: Academy's "management instituted and encouraged policies that led underwriters to break HUD rules and to approve ineligible loans" (Complaint ¶¶ 5, 95, 103-104); specifically identified Academy's fraudulent "policies and practices" that created the fraud and provided representative examples of the fraudulent "systemic practices and procedures followed by Academy" (Complaint

¶¶ 6, 10-12, 160); provided examples of how Academy "established a culture that valued getting a loan approved and endorsed for FHA insurance over complying with FHA's rules" (Complaint ¶¶ 7, 96-97, 101-102, 105); described how Academy knowingly submitted false certifications over a number of years to the Government that the company was in compliance with FHA requirements (Complaint ¶¶ 6, 75-82, 92, 94, 99, 162-164); explained that Academy instructed its underwriting staff that loans should never be declined (Complaint ¶¶ 8, 97-99); described how Academy "taught and counseled underwriters on several mechanisms designed to falsely make loans eligible for FHA insurance," and then identified those tactics (Complaint ¶¶ 9, 93, 99, 106-112, 116-151); that these policies and practices resulted in hundreds of improperly underwritten loans to be endorsed for FHA insurance and millions of dollars in losses to HUD (Complaint ¶¶ 13-14); and that "Academy's senior management was aware of the management exception process, and was often involved in the decision of whether to grant an exception requested by the underwriter." (Complaint ¶ 100). *Id.* Relator's counsel also verbally explained to the Government the systemic nature of the allegations in the complaint. *See* Declaration of J. Nelson Thomas ("Thomas Decl.") ¶ 17.

*Relator Interview*

The Government sought and was granted an extension on that seal on September 19, 2016. *See* Dkt. 9. On October 16, 2016, the Government interview the Relator. Thomas Decl. ¶ 3. At the start of the interview, the Government told the Relator she could conduct no more investigation of the allegations in her complaint, and the Relator agreed not to do so. *Id.* at ¶ 3.

*Declination Explanation*

On December 21, 2016 the Government called Relator's counsel to explain why it was not intervening in the action. *Id.* at ¶ 4. The Government explained that it did not gather enough evidence of a nationwide pattern of mortgage fraud at Academy. *Id.* at ¶ 10. The Government, though, had limited its investigation to Relator's location and period of employment, and relied on no investigation beyond those areas. *Id.* at ¶ 11. Further, the only investigation it relied on for those areas was its interview with the Relator herself. *Id.* at ¶¶ 13-16. It did not rely on any other investigation. *Id.* at ¶¶ 10-16. The Government stated in looking solely at the documents the Relator

provided, the Government had no documents from any other locations than the Relator's, and thus did not have documentary evidence of violations at other locations. *Id*. at ¶ 12. Similarly, said that looking solely at what the Relator provided, the Government had no testimony from employees employed at locations about mortgage fraud. *Id*. at ¶ 13.  And the Government stated that by looking solely at what the Relator provided, the Government did not have any comments or documents of high-level malfeasance or fraud from senior executives in the company. *Id*. at ¶ 14.  The Government made these representations despite the fact that Relator had identified witnesses who could possess helpful information about the fraud at Academy. *Id*. at ¶ 15.

Relator's counsel had told the government verbally and in the complaint that the allegations in this case related to systemic mortgage fraud. Thomas Decl. ¶ 17. Therefore, Relator's counsel was surprised that the Government's investigation had not encompassed the actual allegations. *Id.* Relator's counsel volunteered to provide additional information to assist in the investigation. *Id*. at ¶ 18.The Government responded that it did not think that the Relator herself had provided enough personal knowledge and the Government was not interested in doing any additional investigation the case. *Id*. at ¶ 19. The Government did note that additional information about other locations and information from other witnesses would be the sorts of the things the Government would normally investigate, but that the Government was not satisfied with the Relator's personal knowledge and therefore they did not want any additional facts from Relator. *Id*. at ¶¶ 20-24.

*Additional Investigation*

Once the seal was lifted, defendant moved to dismiss the case. Dkt. 23. Following that, Relator's counsel conducted additional investigation. *See* Declaration of Jonathan Ferris ("Ferris Decl." ¶ 39. This included gathering information from 17 other employees and former managers of Academy from around the country verifying Academy's corporate fraudulent scheme. *Id*. This included further support of Academy's fraudulent underwriting policies at approximately 14 of Academy's branches across the United States, including in Arizona, South Carolina, Oregon, Florida, Texas, Colorado, and Washington. *Id*. at ¶ 40.

*Government threatens retaliation if amended complaint is not filed under seal*

Starting at the end of March 2017, the Government reached out to Relator's counsel regarding the case. Thomas Decl. ¶ 31. Upon hearing that Relator intended to file an amended complaint, the Government demanded that it be filed under seal. *Id*. Over a series of phone calls in March and April, the parties repeatedly and increasingly contentiously exchanged their positions. *Id*. Relator's counsel expressed its willingness to provide information in advance to the Government and cooperate with the Government, but stated the law did not appear to allow the amended complaint to be filed under seal and asked for contrary authority. *Id*.; Thomas Decl. Ex. E. In response, the Government was never able to provide any contrary authority. *Id*. Relator's counsel further asked the Government to identify a procedure by which a case could even be re-sealed and an amended complaint could be filed under seal. *Id*. The Government was never able to identify a viable procedure, other than dismissing the complaint, and then re-filing the complaint under seal, which Relator's counsel explained was not a viable option. *Id*. For example, if Relator dismissed her case, but another action was currently pending against the same defendant, a subsequent action by the Relator could be barred by the FCA's first-to-file bar. Ferris Decl. ¶ 34. Additionally, if the defendant's conduct had been publicly disclosed during the pendency of the seal, a new action could be barred under the FCA's public disclosure bar. *Id.* at ¶ 35. Dismissal could also create statute of limitations problems. *Id*. at ¶ 36.

