UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATIONN,<br><br>Defendant. | Case No. 16-cv-02120-EMC<br><br>**ORDER DENYING UNITED STATES' MOTION TO STAY PROCEEDINGS PENDING APPELLATE DECISION**<br><br>Docket No. 115 |

In this *qui tam* suit under the False Claims Act ("FCA"), the Court denied the Government's motion to dismiss under 31 U.S.C. § 3730(c)(2)(A). The Government has filed a notice of appeal, and now requests to stay the case in this Court pending the appellate proceedings. For the reasons stated below, the Government's stay motion is **DENIED**.

## I.    BACKGROUND

The Relator brought this *qui tam* action against Defendant Academy Mortgage Corporation alleging that Defendant defrauded the Government by falsely certifying loans for government insurance. The Government declined to intervene on the initial complaint. *See* Docket No. 10. But after the Relator amended the complaint, the Government moved to dismiss under 31 U.S.C. § 3730(c)(2)(A),[1] arguing that proceeding with the suit would drain its resources. *See* Docket No. 60. The Relator objected to the motion and requested an evidentiary hearing on the Government's motion. *See* Docket No. 68 at 7. The Court invited the parties to submit evidence pursuant to the

---

[1] Section 3730(2)(A) provides that the "Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."

standard for obtaining an evidentiary hearing articulated in *U.S. ex rel. Sequoia Orange Company v. Baird-Neece Packing Corporation*, 151 F.3d 1139, 1145 (9th Cir. 1998). The Relator's evidence showed that the Government performed only a limited investigation of the original complaint and appears not to have investigated the amended complaint at all. *See* Docket Nos. 92, 93. The Government submitted no evidence. *See* Docket No. 94.

On June 29, 2018, the Court denied the Government's motion to dismiss. *See* Docket No. 97 ("Order"). On July 27, 2018, the Government filed a notice of appeal as to the Order, but "the Solicitor General has not yet determined whether to authorize [the] appeal." Docket No. 115 ("Stay Mot.") at 1. The Ninth Circuit issued an Order to Show Cause why the Government's interlocutory appeal should not be dismissed for lack of jurisdiction. *See* Order to Show Cause, *United States v. Academy Mortgage Corp.* (9th Cir. filed July 27, 2018) (No. 18-16408), Docket No. 8. The Government has not yet made a responsive filing.

Pending before the Court is the Government's motion to stay proceedings "pending the Solicitor General's determination regarding appeal and, if an appeal is authorized, the conclusion of any appellate proceedings." Stay Mot. at 1.

## II. DISCUSSION

A. Legal Standard

A court considers four factors when determining whether to issue a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors of the traditional standard are the most critical." *Id.* In applying these factors, the Ninth Circuit employs a "sliding scale" approach whereby "the elements of the . . . test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*,

556 U.S. at 433 (citation and internal quotation marks omitted). Rather, it is "an exercise of judicial discretion," and the party seeking a stay bears the burden of justifying the exercise of that discretion. *Id.* at 433–34.

B. <u>Likelihood of Success on the Merits</u>

To demonstrate a likelihood of success on the merits, the party seeking a stay is not required to "show[] that success is more likely than not." *Leiva-Perez*, 640 F.3d at 967–68. Instead, "a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Id.* Here, the Government maintains that "there is a strong argument that this Court erred in denying the Government's motion to dismiss" because the Court "misconstrued the pertinent standard of review that the Ninth Circuit set forth in [*Sequoia Orange*]." Stay Mot. at 4. The stay motion sets forth several bases for this claim, none of which is availing.

As an initial matter, there is uncertainty over whether the Government's appeal will proceed at all. First, the Solicitor General has yet to decide whether to authorize the appeal. Stay Mot. at 1. Second, the Ninth Circuit has ordered the Government to show cause why its interlocutory appeal should be heard. The Government argues here that the Order is appealable under the collateral-order doctrine, *see* Docket No. 127 ("Reply") at 4, but has not yet briefed the issue in the Ninth Circuit.

