UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br> v. <br> ACADEMY MORTGAGE CORPORATIONN, <br> Defendant. | Case No. 16-cv-02120-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** <br><br> Docket No. 126 |

In this *qui tam* suit under the False Claims Act ("FCA"), the Court denied Defendant Academy Mortgage's ("Academy") motion to dismiss. Academy now asks the Court to reconsider its ruling, primarily on the basis of the recent Ninth Circuit decision in *United States v. Stephens Institute*, 901 F.3d 1124 (9th Cir. 2018), which Academy claims clarified the standard for analyzing falsity under the FCA.

For the reasons below, the Court **DENIES** Defendant's motion for leave to file motion for reconsideration.

## I. BACKGROUND

The Relator alleged that Academy defrauded the Government by falsely certifying loans for government insurance. Academy moved to dismiss, arguing that the Relator's amended complaint failed to allege that Academy made materially false claims or acted with scienter. *See* Docket No. 50. On August 24, 2018, the Court denied the motion, holding that, *inter alia*, the Relator had adequately alleged false claims under a "promissory fraud" theory. *See* Docket No. 117 ("Order") at 13–15. The Ninth Circuit issued the *Stephens Institute* decision on the same day. Pending before the Court is Academy's motion for leave to file a motion for reconsideration of the Order. Docket No. 126 ("Mot.").

## II. DISCUSSION

### A. Legal Standard

Under Local Rule 7-9, a party must seek leave of the court to file a motion for reconsideration. N.D. Civ. L.R. 7-9(a). To prevail, a party "must specifically show reasonable diligence in bringing the motion" *and* show that one of the following conditions is true:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

N.D. Civ. L.R. 7-9(b). A motion for leave may not "repeat any oral or written argument made by the applying party of or in opposition to the interlocutory order which the party now seeks to have reconsidered." N.D. Civ. L.R. 7-9(c).

Academy moves for reconsideration on two bases. Under Local Rule 7-9(b)(2), it argues that *Stephens Institute* constitutes a change in controlling law. *See* Mot. at 2. Under Local Rule 7-9(b)(3), it argues that the Court manifestly failed to consider that Academy's annual recertifications do not create a contract and are therefore not subject to the FCA. *See* Mot. at 5. Academy has not met the high standard for showing that reconsideration is warranted on either ground. First, *Stephens Institute* clarified the law with respect to the implied false certification theory for establishing falsity under the FCA, but did not change the law with respect to the promissory fraud theory. Second, a promissory fraud claim extends not only to contracts but also to government benefits more generally.

### B. Change in Law

The "Ninth Circuit[] . . . clarified that there must be a change in the '*controlling* law' in order to justify a motion for reconsideration." *Samet v. Procter & Gamble Co.*, No. 5:12-CV-1891-PSG, 2014 WL 1782821, at *2 (N.D. Cal. May 5, 2014) (emphasis in original) (quoting

2

*Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000)). Academy argues that *Stephens Institute* rendered such a change in controlling law as to the FCA falsity standard. *See* Mot. at 2. It did not.

Under *Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), a FCA claim requires: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Id.* at 1174. The Ninth Circuit clarified in *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) that to meet the falsity element, a relator can establish a claim under the implied false certification theory by showing that "(1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Id.* at 998. But the Supreme Court's decision in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) "has unsettled the state of this circuit's law with regard to . . . falsity." *Stephens Institute*, 901 F.3d at 1127. *Escobar* held that

> [t]he implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Escobar*, 136 S. Ct. at 2001.

*Stephens Institute* recognized that *Escobar* "did not state that its two conditions were the *only* way to establish liability under an implied false certification theory," but rather that falsity could be established "*at least* where" the two conditions were satisfied, and therefore did not necessarily overrule *Ebeid. Stephens Inst.*, 901 F.3d at 1127 (emphasis in original). However, because the Ninth Circuit in *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 901 (9th Cir. 2017) had already interpreted *Escobar* to require that the "two conditions *must* be satisfied" to state an implied false certification claim, *Stephens Institute* concluded that a relator "must satisfy *Escobar*'s two conditions to prove falsity." *Stephens Inst.*, 901 F.3d at 1127 (emphasis in original).

3

This Court did not rely on the implied false certification theory in denying Academy's motion to dismiss, but did note that the amended complaint would have failed to meet the *Escobar* standard "as it fails to allege that Academy's claims made any specific representations." Order at 12. Thus, *Stephens Institute* makes definitively clear that the Relator has failed to establish falsity under an implied false certification theory.

