Pete Marketos (admitted *pro hac vice*)
Joshua Russ (admitted *pro hac vice*)
Andrew Wirmani (admitted *pro hac vice*)
Leslie Chaggaris (admitted *pro hac vice*)
Tyler Bexley (admitted *pro hac vice*)
Brett Rosenthal (admitted *pro hac vice*)
Jamison Joiner (admitted *pro hac vice*)
REESE MARKETOS LLP
750 North Saint Paul Street, Suite 600
Dallas, Texas 75201

Alex Reese (State Bar No. 280530)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: areese@fbm.com

Attorneys for Relator Gwen Thrower

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GWEN THROWER,<br><br>Plaintiff,<br><br>vs.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | Civil Action No. 3:16-cv-02120 (EMC)<br><br>**RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Edward M. Chen<br><br>Date:  **July 28, 2022**<br>Time:  **1:30 P.M.**<br>Ctrm:  **Remote or TBD** |

**NOTICE OF MOTION AND MOTION**

**To all parties and counsel of record:** Pursuant to Local Rules 7-2 and 56-1, please take notice that Relator is filing this Motion for Partial Summary. The Court has set a remote hearing for dispositive motions for July 28, 2022 at 1:30 p.m. Pacific. Doc. 312. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting declarations, the pleadings, discovery, and evidence in this case, arguments of counsel, and any other materials the Court may consider in connection with the hearing on the motion.

**STATEMENT OF RELIEF SOUGHT**

Pursuant to Local Rules 7-2 and 56-1, Relator Gwen Thrower seeks summary judgment on three of Academy's affirmative defenses: limitations, waiver, and estoppel.

**ISSUES TO BE DECIDED**

1. Whether some or all of Relator's claims are barred by the False Claims Act's ("FCA") limitation period set forth in 31 U.S.C. § 3731.

2. Whether there is a genuine issue of material fact on whether the United States waived its claims under the False Claims Act.

3. Whether there is a genuine issue of material fact on whether the United States is estopped from asserting claims under the False Claims Act.

**STATEMENT OF UNDISPUTED FACTS**

1. Academy began its Direct Endorsement relationship with the Federal Housing Administration ("FHA") and Department of Housing and Urban Development ("HUD") in 1989. Ex. A-1, Neal Report at 9.

2. Academy must submit annual and loan-level certifications to HUD. Ex. A-2, LaDuca Tr. at 61:11–64:21, 88:12–90:6 .

3. Relator seeks damages for false claims submitted by Academy from 2009–17. Ex. A-3, Bennet Report at 16–18.

4. Relator filed this suit and disclosed the facts underpinning it to the Department of Justice, in April 2016. Doc. 1; Ex. A-4.

5. Academy disclosed the existence of this lawsuit to HUD in February 2017 but denied Relator's allegations. Ex. A-5 at Academy_1025509.

6. HUD's corporate representative testified that "HUD does not exhaustively review every loan originated by lenders" and does "not have the capacity to do so," and, as a result, "it is the lender's responsibility to assure that . . . they are performing their duties and meet our requirements. . . . [I]t is incumbent upon the mortgagee to adhere to our program requirements." Ex. A-6, Macias Tr. at 123:3–24:22. Accordingly, "quality assurance reviews" are *not* "exhaustive of all . . . FHA loans that Academy originates." *Id* at 122:18–23:1. Rather, they "are limited and not intended to be an exhaustive review or audit of every aspect of" Academy's loans or practices. *Id.* at 125:1–27:3.

## LEGAL STANDARD

Rule 56(a) expressly permits parties to move for partial summary judgment, meaning that a party may move for summary judgment on specific claims or defenses, or specific elements of claims and defenses. Fed. R. Civ. P. 56(a); *White v. Lee*, 227 F.3d 1214, 1240 (9th Cir. 2000). The purpose of summary judgment is to resolve cases or significant portions of cases when trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A summary judgment motion pierces the pleadings to determine whether the parties have proof for their claims and defenses such that trial is needed. This distinguishes between mere allegations of a dispute in the pleadings and a real controversy requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Summary Judgment Under Federal Rules*, 99 F.R.D. 465, 466 (1984).