The Government then repeatedly threatened action against the Relator if the amended complaint was not filed under seal, including statements such as: the Government would consider dismissing any amended complaint and it would behoove the Relator to cooperate with the Government; that the Government would "not respond kindly" if the amended complaint was not filed under seal; that the Government would consider the filing the amended complaint as a breach of the seal and would respond as it normally does when a party breaches a seal; and that the Government would take "drastic action" if the amended complaint was not filed under seal. Thomas Decl. ¶ 31.

The Government also stated that the Relator should file under seal because the sort of information Relator's counsel said had been gathered would be the sort of information that could very well change the Government's view of the case. Thomas Decl. ¶¶ 28-31, Ex C, Ex. H. These calls and e-mails culminated in the Government's e-mail of April 27, 2017, in which the Government stated in part:

> We reviewed the [amended] complaint.
>
> Let me be very clear—the DOJ believes that you are obligated under the False Claims Act to file an amended complaint under seal. My read of the draft amended complaint leads me to believe that the amended complaint you have promised to file at 3PM will differ substantively from the original complaint….
>
> As far as logistics of filing under seal, the predicament you find yourselves in now is one of your own making….
>
> [T]he breach of a seal is a very serious matter that can have severe consequences.  [citing case law involving dismissal of FCA cases not filed under seal] If the Amended Complaint you file differs substantially from the original complaint, and is not filed under seal, we will evaluate all options available to us.

Thomas Decl., Ex. H.

In fact, just prior to the Government filing its motion to dismiss, two Government attorney's called Relator's counsel on his personal cell phone and started the call by saying, "As you might have expected, we intend to move to dismiss your case." Thomas Decl. ¶ 37.

*Amended Complaint*

Prior to filing the amended complaint, as promised, Relator provided detailed information about the amended complaints in advance, as well as a draft copy of the amended complaint. Ferris Decl. ¶ 41-43. The amended complaint alleged the same fraud against the same defendants and simply provided more detail amplifying the earlier allegations. *Id.* at ¶ 43.

*Size of the Academy case—Government's representations*

In filing its motion to dismiss, the government claimed dismissal was appropriate because the case failed the government's "cost-benefit analysis." United States' Motion to Dismiss Relator's

1   Amended Complaint at 7:14-16 (Dkt. 60) This was consistent with the Government's continued

2   representations that the case was "too small" and involved only "three claims." *See* Thomas Decl.

3   Exs. C, G; Thomas Decl. ¶ 31; United States' Motion to Dismiss Relator's Amended Complaint at

4   2:22 (Dkt. 60); Transcript of Oral Argument at 22:3-13; United States' Response to Relator's

5   Supplemental Briefing at 15:15-24; 16:2-5 (Dkt. 83).

6       The Government has made these representations to this Court as late as the at oral argument

7   (where the Government was only able identify three claims involving Academy), as well as in its

8   most recent filings. *See* Transcript of Oral Argument at 22:3-13; United States' Response to

9   Relator's Supplemental Briefing at 15:15-24; 16:2-5 (Dkt. 83). Relator had repeatedly challenged

10  the accuracy of the Government's statements, but the Government maintained that it was correct

11  and asked Relator to provide claims data showing the Government's assertions were not true. *See*

12  Thomas Decl. Ex. G.

13          *Size of the Academy case—Data*

14          It turns out the government's representations about Academy being "too small," involving

15  three claims, and not worth the government resources to pursue are incorrect. *See* Ferris Decl. ¶¶

16  19-23. Realtor's counsel submitted a Freedom of Information request to HUD in the fall of 2017

17  seeking claims data for certain lenders. *Id*. at ¶ 3. Very recently, on April 30, 2018, Relator's counsel

18  received that data. *Id*. at ¶ 4. Relator's counsel then analyzed the data and determined that Academy

19  was paid $157,073,010 for claims from 2010 to 2017. *Id*. at ¶ 18. Additionally, based on the fact

20  that an average FHA loan is approximately $195,000, Relator's counsel estimated that this would

21  equate to approximately 806 claims during this time period. *Id*. at ¶¶ 24-26.

22                                      **Argument**

23  **I.    Legal Standard**

24          This Court, in its April 25, 2018 Order re Request for Evidentiary Hearing (ECF Dkt. 90)

25  ("Order"), set forth the legal standard for the Relator to meet in order to warrant an evidentiary

26  hearing in this matter. This Court held if the Relator presents in this motion "some evidence" that

27  the Government's reason for seeking dismissal is 1) unreasonable; **or** 2) not the result of a full

28

investigation; **or** 3) based on arbitrary or improper considerations then a hearing would be warranted. *See also United States v. Armstrong*, 517 U.S. 456, 469 (1996) ("some evidence tending to show the existence" of elements of the underlying claim).

In *Armstrong* the defendants failed to carry this burden. The *Armstrong* defendants argued that the Department of Justice selectively prosecuted crack cocaine defendants based on race, but the only "proof" the defendants provided was a single affidavit from a paralegal working at the Central District of California Federal Public Defender's Office stating that all closed 24 crack cocaine cases in that office in 1991 involved African-American defendants. *Id.* at 459. In response, the Department of Justice proffered affidavits from federal and local agents not only denying the use of race in such prosecutions but also explaining in detail the reasons for why individuals were prosecuted that had nothing to do with race. *Id.* at 459-60. The Assistant United States Attorney also submitted an affidavit that set forth the general criteria the Government employed when deciding what cases to prosecute and then applied that general standard to each defendant specifically explaining the reasons for the prosecution. *Id.* at 460. The Government also submitted official reports that tracked the high involvement of African-American street gangs in crack cocaine distribution. *Id.* Thus the Supreme Court held that the defendants did not meet the standard to proceed with a showing that they were selectively targeted for prosecution. *Id.* at 470.