As to the substance of the dismissal question, the Government's suggestion that its proffered rationale for dismissing a case under § 3730(c)(2)(A) can be rejected by a court only for some "alleged unconstitutionality," Stay Mot. at 5, finds no support in *Sequoia Orange*. *Sequoia Orange* read the legislative history of the FCA to indicate that Congress intended § 3730(c)(2)(A) to serve as "a limited check on prosecutorial discretion to ensure suits are not dropped without *legitimate* governmental purpose." *Sequoia Orange*, 151 F.3d at 1144–45 (emphasis added). The relevant Senate Report explained that the FCA "provide[d] qui tam plaintiffs with a more direct role . . . in acting as a check that the Government does not neglect evidence, cause undue delay, or drop the false claims case without legitimate reason." *Id.* (quoting S. Rep. No. 99-345, at 25–26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291). Neither neglecting evidence nor causing undue delay implies any constitutional violation on the part of the government. Accordingly,

3

*Sequoia Orange* permits a relator to defeat a § 3730(c)(2)(A) motion upon a showing that "dismissal is fraudulent, arbitrary and capricious, or illegal," as opposed to a showing that dismissal is unconstitutional. *Id.* at 1145.

Next, the Government argues that the Court "failed to take into account the portions of *Sequoia Orange* equating the test that the Ninth Circuit announced with constitutional rational-basis review." *Id.* at 5. Although this Court quoted the Ninth Circuit's language affirming the rational basis standard as one that "respect[s] the Executive Branch's prosecutorial authority by requiring no greater justification of the dismissal motion than is mandated by the Constitution itself," Order at 5 (quoting *Sequoia Orange*, 151 F.3d at 1146), *Sequoia Orange* did not hold that a court is required to accept the Government's proffered reason for dismissal under § 3730(c)(2)(A) without any scrutiny.

First, *Sequoia Orange* described the § 3730(c)(2)(A) rational relation test as the same as that "applied to determine whether executive action violates substantive due process," citing *Lockary v. Kayfetz*, 917 F.2d 1150 (9th Cir. 1990). *Sequoia Orange*, 151 F.3d at 1145. And in *Lockary*, which involved allegations that a public utility district's refusal to issue water hookups to certain individuals violated equal protection and due process, the Ninth Circuit did not accept at face value the public utility's explanation that a moratorium on water hookups was necessary to control a water shortage. Rather, the court concluded the plaintiffs had "stated a claim for a violation of substantive due process and equal protection" in light of evidence casting into doubt "the very existence of a water shortage." *Lockary*, 917 F.2d at 1155–56. Here, too, the Government's assertion that proceeding with the case would be unduly costly was undermined by evidence submitted by the Relator showing that the Government had not meaningfully considered what the cost of the suit might be.

Second, the rational relation test is a *two*-step process. Dismissal is not automatically granted upon "identification of a valid government purpose"; the Government must show that dismissal bears a "rational relation" to the stated purpose. *Sequoia Orange*, 151 F.3d at 1145. Thereafter, the relator is given the opportunity to "demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.* As the district court in *Sequoia Orange* explained, there

was "Congressional concern about the government's improper dismissal of FCA cases," which "was addressed by a hearing requirement and reference to a legitimate reason for dismissal" in § 3730(c)(2)(A). *U.S. ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1339 (E.D. Cal. 1995) ("*Sequoia Orange E.D. Cal.*"). Hence, review, even under the rational relation test as contemplated in *Sequoia Orange* is one based on the record.

Third, the district court in *Sequoia Orange* analyzed the government's purported justifications for dismissal against the evidence; it did not simply rubber-stamp them. There, the *qui tam* claim was based on allegations that some citrus companies had made false statements to the government in connection with a citrus marketing program. *Sequoia Orange E.D. Cal.*, 912 F. Supp. at 1331. The government moved to dismiss under § 3730(c)(2)(A), in part based on the rationale that terminating the suit would "end divisiveness" in the citrus industry. *Id.* at 1342. The district examined this rationale and found that "[t]he evidence did not establish that dismissal of these cases will necessarily bring 'peace' to the industry." *Id.* at 1343. Although the district court ultimately granted dismissal, its analysis looking at the evidence behind the government's claims was approved by the Ninth Circuit as "requiring no greater justification . . . than is mandated by the Constitution itself." *Sequoia Orange*, 151 F.3d at 1146.