The relevant question, however, is whether *Stephens Institute* changes the falsity analysis under the promissory fraud theory. It is true, as Academy states, that the same elements are required to establish a promissory fraud claim and a false certification claim, *i.e.*, the four elements set forth in *Hendow*. *See* Mot. at 3; Order at 13 ("Regardless of whether one proceeds under promissory fraud or false certification, the elements to be proven remain the same . . . ."). But Academy's assertion that the two *Escobar* conditions for proving falsity apply to a promissory fraud claim in the exact same way as they apply to a false certification was already rejected by this Court. As the Order explained, the Relator's promissory fraud claim does not fail even though the false certification claim failed to meet the *Escobar* standard because "*Escobar* only addressed the implied certification theory. Under the promissory fraud theory, a claim is false if it is based on a contract or other government benefit obtained through false statements. In that case, the false statement is made during the contracting process, not the claim process." Order at 15. The falsity element under a promissory fraud theory, unlike with an implied false certification theory, can be met with a showing "of an original fraud (*whether a certification or otherwise*)" upon which subsequent claims for government benefits are premised. *Hendow*, 461 F.3d at 1173 (emphasis added). Promissory fraud is thus a "somewhat broader" theory than false certification, and a promissory fraud claim can succeed even where a false certification claim falls at the falsity hurdle. *Id.* (citing with approval *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir.2005), in which the Seventh Circuit found for the relator on a promissory fraud theory even though the district court had denied the false certification claim).

Academy next argues that, even if a promissory fraud claim is not governed by *Escobar*'s two conditions, the Relator has only pleaded falsity "based on subsequent non-compliance with HUD regulations and sub-regulatory guidance," which "requires the claim to be analyzed under

4

the microscope of legally false claims." Mot. at 4. In support of this proposition, Academy cites only *United States ex rel. Anita Silingo v. WellPoint, Inc.*, No. 16-56400, --F.3d---, 2018 WL 4403407 (9th Cir. Sept. 11, 2018).[1] *See* Mot. at 4. *Silingo* does not advance Academy's claim. There, private health insurance organizations were alleged to have submitted false claims for Medicare Advantage payments by reporting falsified risk adjustment data relating to patients' health profiles. *Silingo*, 2018 WL 4403407 at *1–5. "[I]t is an express condition of payment that a Medicare Advantage organization certify (based on best knowledge, information, and belief) that the [risk adjustment] data it submits . . . are accurate, complete, and truthful." *Id.* at *3 (alterations in original). Because the alleged wrongdoing in *Silingo* centered on false certifications made with respect to specific claims for payment, the relator brought suit under, and the *Silingo* court analyzed the claim under, a false certification theory. *Id.* at *5. There was no promissory fraud theory pleaded. *Id.* Thus, *Silingo* does not suggest that the Relator's promissory fraud claim here must be analyzed as an implied false certification claim.[2]

C. <u>Manifest Failure to Consider Material Facts</u>

Academy argues that there was a manifest failure by the Court to consider that "the annual certifications [submitted by Academy] do not create a contract," "do not relate to the submission of claims, and are not subject to the False Claims Act." Mot. at 5. Academy's reasoning is unavailing for two reasons. First, accepting as true Academy's assertion that the annual certifications are not contracts, the promissory fraud theory nevertheless applies to Academy's alleged conduct. *Hendow* described promissory fraud liability as "attach[ing] to each claim submitted to the government under a contract, when the contract or *extension of government*

---

[1] Academy cites to *United States ex rel. Silingo v. WellPoint, Inc.*, 895 F.3d 619 (9th Cir. 2018), which was amended and superseded on denial of rehearing en banc by *Silingo*, 2018 WL 4403407.

[2] Academy also makes an unrelated argument that the Court should not have permitted the Relator to take discovery on loan-level certifications because the complaint did not state a sufficiently specific claim as to those certifications. Mot. at 4 (citing Order at 15 n.4). However, Academy relies on two inapposite cases holding that a party should not be allowed to conduct discovery on claims it never pleaded at all. *See Altman v. HO Sports Co.*, No. 1:09-CV-1000, 2010 U.S. Dist. LEXIS 133280, at *6 (E.D. Cal. Dec. 2, 2010) (holding that defendant was "under no obligation to conduct discovery on unpled causes of action"); *Lifeguard Licensing Corp. v. Kozak*, 2016 U.S. Dist. LEXIS 68724, at *7-8 (S.D.N.Y. May 23, 2016) (explaining that "information relevant only to claims not yet pled was beyond the scope of discovery, at least without leave of court").

*benefit* was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173 (emphasis added); *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1091 (D. Or. 2012) ("[L]iability under the promissory fraud doctrine attaches . . . as the result of the original fraud perpetrated in securing the government contract *or benefit*") (emphasis added). Here, Academy allegedly submitted false annual certifications to the Federal Housing Administration in order to access the benefits under the Direct Endorsement program, and so promissory fraud liability attaches. Second, the contract or government benefit that was fraudulently obtained does not itself have to be subject to the FCA in order to support promissory fraud liability for a subsequent claim; it is sufficient that "the underlying fraud be material to the government's decision to pay out moneys to the claimant." *Hendow*, 461 F.3d at 1174. Here, the Department of Housing and Urban Development relies on both annual and loan-level certifications to ensure that only eligible loans are endorsed for government insurance, *see* Order at 1, so the annual certifications are material to the government's decision to assume liability for Academy's loans.

## III. CONCLUSION

For the foregoing reasons, Academy's motion is **DENIED**.

This order disposes of Docket No. 126.

**IT IS SO ORDERED**.

Dated: October 3, 2018

_____
EDWARD M. CHEN
United States District Judge