Academy bears the burden to prove its affirmative defenses. *Ing Bank, FSB v. Chang Seob Ahn*, 758 F. Supp. 2d 936, 13 (N.D. Cal. 2010). Accordingly, Relator need only produce evidence negating one or more elements of Academy's defenses, point to Academy's inability to prove one or more elements of its defenses, or both. *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015); *Nissan Fire Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once Relator

has met her initial prima facie burden, the burden shifts to Academy to present facts that show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). To meet its burden, Academy must produce evidence that is more than some metaphysical doubt as to a material fact or a mere scintilla of evidence and cannot simply restate the pleadings or a set forth unsupported allegations. *Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 324 (1986); *Matsushita*, 475 U.S. at 586; *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

**ARGUMENT**

**I.     The Court should grant summary judgment on Academy's limitations defense.**

Relator seeks damages for false claims submitted to the Government by Academy from 2009–17. Ex. A-3, Bennet Report at 16–18. Academy argues that Relator's claims are barred by limitations in two respects. First, Academy argues that the FCA has a six-year limitations period that precludes recovery for claims before April 21, 2010. Doc. 202, Am. Answer at 35. Second, Academy argues that under a promissory fraud theory, all of Relator's claims are time-barred because the "operative date for the statute of limitations is the date Academy entered into the agreement with the government governing the Direct Endorsement lending relationship, not the date of any annual certifications made thereafter." *Id*. For the reasons detailed below, both arguments fail. Accordingly, the Court should grant summary judgment on Academy's limitations defense.

The FCA has two limitations periods. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019).

> The first period requires that the action be brought within 6 years after the statutory violation occurred. The second period requires that the action be brought within 3 years after the United States official charged with the responsibility to act knew or should have known of the relevant facts, but not more than ten years after the violation. Whichever period provides the later date serves as the limitations period.

*Id.* Simply put, the limitations period is six years, or three years after the "United States official

charged with the responsibility to act" knew the relevant facts, but not more than ten years. *Id.* The "official charged with responsibility" is the Attorney General. *See id.* at 1514; *see also, e.g.*, *Martin J. Simko Constr. v. United States*, 852 F.2d 540, 548 (Fed. Cir. 1988) ("Regardless of who initiates the suit, the Attorney General is *specifically* authorized to administer such claims for the government. No other agency is empowered to act under the statute. . . . Congress could not have stated more clearly its intent to give the Attorney General specific authority to 'administer, settle,' or determine' claims or disputes under the False Claims Act.").

In practice, this means that "if the Government discovers the fraud on the day it occurred, it would have 6 years to bring suit, but if a relator instead discovers the fraud on the day it occurred and the Government does not discover it, the relator could have as many as 10 years to bring suit." *Cochise*, 139 S. Ct. at 1513.

Relator filed this case on April 21, 2016. Doc. 1. She informed the Department of Justice of the case a few weeks before. Ex. A-4. There is no evidence that the Attorney General or Department of Justice knew or should have known of the relevant facts before then. The case was therefore timely filed and Relator may allege FCA violations and recover damages for as far back as 2006. 31 U.S.C. § 3731(b)(2). Accordingly, Academy's contention that claims made before April 21, 2010 fails as a matter of law.

Academy's second argument that the operative date for limitations under a promissory fraud theory is in 1989 when it began its Direct Endorsement relationship with HUD fares no better. To start, the argument rests on a tenuous premise from Academy's perspective—that *every* annual certification Academy has made to HUD was false. Even if that is the case, Relator's claims are not time-barred. The Court has already held that the violation under a promissory fraud theory is the false annual certification itself. *See* Doc. 117 at 16–17. In other words, each false annual certification is its own self-contained violation for participation in the attendant year. As above, there is no evidence that the Attorney General or Department of Justice knew Academy was making false annual certifications before Relator informed the DOJ about her suit in April 2016. Thus, Relator may recover damages under a promissory fraud theory for annual certifications

going back to 2006.

For all these reasons, there is no genuine dispute of material fact on whether the claims Relator pursues from 2009–2017 are time-barred. The Court should therefore grant summary judgment on Academy's limitations defense.

**II.    The Court should grant summary judgment on Academy's waiver and estoppel defenses.**

Academy contends that Relator's claims are barred by the doctrines of waiver and estoppel. Doc. 202, Am. Answer at 35–39. The Court already dismissed these defenses once. Doc. 191 at 5–6. Academy's efforts to replead them fare no better. Because Academy cannot raise a genuine fact issue as to whether waiver and estoppel apply, the Court should grant summary judgment on those defenses.

**A.    The Government's alleged knowledge of Academy's misconduct is not an affirmative defense.**

To start, both Academy's waiver and estoppel defenses turn on the same flawed premise—because the Government was supposedly aware of Academy's misconduct yet has allowed Academy to continue participating in the FHA program, Relator's FCA claims are barred.