Although the proof offered by the defendants in *Armstrong* was particularly weak, the Supreme Court cautioned that the "some evidence" standard was low and "should not be an insuperable task" to meet.[1] *Id.* at 470. This Court itself has reiterated that the "some evidence"

---

[1]     As the Supreme Court noted, the "some evidence" standard employed in *Armstrong* was more demanding in that case given that the ultimate proof needed to establish a selective prosecution claim was particularly rigorous. *Id.* at 468. Here, under *United States ex rel. Sequoia Orange v. Baird-Neece Packing Corp.*, proving that the Government did not conduct a full investigation, or acted unreasonably, or relied on improper considerations is far less rigorous than proving a claim of racial selective prosecution and thus the "some evidence" standard is correspondingly relaxed. 151 F.3d 1139 (9th Cir. 1998). Similarly, while *Armstrong* does set the standard for a hearing either for a claim under *Sequoia Orange* claim, or a claim for racially selective prosecution, its substantive discussion of the rigors of a selective racial prosecution claim are unique to such claims and do not purport to cover the more relaxed standards for FCA claims under *Sequoia Orange*.

standard is a "very low . . . hurdle." *Harrison v. McGrath*, No. C 02-1924 SI, 2004 WL 1465698, at *6 (N.D. Cal. June 21, 2004) (Illston, J.). The hurdle is so low that few (if any) other burdens of proof exist that are less demanding than the "some evidence" test. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (under the "some evidence" test "we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in record that could support the conclusion.'") (citing *Hill*, 472 U.S. at 455-56). Thus, as long as even some minimal evidentiary showing is made that "tends" to support the party's proof, and even if that evidence is from a single source, the "some evidence" test is met. *Armstrong*, 517 U.S. at 469.

*Sequoia Orange* identifies three different ways the Government's motion to dismiss can fail. However, as here, these separate legal factors often overlap based on the facts of the case. For example, when the Government has not "fully investigated" a case, the Government's reason for dismissal will also more likely be an "arbitrary" reason, as well as an "improper motive." Therefore, in the discussions below, although the reasons the Government's motion fails *Sequoia Orange* are analyzed separately, in reality there is much overlap among the analyses under each different factor.

## II. There is "some evidence" that the Government's purported rationale for dismissing the case is arbitrary and improper and reflects selective prosecution by the Government.

Under *Sequoia Orange*, the Government loses its right to dismiss a case when it seeks dismissal for arbitrary and fraudulent reasons or has engaged in selective prosecution. Order at 1 (Dkt. 60). Here, the actual claims data does not support the Government's rationale for dismissing this case, meaning that the Government's motion to dismiss is arbitrary and improper and reflects selective prosecution.

### A. The actual data does not support the Government's purported rationale for dismissal and is therefore arbitrary and improper.

The Government moved to dismiss the amended complaint claiming it had undertaken "a cost-benefit analysis and...conclude[d] it is not in the public interest to spend further time and resources on Relator's litigation of this matter." United States' Motion to Dismiss Relator's

Amended Complaint at 7:14-16 (Dkt. 60).  In support, it repeatedly claimed the case against Academy was "too small" to puruse and involved only "three claims." *See* Thomas Decl. Exs. C, G; Thomas Decl. ¶ 31; United States' Motion to Dismiss Relator's Amended Complaint at 2:22 (Dkt. 60); Transcript of Oral Argument at 22:3-13; United States' Response to Relator's Supplemental Briefing at 15:15-24; 16:2-5 (Dkt. 83).

There is certainly "some evidence" that the Government's purported rationale was simply untrue, and reflected an arbitrary and improper justification to dismiss a lawsuit it was not pursuing because it was engaged in selective prosecutorial decisions.

> 1.   HUD data reveals the true value of claims made by Academy and that the Government's cost-benefit analysis was arbitrary and improper

Relator's counsel submitted FOIA requests to the Department of Housing and Urban Development in the fall of 2017 seeking claims data and other information related to this case. Ferris Decl. ¶ 3. Relator's counsel very recently received this HUD claims data on April 30, 2018. *Id.* at ¶ 4; *see also* Ferris Decl., Ex. A.. According to the data, for the time period of 2010 to 2017, Academy was paid $157,073,010 in FHA insurance claims. Ferris Decl. ¶ 18.

Additionally, according to HUD, the average FHA loan size was approximately $195,000 in 2016.[2] Given that HUD has paid $157,073,010 in insurance claims to Academy from 2010 to 2017, this would equate to roughly 806 claims to HUD during that time period.

Under the FCA, treble damages of claims of $157,073,010 would be $471,219,030. Additionally, given that FCA penalties are currently approximately $22,000 per claim, 806 penalties would be an additional $17,666,000. Thus, despite the Government's assertions that there were only "three claims" that "would support at most a very limited recovery," Thomas Decl., Ex. C, **the recovery in this case could approach a half billion dollars ($488,885,030)**.

The Government did not even consider this information on the benefit side in performing its

---

[2]   U.S. Dep't of Housing & Urb. Dev., Annual Report to Congress Regarding the Financial Status of the Mutual Mortgage Insurance Fund Fiscal Year 2016 (2016), https://www.hud.gov/sites/documents/2016FHAANNUALREPORT1.PDF.

1   purported cost-benefit analysis and that analysis is therefore necessarily arbitrary and improper.

2   Moreover, it would be impossible, and therefore arbitrary and improper, to conclude that the cost of

3   the case moving forward is greater than the benefit when the Government did not even know the

4   actual benefits.