The Government finally contends that the cost considerations it cited provide legitimate grounds for dismissal, and that it is not "obliged to take into account the potential benefits of even meritorious litigation." Stay Mot. at 5. There is no dispute that the desire to avoid incurring litigation costs is a legitimate government concern. However, as the Order explained, the Government's motion to dismiss was denied not because this concern was illegitimate, but because the Government failed to make even a cursory showing that it had considered the potential proceeds from the litigation, a central factor in the cost analysis. *See* Order at 5; *see also Sequoia Orange E.D. Cal.*, 912 F. Supp. at 1346 (relying on government's assessment that "expenditure of the extensive resources required to continue prosecution and defense of all prorate violation cases was disproportionate to the benefits obtainable"); *U.S. ex rel. Nicholson v. Spigelman*, No. 10 C 3361, 2011 WL 2683161, at *2–3 (N.D. Ill. July 8, 2011) (granting § 3730(c)(2)(A) dismissal based on government's representation that continued litigation "would

5

divert the government's limited resources from more substantial and important investigations," a conclusion "reached . . . after an investigation of the suit and a cost-benefit analysis").

Thus, even under the limited scope of judicial review over § 3730(c)(2)(A) motions, the Relator's evidence indicating that the Government may not have investigated the amended complaint at all, together with the Government's failure to submit any responsive evidence, means that the Government failed to meet the *Sequoia Orange* rational relation standard. As a result, and for the reasons stated in the prior order, the Government has not established that it has "a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 967–68.

C.      Irreparable Harm

A movant's "burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968. As the Supreme Court has explained, the "key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

The Government describes two forms of harm it would suffer if these proceedings are not stayed. First, the denial of its request to dismiss this case "intrudes upon the Executive Branch's 'special province' to determine" whether to prosecute violations of federal law and "exercise . . . its enforcement prerogatives." Stay Mot. at 8. In other words, a purely legal harm. Second, "the Government's need to continue expending resources in this case" is a harm that goes beyond "[m]ere litigation expense," which the Government admits "generally would not constitute an irreparable injury." *Id.* at 9 (quoting *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)). Neither theory of harm is persuasive.

The Government protests that the "Order's mistaken view of 31 U.S.C. § 3730(c)(2)(A) and the *Sequoia Orange* standard means that the relator alone, over the Government's objection, continues to wield [the] power" to exercise prosecutorial discretion. Stay Mot. at 8. As the previous section explains, however, all that *Sequoia Orange* does is serve as "a limited check on prosecutorial discretion to ensure suits are not dropped without legitimate governmental purpose."

6

*Sequoia Orange*, 151 F.3d at 1144–45. The Government here has simply failed to adduce any evidence to counter the Relator's evidence that the Government sought to drop the suit without any investigation of the amended complaint. The burden on the Government to show dismissal is warranted is relatively low, but it failed to meet that burden here.

Moreover, the Ninth Circuit has held that "the judicial involvement which the FCA authorizes does not contravene the separation of powers principle." *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 756 (9th Cir. 1993). As the *Kelly* court detailed, "ample precedent exists for judicial oversight of the government's decision to dismiss a qui tam action." *Id.* "For example, Federal Rule of Criminal Procedure 48(a) requires the government to obtain leave of court to terminate a prosecution by dismissing an indictment, information or complaint. In addition, the government may settle a criminal case by plea bargain only with court approval. And finally, a court may enter a consent judgment proposed by the government in an antitrust action only if it is in the public interest." *Id.* n.12 (citations omitted).