Academy's contention is factually incorrect. As detailed below, Academy never disclosed the misconduct at issue to HUD and denied that it engaged in the alleged conduct. More important, and as courts across the country recognize, Academy's contention is wrong on the law. *See, e.g.*, *United States v. Pub. Warehousing Co. K.S.C.*, No. 1:05-cv-2968-TWT, 2017 WL 1021745, at *5–6 (N.D. Ga. Apr. 16, 2017) (cleaned up) (rejecting government knowledge defense and defendant's argument that "once fraud is discovered, the government is then required to stop continuing payments or lose its right to enforce the FCA" because "to find otherwise could lead to perverse outcomes; the more dependent the government became on a fraudulent contractor, the less likely it would be to terminate the contract (and the less likely the contractor would be held liable)"). Indeed, the Ninth Circuit rejected Academy's argument over 30 years ago:

> That a defendant has disclosed all the underlying facts to the government may, the United States in its brief concedes, show that

>the defendant had no intent to deceive.[1] But what constitutes an offense is not intent to deceive, but knowing presentation of a claim that is either "fraudulent" or simply "false." 31 U.S.C. § 3729(a)(1) and (2). The requisite intent is the knowing presentation of what is known to be false. *That the relevant Government officials know of the falsity is not itself a defense.*

*United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (emphasis added). Simply put, government knowledge is not an affirmative defense. With that in mind, and for the reasons detailed below, Academy's waiver and estoppel defenses fail as a matter of law.

**B.     The Court should grant summary judgment on waiver.**

"Waiver requires a defendant to show that a plaintiff 'has intentionally relinquished or abandoned a known right.'" Doc. 191 at 5 (quoting *Desert Eur. Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11-197 RSWL, 2011 WL 3809933, at *4 (C.D. Cal. Aug. 25, 2011)). Academy contends the United States waived its rights under the FCA "by making, and continuing to make, payments on claims submitted for insurance proceeds for loans endorsed by Academy" despite allegedly knowing of Academy's misconduct. Doc. 202, Am. Answer at 35. Here, too, Academy is wrong on the facts and the law.

For starters, there is no evidence the Government was informed or otherwise knew about the misconduct alleged here. While Academy argues that HUD *should* have known of its misconduct through quality assurance audits and reviews (Doc. 202 at 35–38), HUD's corporate representative offered uncontroverted testimony to the contrary. In describing the reviews' limited scope and purpose, HUD's representative testified that "HUD does not exhaustively review every loan originated by lenders" and does "not have the capacity to do so," and, as a result, "it is the lender's responsibility to assure that . . . they are performing their duties and meet our requirements. . . . [I]t is incumbent upon the mortgagee to adhere to our program requirements."

---

[1] "All the underlying facts" means just that—*all* the underlying facts. As discussed below, Academy never disclosed *all* the facts, and instead has denied the allegations made here to HUD. Ex. A-5 at Academy_1025515. So not only does Academy's government knowledge argument fall flat for its affirmative defenses, it also fails to negate scienter. *See Hagood*, 929 F.2d at 1421; *see also United States v. Bald Eagle Realty*, 1 F. Supp. 2d 1311, 1316 (D. Utah 1998) (holding question of negated intent did not arise where defendants failed to disclose information to the government).

1  Ex. A-6, Macias Tr. at 123:3–24:22. Accordingly, "quality assurance reviews" are *not* "exhaustive
2  of all . . . FHA loans that Academy originates." *Id.* at 122:18–23:1. Rather, they "are limited and
3  not intended to be an exhaustive review or audit of every aspect of" Academy's loans or practices.
4  *Id.* at 125:1–27:3. In sum, Academy has no evidence to show that HUD, through its quality
5  assurance review and audits, knew of the nature, severity, or extent of misconduct alleged here.

6  Academy's suggestion that the Government should have "bec[o]me aware of the purported
7  falsity of the claims submitted for insurance proceeds for loans endorsed by Academy" when
8  Relator filed her original and amended complaints likewise falls flat. Indeed, Academy informed
9  HUD of the existence of this suit but unequivocally denied that it engaged in the alleged
10 misconduct. Ex. A-5 at Academy_1025515 ("Academy also received a qui tam lawsuit. . .
11 Academy denied the allegations.").

12 Years ago, the Court recognized the severity of Academy's violations in this case:

> Here, the alleged violations which contravene Academy's certifications are far from trivial. Violations such as overriding endorsement conditions, manipulating the data to get an otherwise unqualified loan to qualify, hiding adverse documentation, and incentivizing underwriters to facilitate the making of bad loans through payment of commissions go to the heart of the DE lender's duty to the Government under the program. *It is highly plausible that HUD would not have continued to insure Academy's loans if Academy had been forthright about these violations instead of falsely certifying its compliance with HUD regulations.*

Doc. 117 at 17–18 (emphasis added). Simply put, Academy has no evidence that it was ever forthright with the Government. Because Academy cannot show that the Government knew Academy submitted false annual and loan-level certifications en masse through its persistent violation of critical HUD rules, requirements, and regulations, it cannot establish a *known* right for the Government to waive. Accordingly, it cannot carry its burden.