5

6            2.        HUD claims data also reveals that Academy's claims fall well
                       within the cases the Government prosecutes and that the
7                      Government is engaging in selective prosecution here

8

9            As the chart attached as Exhibit B to the Ferris Declaration demonstrates, in the over 25

10  cases analyzed, the Government has **never** moved to dismiss a mortgage fraud case (other than this

11  one). Its decision in Academy is extraordinary, to say the least. At over $150,000,000 in claims

12  against the Government, Academy is one of the largest Government claimants on the taxpayers.

13  These absolute numbers alone contradict the Government's assertions that the Academy claims are

14  "too small" or involve only three claims. *See* Thomas Decl. Ex. C, Ex. G; United States' Motion to

15  Dismiss Relator's Amended Complaint at 2:22 (Dkt. 60); Transcript of Oral Argument at 22:3-13;

16  United States' Response to Relator's Supplemental Briefing at 15:15-24; 16:2-5 (Dkt. 83).

17           More significantly, the data shows the Government does not believe that claims of over

18  $150,000,000 in claims is not too small, or that amount of claims somehow does not meet its cost-

19  benefit analysis. As the data shows, the Government has never moved to dismiss any mortgage fraud

20  case, including the 14 smaller cases than Academy (or for that matter, the 13 larger ones). This

21  "inexorable zero" is certainly "some evidence" that the Government selectively targeted Relator in

22  this action. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 342 n.23 (1977).

23           Further, not only is Academy's claim rate high in terms of absolute numbers, but the data

24  shows those claims stem from the particularly bad lending practices at Academy. Academy's default

25  rate far exceeds any measure of statistical significance. *See* Declaration of William Lepowsky at ¶

26  55. As explained by Mr. Lepowsky, a statistician, the probability that Academy's higher default rate

27  would occur by chance (as opposed to some other cause like fraud) is approximately 1 in 5,700,000.

28

1   *Id.* at ¶ 53.

2       In fact, the Government found none of the 14 lenders that had smaller claims than Academy

3   (and whose lending practices were statistically better) to be "too small," and each lender had no

4   problem passing the Government's "cost-benefit" analysis.  Indeed, of the just five next lenders

5   smaller than Academy that have settled with the Government, the settlements have ranged from $5

6   million to $418 million dollars in recovery to the Government, with an average settlement of over

7   $117 million.

8       The chart drives home the point that the Government has selectively targeted Relator in this

9   action. Not only has the Government never moved to dismiss a mortgage fraud case, of any size, the

10  data shows the Government deemed it worth the cost to actively litigate every mortgage fraud case

11  with lenders whose claims exceed $58 million, and with one exception, has declined to intervene

12  (but not move to dismiss) any case involving a lender with claims of $57 million or less. Ferris

13  Decl., Ex. B.

14      The Government's position in this matter is all the more arbitrary given the Government has

15  openly admitted that it has targeted FHA lenders based on size. *See* Ferris Decl. ¶ 27-30.

16        **B.**    *There is "some evidence" that the data relied on by the Government is*

17                *misleading and therefore arbitrary and improper*

18      There is also at least "some evidence" that the Government has misled both Relator and the

19  Court about the number and value of claims in this lawsuit. As discussed above, the Government

20  repeatedly told Relator that there were only three claims at issue and this "would support at most a

21  very limited recovery."  See Thomas Decl., Ex. C. However, the actual HUD data does not support

22  such an assertion, both in terms of the 157 million dollars of claims, nor in the number of claims.

23  Thus, while the Government has repeatedly told Relator that there are only three claims at issue in

24  this case, that number grossly misrepresents the actual number of claims that have been made by

25  Academy during the proper lookback period.

26      As noted above, the Court has directed the Government to present any contrary or rebuttal

27  evidence in their response papers. *Armstrong* illustrates the showing the Government can use to

28

1   defeat the need for a hearing: affidavits explaining why investigators had chosen not to prosecute

2   certain actions; affidavits from an Assistant United States Attorney explaining the general criteria

3   (here the "cost-benefit" analysis) for prosecution; an explanation of why the defendants specifically

4   met those criteria and others did not; and a study explaining the basis for the prosecutions.

5   *Armstrong*, 517 U.S. at 460. Therefore, to the degree the Government in fact did perform some

6   "cost-benefit analysis" that explains why Academy is such a strange outlier, it should present that

7   cost-benefit in its response papers showing why Academy failed that analysis and why every other

8   case against every other lender passed that analysis, as the Government did in *Armstrong*. Similarly,

9   the Government can explain its representations that Academy was "too small" and that Academy

10  had only three (or ten) claims against the Government when in fact Academy had claims in excess

11  of $157,000,000—and these claims do not even count the defaults from future mortgage fraud over

12  the life the fraudulent mortgages endorsed by Academy.

13  **III.     The Government Failed to Fully Investigate the Complaints in this Matter**

14          As this Court recognized, *Sequoia Orange* prohibits the Government from seeking dismissal

15  when it fails to fully investigate the operative complaint.  Here, the Government failed to fully

16  investigate both the operative complaint, against which it moved, and the original complaint.

17              *A.     The Government concedes it did not conduct an investigation of the
                complaint against which it moves.*

18

19          In its papers since the last oral argument, the Government has now conceded it did **not**

20  "evaluate" or "investigate" the amended complaint, and thus could have conducted no "cost-benefit

21  analysis" as it claimed it had. United States' Response to Relator's Supplemental Briefing at 13:18

22  (Dkt. 83); *see also* United States' Motion to Dismiss Relator's Amended Complaint at 3:5-6 (Dkt.

23  60) ("the United States declined to intervene without a seal period for the United States to

24  investigate.")