Of course, judicial oversight can go too far and create a "risk of 'interference with the internal deliberations of a Department of the Government of the United States'" beyond "an abstract concern with the separation of powers." *In re al-Nashiri*, 791 F.3d 71, 79–80 (D.C. Cir. 2015) (providing the example of a "court monitor [who] was attending internal Department of Interior (DOI) meetings and interfering with the agency's ability to comply with a court order" and whose "duties were so wide-ranging as to have a potentially significant effect upon the DOI's deliberative process") (quoting *Cobell v. Norton*, 334 F.3d 1128, 1134–35, 1141–43 (D.C. Cir. 2003)). Asking for more than just a bare assertion of resource concerns when the Government seeks to dismiss a *qui tam* suit, however, does not rise to this level. *See Sequoia Orange E.D. Cal.* at 1340 ("Judicial review [pursuant to § 3730(c)(2)(A)] does not inject the court into the executive's decision to dismiss," nor "place an additional burden on the executive's exercise of prosecutorial discretion, because the constitution itself prohibits arbitrary or irrational prosecutorial decisions.") (citing *United States v. Redondo-Lemos*, 955 F.2d 1296, 1299–1300 (9th Cir. 1992)).

As for the second theory, the Government acknowledges that the expense of litigation

7

typically does not constitute irreparable injury, but nonetheless asserts that "there is a significant difference between a party bearing defensive litigation costs and a party effectively being forced by a court to proceed with an enforcement action." Reply at 8. The Government cites no authority in support of this purported distinction. In any event, the Government has made no factual showing of a substantial burden. The Court recognizes that the Government has been served with a subpoena by the Defendant for the production of documents. *See* Docket No. 127-1 (Subpoena). To the extent that this or other discovery requests may be overly broad and seek documents whose probative value to the case is outweighed by the burden on the Government to produce them, the Government can seek appropriate relief from the Court. But for the purposes of this motion, the Government has not shown that it will be irreparably injured if the stay is denied.

D. <u>Injury to Other Parties and Public Interest</u>

In ruling on a stay motion, "[a] Court need not consider the third and fourth factors unless it concludes that the moving party has made an adequate showing on the first two." *Dunson v. Cordis Corp.*, No. 16-CV-03076-EMC, 2016 WL 10679457, at *4 (N.D. Cal. Nov. 8, 2016) (citing *Nken*, 556 U.S. at 435). Because the Government cannot carry its burden with respect to either of the first two prongs, it is unnecessary for the Court to reach the rest of the analysis.

In any event, the final two factors do not tip the balance. The Relator argues that further delays in this case would prejudice both the Relator and the Defendant, because of the increased difficulty in obtaining discovery with the passage of time.[2] *See* Docket No. 123 at 9–10. It is true that the allegations of wrongful conduct in this case stretch back to 2010, *see* Docket No. 45 ¶ 168, and that "with passing time, there remains a risk of lost and destroyed evidence, as well as fading witness memories." *Ramos v. Capital One, N.A.*, No. 17-CV-00435-BLF, 2017 WL 895635, at *3 (N.D. Cal. Mar. 7, 2017). On the other hand, when the conduct at issue dates back that far, "additional damage from granting a stay should be relatively small in comparison to damage from the pre-existing delay." *Id.* This factor is thus neutral.

The public has an interest in the expeditious resolution of this case, because the allegations

---

[2] However, the Defendant denies that it will suffer any prejudice as a result of a stay, and represents that it consents to the stay sought by the Government. *See* Docket No. 125 at 2.

8

that the Defendant fraudulently certified loans for government insurance and put taxpayers on the hook for improperly endorsed loans implicates the public interest. *See Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *4 (N.D. Cal. Jan. 11, 2012) (finding that "delay [resulting from a stay] can harm the public interest, particularly where the substance of the case itself implicates the public interest"). If there is merit to Plaintiffs' claim, there is a strong public interest in knowing about it. The Government contends that there is a public interest in staying the proceedings to prevent resources from being spent unnecessarily in case the Government succeeds in its appeal. *See* Reply at 10. But because it is uncertain whether the appeal will proceed at all, and "[b]ecause [the Government] does not have a strong likelihood of success on appeal, a stay may not result in the conservation of judicial resources," and "the public interest in judicial economy does not strongly favor granting a stay." *Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076, at *5 (N.D. Cal. Aug. 2, 2007). Moreover, as noted above, the Government has not established it will be subject to a substantial burden were this litigation to proceed.

### III. CONCLUSION

For the foregoing reasons, the United States' motion to stay proceedings is **DENIED.** This order disposes of Docket No. 115.

**IT IS SO ORDERED**.

Dated: October 3, 2018

_____
EDWARD M. CHEN
United States District Judge

9