Even if some evidence existed, however, Academy's waiver defense would still fail. Academy's contention is that because *HUD* knew of its misconduct, the Government waived its rights under the FCA. Doc. 202 at 35–38. But "only the DOJ can waive a claim under the FCA." *United States ex rel. Condie v. Bd. of Regents of Univ. of Cal.*, No. C-89-3550-FMS, 1993 WL

740185, at *3 (N.D. Cal. Sept. 7, 1993); *see also United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) ("[W]e do not believe that the Congress ever intended that contracting officers should have the power to vitiate the False Claims statute."); *United States ex rel. Monahan v. Robert Wood Johnson Univ. Hosp. at Hamilton*, No. 02-5702 (JAG), 2009 WL 4576097, at *7 (D.N.J. Dec. 1, 2009) ("Violation of the FCA, therefore, may only be waived by the Department of Justice, and the unauthorized statements of United States agents may not serve to waive the Government's claims.").

So to prove waiver, Academy must show that the DOJ—*not HUD*—has intentionally relinquished or abandoned its rights under the FCA. *United States v. DynCorp Int'l LLC*, 282 F. Supp. 3d 51, 57 (D.D.C. 2017) (striking waiver defense because defendant could not show that the "Attorney General was aware of or participated in" the alleged waiver and therefore could not prove "that DOJ had the unmistakable intent to waive" its FCA claim); *Condie*, 1993 WL 740185, at *2 ("[T]he DOJ is the only agency that can waive prosecution of FCA claims."). Because there is no such evidence, Academy cannot meet its burden. Instead, Academy makes the sweeping argument that the Government's election not to intervene and subsequent motion to dismiss— which the Court denied—constitute waiver. Academy's contention is not the law, disregards Congress's intent to "place full responsibility for False Claims Act litigation on private parties" absent intervention by the DOJ, and would lead to the absurd result of every declined FCA claim potentially being barred by waiver. *See, e.g.*, *United States v. Academy Mortg. Corp.*, 968 F.3d 996, 1008 (9th Cir. 2020) (citations omitted).

At bottom, Academy has no evidence that HUD—much less the DOJ—knew of its conduct, and no evidence that the DOJ "intentionally relinquished or abandoned a known right." Doc. 191 at 5 (citations omitted). For these reasons, the Court should grant summary judgment in Relator's favor on Academy's waiver defense.

**C.     The Court should grant summary judgment on estoppel.**

"[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Comm. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 61, 60 (1984);

*see also Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990)) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."). This principle applies equally to claims under the FCA. *See, e.g.*, *United States v. Cushman & Wakefield*, 275 F. Supp. 2d 763, 768 (N.D. Tex. 2002) (striking estoppel defense to FCA claim); *United States ex rel. Dye v. ATK Launch Sys., Inc.*, No. 1:06-cv-39 TS, 2008 WL 4642164, at *2 (D. Utah Oct. 16, 2008) (same).

With these principles in mind, the "Ninth Circuit has developed a two-prong test which it applies as a threshold matter before deciding whether the 'traditional elements' of estoppel are present." *United States v. Hatcher*, 922 F.2d 1402, 1410 (9th Cir. 1991) (quoting *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989)). First, the party asserting estoppel must show affirmative misconduct by the Government "'going beyond mere negligence.'" *Id.* Second, the party must prove that the Government's "wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage." *Id.* at 1411 n.12. Only when those threshold showings are made does the Court apply the traditional elements of estoppel:

> (1) The party to be estopped must *know the facts*; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Doc. 191 at 5 (quoting *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)). Academy cannot meet its burden on any of the above elements.

Academy's argument, at root, is that estoppel should apply because (1) the Government "had full knowledge" of its false certifications and misconduct yet continued to allow participation in the DE program; and (2) Academy did not expect to be subject to liability under the FCA and "was also not aware that the United States would seek triple recovery, rather than indemnification." Doc. 202, Am. Answer at 38–39. For the reasons detailed above, there is no evidence that the Government "knew, or should have known, of the alleged false certifications."

Doc. 191 at 6. And the law is clear that "[n]either the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

There is no evidence of affirmative misconduct by the Government. There is no evidence of serious injustice to Academy; on the contrary, allowing taxpayers to foot the bill for millions and millions of dollars of fraudulent FHA mortgages would cause undue damage to the public. There is no evidence the Government knew all the facts. There is no evidence the Government intended Academy to rely on any of its conduct. There is no evidence Academy was ignorant of any such conduct by the Government. And there is no evidence Academy relied on any such conduct to its detriment.

Academy has no evidence to carry one, let alone all, of the elements on its estoppel defense. Summary judgment is thus warranted.

## CONCLUSION

For all these reasons, the Court should grant summary judgment in Relator's favor on Academy's limitations, waiver, and estoppel affirmative defenses.

Dated: June 23, 2022

                                                Respectfully submitted,

                                                */s/ Joshua M. Russ*
                                                Joshua M. Russ (admitted *pro hac vice*)
                                                REESE MARKETOS LLP
                                                Attorney for Relator