25          Nothing here excuses the Government's failure to conduct the investigation of the amended

26  complaint. The Government knew the amended complaint provided even more detail regarding the

27  fraud alleged in the original complaint. United States' Response to Relator's Supplemental Briefing

28

at 12:19-13:3. (Dkt. 83) In fact, the detail was precisely the sort of information that the Government had told Relator the Government would want to investigate. Thomas Decl. ¶¶ 13-16, 20. Nor did the Government conduct any investigation of the amended complaint before the amended complaint was filed (even though Relator's counsel gave the Government extensive detail on the amended complaint well before filing it), nor has the Government conducted any investigation after the amended complaint was filed.[3] *See* United States' Response to Relator's Supplemental Briefing at 13:18 (Dkt. 83; *see also* United States' Motion to Dismiss Relator's Amended Complaint at 3:5-6 (Dkt. 60) ("the United States declined to intervene without a seal period for the United States to investigate.")

Even at the oral argument before the Court six months ago, the Government still did not know the total number of claims involving Academy, but instead referred to "three" claims for Relator's location and time period that had nothing to do with scope of the operative complaint, or for that matter even the scope of the original complaint. *See* Transcript of Oral Argument at 22:3-8.

> B.     *The Government did not even perform a full investigation of the original complaint.*
>
>> 1.     The Government's investigation should encompass the allegations in the complaint

The FCA requires that the Government "diligently investigate" any complaints filed under the FCA. 31 U.S.C. § 3730(a). Because FCA liability is based on the allegations in the complaint, and is not based on the Relator's personal knowledge (or even the information in Relator's possession), a "full investigation" is not one that is arbitrarily limited to the Relator's personal knowledge, but extends to what the complaint itself alleges. *See Rille v. PricewaterhouseCoopers*

---

[3]     The Government suggests it did not do so because it had no time to investigate the case under seal. However, that does not excuse the Government under *Sequoia Orange* from the need to do an investigation before it takes the drastic step of moving to dismiss the complaint for failing a cost-benefit analysis. Moreover, Relator's counsel provided detailed information on the amended complaint far in advance of the deadline. Ferris Decl. ¶ 43. Nor did the Government ever suggest it would like an extension of the deadline to file the amended complaint to conduct any investigation of the facts surrounding the amended complaint. *Id*.

*LLP*, 803 F.3d 368, 373-74 (8th Cir. 2015) (relator entitled to share recovery for any Government recovery in which "the conduct contemplated in the settlement agreement . . . overlap[s] with the conduct alleged in [the] Relator's complaint."); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1347-54 (N.D. Ga. 2015) (finding that mortgage fraud scheme was not limited in geographic or temporal scope).

This point is so well established that every time the Government settles or tries FCA mortgage fraud cases, the damages paid (as well as the relator share paid) are based on the **entire scope** of the fraud alleged.  *See* Ferris Decl. at ¶¶ 31-32.

> 2.   Despite allegations of systemic mortgage fraud, the Government arbitrarily limited its investigation

Here there is certainly "some evidence" that the Government did not fully investigate the original complaint. The original complaint alleged "systemic" mortgage fraud directed by Academy management. *See* Dkt. 1 at ¶ 106; Thomas Decl. ¶ 17.

Despite those allegations, as set forth more fully in the Declaration of Nelson Thomas, the Government limited the investigation to just the Relator's work location and time period. As the Government stated even in its papers filed with the Court a few months ago, "It is also clear that the United States examined claims data showing that the knowledge that supported Relator's claim to whistleblower status was limited in effect to three claims upon the United States," even though, as discussed above, Relator's counsel made clear verbally and in the complaint that the allegations were not so limited and the FOIA data shows Academy's claims were hardly limited to three. *See* Dkt. No. 83 at 16:20-22; Thomas Decl. ¶ 17. In fact, at oral argument with the Court, the Government continued to cite "three" as the number of claims involving Academy and continued to be unaware of the actual number of claims. *See* Transcript of Oral Argument at 22:3-8. In multiple conversations with Relator's counsel, in its declination explanation to Relator's counsel, and in multiple representations to this Court, the Government ceaselessly relied on "three claims" as representing the scope of its investigation. *See* Thomas Decl. Exs. C, G; Thomas Decl. ¶ 30; Dkt. 60 at 2:22; Transcript of Oral Argument at 22:3-13; Dkt. 83 at 15:15-24; 16:2-5.

1

                 3.      Even the Government's limited investigation was not a full investigation

2

3        Even in its arbitrarily limited scope, the Government did not conduct a full investigation. Its

4 declination explanation was not based on its interview of any witnesses, the request for any

5 documents from the defendants, or even the reviewing of leads provided by the Relator in her

6 disclosure statement. Thomas Decl. ¶¶ 10-16. One simply cannot claim to perform a "full

7 investigation" of systemic mortgage fraud without talking to a single non-party witness; asking for

8 any documents; or focusing on the relevant data and timeframe. Nor can one perform an actual

9 "cost-benefit" analysis without doing this work, as the Government claims it did here. Dkt. 60 at

10 7:14-16.

11        In fact a "full investigation" by the Government would have been helpful in this case. As the

12 Relator's own subsequent and limited investigation revealed, there was significant amounts of

13 information the Government could have easily uncovered, but failed to investigate. As set forth in

14 more detail in the Ferris Declaration, after the Government declined to intervene in this case,

15 Relator's counsel (a seven-attorney law firm) without  the vast resources of the federal Government,

16 in the space of less than two months gathered information from 17 other employees and former

17 managers of Academy from around the country verifying Academy's corporate fraudulent scheme.

18 Ferris Decl. ¶¶ 38-40.

19        Furthermore, the Government acknowledged that information gathered by Relator's counsel

20 would have been material to any investigation. For example, at the time that the Government

21 declined the case it stated this was the sort of information the Government would want to look at

22 (even though it refused to allow Relator to gather and provide it). Thomas Decl. ¶ 20. And the

23 Government left no doubt about this admission later when it repeatedly demanded that the Relator

24 file the case under seal so that it could now conduct a full investigation of that information, including

25 commenting that this sort of information could very well change the Government's view about

26 whether to intervene in the litigation. Thomas Decl. ¶¶ 28-31, Exs. C, H. This lack of a full

27 investigation is particularly problematic here because the Government specifically banned the

28

1   Relator from conducting any additional investigation during the seal period, but then declined

2   intervention in the case because of her supposed lack of such additional information, and

3   affirmatively **rejected** the offer of such additional information from the Relator. *See* Thomas Decl.

4   ¶¶ 3, 20-24.

5        Again, this Court has ordered that the Government shall produce any contrary or rebutting

6   information in its response. If the Government actually conducted a full investigation of the

7   amended complaint (or even the original complaint), the Government's time to make that showing

8   (as it did in *Armstrong*) is, as this Court ordered, in its responding papers.

9   **IV. "Some evidence" exists that the Government's actual reason for moving to dismiss the case is based on "improper considerations."**

10

11       The Government acted arbitrarily by improperly moving to dismiss Relator's amended

12  complaint because it was being vindictive. As this Court noted during oral argument, "it does seem

13  to me that an evidentiary hearing is warranted, and there's an assertion of the improper conduct; i.e.,

14  vindictiveness for what they did." Given that there is "some evidence" of vindictiveness, this Court

15  is correct that an evidentiary hearing is required.

16       That vindictiveness is demonstrated by the Government moving to dismiss Relator's

17  complaint in retaliation against the Relator for not (improperly) filing the amended complaint under

18  seal and without notice to the defendant. Relator's amended complaint however, could not legally

19  be filed under seal and the Government's request Relator to do so was improper as was its threat

20  and decision to retaliate by filing its motion to dismiss.

21       A.    *"Some evidence" suggests that the Government's decision to move to dismiss this case is based improperly because Relator did not accede to the Government's request to file the amended complaint under seal.*

22

23       There is certainly "some evidence" that the real reason the Government moved to dismiss

24  the lawsuit was because the Relator followed the law and refused to file the amended complaint

25  under seal.

26            1.    The Government has proffered no legitimate reason for seeking dismissal

27

28
                                    16                                    16-CV-02120-EMC

As discussed above, the Government has proffered no legitimate reason for its motion to dismiss. To be clear there was nothing about the merits of the Relator's complaint that lead to the motion to dismiss, the Government did not move to dismiss the less robust original complaint and asked to be kept informed on its progress and that certain terms be included in the final settlement. *See* Thomas Decl., Ex. B. In fact, the Government was aware that Relator intended to proceed with her action, and noted that its declination decision "should not be construed as a statement about the merits of the case." Thomas Decl. Ex. A. The Government made similar representations to this Court in its Election to Decline Intervention and [Proposed] Order to Unseal. *See* Dkt. 10. Thus, the Government's proffered reasons for seeking dismissal cannot be believed.

2.      The Government threatened to seek dismissal if Relator did not file the amended complaint under seal

The Government repeatedly threatened Relator that it would move to dismiss the complaint unless the Relator filed the amended complaint under seal. Thus, there is little doubt that what prompted the Government to change its mind to dismiss the complaint was for not filing the amended complaint under seal. One can look either to the written statements from the Government, or even the more direct verbal comments to Relator's counsel.

a.      The Government's written statements threaten retaliation

In terms of written statements, in one of the last substantive e-mails before the motion to dismiss was filed, the Government wrote that:

We reviewed the [amended] complaint.

Let me be very clear—the DOJ believes that you are obligated under the False Claims Act to file an amended complaint under seal. My read of the draft amended complaint leads me to believe that the amended complaint you have promised to file at 3PM will differ substantively from the original complaint….

As far as logistics of filing under seal, the predicament you find yourselves in now is one of your own making….

[T]he breach of a seal is a very serious matter that can have severe consequences.  [citing case law involving dismissal of FCA cases not filed

17

1
2

> under seal] If the Amended Complaint you file differs substantially from the original complaint, and is not filed under seal, we will evaluate all options available to us.

3

4    *See* Thomas Decl. Ex. H.

5           The e-mail certainly constitutes "some evidence" that the reason the Government moved to

6    dismiss this complaint because Relator did not comply with the Government's (improper) request

7    to file the amended complaint under seal. After all, the Government is clear that it is demanding the

8    case be filed under seal; that failing to do so can have "severe consequences" (what could be more

9    severe than dismissal?); then cites immediately to cases involving the dismissal of complaints not

10   under seal; and concludes that if the amended complaint is not filed under seal, "we will evaluate

11   all options available to us." Thomas Decl. Ex. H.  In fact, just prior to the Government filing its

12   motion to dismiss, two Government attorneys called Relator's counsel on his personal cell phone

13   and started the call by saying, "As you might have expected, we intend to move to dismiss your

14   case." Thomas Decl. ¶ 37. Therefore, there is certainly "some evidence" that the Government moved

15   to dismiss the complaint for the reason it threatened: Relator refused its (improper) request to file

16   the amended complaint under seal.

17          Even the Government's most recent papers filed with the Court constitute further evidence

18   that the Government's purpose in dismissing the case was to retaliate against Relator for filing the

19   amended complaint on the open docket. The Government argues explicitly that "Insistence on the

20   Qui Tam Seal is Not a Constitutional Violation." United States' Response to Relator's Supplemental

21   Briefing at 11:13 (Dkt. 83). The Government spends the next two-and-a-half pages arguing that

22   there is "nothing improper" with the Government seeking to dismiss Relator's case because the

23   amended complaint was not filed under seal.[4] United States' Response to Relator's Supplemental

24   Briefing at 11-14. This instills as much confidence in the Government's motivations as it would for

25

26

   ───────────────────

27   [4]      The Government did not articulate this retaliatory motive as a basis for dismissal and cannot
            rely on it, even if it were permissible. Order at 6:3.

28
                                                              18                        16-CV-02120-EMC

an employer to argue there is "nothing improper" if it fired an employee in retaliation for engaging in protected activity.

It is the epitome of "improper consideration" for the Government to retaliate against a Relator for complying with the law, even when the attorneys at the Department of Justice asked Relator to take a different course.

b. **The Government also made threats verbally**

The Government was even more blunt in the numerous phone calls between the parties in March and April of 2017. Thomas Decl. ¶ 31. The calls grew exceedingly repetitious and contentious. *Id.* They followed a pattern with Relator's counsel telling the Government it would provide the additional factual detail about the allegations in the amended complaint in advance of filing it and was eager to work with the Government. *Id.* The Government would respond by stating that it wanted any amendments to the complaint filed under seal. Relator's counsel in turn responded that such an approach did not seem permissible and asking the Government to provide any support for its position. *Id.* The Government was never able to provide any legal basis to do so. The Government instead would on multiple occasions threaten dismissal, including statements that it was considering moving to dismiss the complaint, that it would "behoove Relator to cooperate;" and that the Government would take "drastic action" if the Relator did not file her case under seal. *Id.*

**B.** ***The Government's request that the amended complaint be filed under seal was contrary to law.***

To begin, there is no doubt that the Government's request that the case be filed under seal without notice to the defendant was improper. Multiple courts have addressed the issue and time and again the courts have been clear in their holding that after the Government declines to intervene in a case, and the case is unsealed, future pleadings, including amended complaints **cannot** be filed under seal. Even the cases on which the Government relies on in its most recent briefing reveals that

courts hold amended complaints alleging the same fraud need not be filed under seal. [5] United States'
Response to Relator's Supplemental Briefing at 14: 8-15 (Dkt. 83). Courts reach this universal
conclusion for a number of reasons.

1.     The plain language of the statute only requires the original
complaint to be filed under seal.

First, the FCA only requires that the "complaint" (not amended complaint) be filed under
seal. 31 U.S.C. § 3730(b)(2). Courts hold that reading "complaint" to mean both the original and
the amended complaint "is neither consistent with the Act's text nor required to effectuate the Act's
purpose." *United States ex rel. Griffith v. Conn*, Civ. No. 11-157-ART, 2013 WL 3935074, at *2
(E.D. Ky. July 30, 2013); *see also Branch Consultants, L.L.C.*, 668 F. Supp. 2d at 803 ("the plain
language of § 3730(b)(2) refers only to 'the complaint,' not the amended or subsequent complaint");
*United States ex rel. Wisz v. C/HCA Dev., Inc.*, 31 F. Supp. 2d 1068, 1069 (N.D. Ill. 1998) ("By its
terms, the statute applies only to 'the complaint' and not to any amended complaint."); *United States
ex rel. Milam v. Regents of the Univ. of Cal.*, 912 F. Supp. 2d 868, 890 (D. Md. 1995) ("Neither the
statute nor any relevant case law imposed upon [relator] the duty to file any amendments to that
complaint in camera and under seal."); *Stewart*, 2010 WL 4806829, at *2 ("the Court finds
defendants' argument lacks merit because by its terms § 3730(b)(2) applies only to the complaint
and not any amended complaint.").

---

[5]     Tellingly these amendments did not even meet the Government's **own** articulation of when
an amended complaint must be filed under seal because they did not "differ[] substantively"
from the original complaint. *See* Thomas Decl., Ex. B. Most courts do not even adhere to
the Government's view. *United States ex rel. Stewart v. Altech Servs., Inc.*, No. CV-07-0213-
LRS, 2010 WL 4806829, *2 (E.D. Wash. Nov. 18, 2010). Even those that do make clear that
amendments, like those here, do not warrant filing under seal. *See, e.g.*, *United States ex rel.
Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198 (S.D.N.Y. 2016) (new factual fraud
allegations based on facts not disclosed in original complaint do not need to be filed under
seal as they are "variations on a theme"); *United States ex rel. Davis v. Prince*, 766 F. Supp.
2d 679, 685 (E.D. Va. 2011) (new allegations do not need to be filed under seal if they are
"closely linked" to the claims already filed); *United States ex rel. Branch Consultants, L.L.C.
v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 803 (E.D. La. 2009) (no need to file complaint
under seal as the amended complaint "alleges the same type of fraudulent conduct as the
original complaint, albeit with many more individual examples").

1

2

>2.      Once an FCA case is unsealed, courts do not allow actions to
>         be resealed

3      Courts are also uniform in holding that the FCA is not designed to allow for complaints to

4  be filed under seal, unsealed, and then resealed, and unsealed again. The entire purpose of the initial

5  seal filing is for the Government to complete its obligation to "diligently investigate" all the

6  allegations while under seal the first time, as opposed to having new filings in unsealed actions re-

7  sealed with new Government investigations. That is one of the reasons the FCA allows the

8  Government to continually extend the seal deadlines so that it will complete its full and diligent

9  investigation at that juncture. *Griffith*, 2013 WL 3935074, at *2 (the FCA is intentionally designed

10 to allow the Government to complete its investigation **before** the complaint comes out from under

11 seal); *Kolchinsky*, 162 F. Supp. 3d at 198 ("there is no reason to prejudice Plaintiff by dismissing

12 the Complaint when the Government was afforded the opportunity to intervene [and] elected not to

13 do so."); *United States ex rel.  Schaengold v. Mem. Health, Inc.*, No. 4:11-cv-58, 2014 WL 7272598,

14 at *19 (S.D. Ga. Dec. 18, 2014) (filing amended complaints under seal unnecessary when it did not

15 deprive the Government of its opportunity to investigate relator's allegations and to decide whether

16 to intervene); *United States ex rel. Ubl v. IIF Data Sols.*, Civ. A. No. 1:06-cv-641, 2009 WL

17 1254704, at *4 (E.D. Va. May 5, 2009) (amended complaint should not be filed under seal as "the

18 Government already had the opportunity to review the complaint and factual disclosure statement").

19 If the Government chooses not to fully investigate all the allegations in the complaint when the case

20 is under seal, the statute does not then give the Government the right to put the case back under seal

21 to later perform a "real" investigation. Practically speaking, if this approach was adopted the

22 Government would have every incentive to conduct an incomplete investigation, and then conduct

23 piecemeal investigations with every amendment, all the while sealing and unsealing cases.

24     Courts also note that little is accomplished if an amended complaint is re-sealed after the

25 case has been unsealed. First, the defendant has already been "tipped off" that the case exists

26 (obviating any advantage to sealing the amended complaint). *Schaengold*, 2014 WL 7272598, at

27 *19 ("Unsealed filings . . . will not 'tip off' [D]efendants to the existence of an investigation.")

28

RELATOR'S SUBMISSION OF EVIDENCE PURSUANT TO THE COURT'S APRIL 25, 2018 ORDER

1 (internal quotations omitted); *Ubl*, 2009 WL 1254704, at *4 (same). Second, sealing the case does

2 not affect the Government's freedom to intervene in the case if it chooses to do so after reviewing

3 the amended complaint, or at any later point. *Griffith*, 2013 WL 3935074, at *2 ("If the amended

4 complaint causes the United States to change its mind and want to intervene, the United States may

5 do so. *See* 31 U.S.C. § 3730(c)(4)"); *Kolchinsky*, 162 F. Supp.3d at 198 (citing *Mikes*, 931 F.Supp.

6 at 259) (same); *Saldivar*, 972 F. Supp. 2d at 1326 (same).

7       Further, as the Supreme Court recently held, and lower courts have long recognized, the

8 failure to file a complaint under seal does not mandate dismissal of the complaint in any event. *State*

9 *Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436 (2016); *see, e.g.*, *Branch Consultants,*

10 *L.L.C.*, 668 F. Supp. 2d at 803 ("numerous courts have held that such requirements are not

11 jurisdictional and their violation does not require dismissal of the complaint.").

12       Therefore, there is no basis for the Government to demand that the amended complaint in

13 this case be filed under seal; in fact the rule is to the contrary.

14                    3.       The Government failed to provide any authority for its position

15       On multiple occasions Relator's counsel provided the law to the Government attorneys,

16 asked them why they were asking for something not allowed under the law, and asked them for any

17 contrary case authority. Thomas Decl. ¶ 31. Tellingly, the Government was unable to provide any.

18 *Id.*; Thomas Decl. Ex. H. Further, Relator's counsel also asked the Government for any procedural

19 mechanism to somehow re-seal an unsealed case, and particularly to do so without altering the

20 defendants, which was a related demand by the Government. *Id.* The Government was also unable

21 to identify a mechanism that would feasibly accomplish what it sought. Even in its most recent

22 filings with the Court, the Government was unable to identify a procedure that could successfully

23 accomplish what it asked of Relator.[6]

24

25 [6]       The Government claims in its papers that L.R. 79-5(d) would be the mechanism to file the
    amended complaint under seal and not alert the defendants. United States' Response to
26      Relator's Supplemental Briefing at n.1 (Dkt. 83). However, L.R. 79-5(d) requires that
27      pursuant to L.R. 7-11 the moving party must serve an administrative motion on all **parties**
    (footnote continued)

1    At points in prior discussions, the Government suggested that Relator dismiss her case with

2   prejudice and re-file a new action. Thomas Decl. ¶ 31. Not only was there no basis for the

3   Government to require Relator to file her amended complaint under seal, the Government's proposal

4   also caused legal jeopardy to her action. For example, if Relator dismissed her case, but another

5   action was currently pending against the same defendant, a subsequent action by the Relator could

6   be barred by the FCA's first-to-file bar. *See* 31 U.S.C. § 3730(e)(3); Ferris Decl. ¶ 34. Additionally,

7   if the defendant's conduct had been publicly disclosed during the pendency of the seal, a new action

8   could be barred under the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(e)(4); Ferris Decl. ¶

9   35. Lastly, dismissal of Relator's complaint would cause Relator to lose some of her claims due to

10  statute of limitations issues. Ferris Decl. ¶ 36.

11   There simply was no basis for the Government's demand.

12                                    **<u>CONCLUSION</u>**

13   For the reasons described above, Relator has, at the very least, provided "some evidence"

14  that an evidentiary hearing is warranted.

15

16

17

18

19

20

21

22

23

---

24   to the action requesting the information be filed under seal. Therefore, the Government's

25   approach would have provided the defendants with a copy of the amended complaint,
     demonstrating that the Government sought the impossible. The Government wisely does not

26   cite L.R. 7-10 permitting *ex parte* motions because use of that procedure requires citation to
     a statute, Federal Rule, local rule or Standing Order authorizing the filing of an *ex parte*

27   motion.  As the case law above demonstrates (as well as the Government's failure then and
     now to cite any basis for such a motion), L.R. 7-10 does not provide a basis to proceed.

28

RELATOR'S SUBMISSION OF EVIDENCE PURSUANT TO THE COURT'S APRIL 25, 2018 ORDER

Dated: May 17, 2018

By:  /s/ J. Nelson Thomas
J. Nelson Thomas
Michael J. Lingle
Jonathan W. Ferris
Annette M. Gifford
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY  14607
Telephone:  585-272-0540
Facsimile:  585-272-0574

Sanford Jay Rosen
Van Swearingen
ROSEN BIEN GALVAN &
GRUNFELD LLP
50 Fremont Street
19th Floor
San Francisco, CA 94105

Counsel for Relator