**WEINER BRODSKY KIDER PC**
Mitchel H. Kider, CA Bar No. 116479
Jason W. McElroy (*pro hac vice*)
Joseph M. Katz (*pro hac vice*)
Jasmine Jean-Louis (*pro hac vice*)
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone:  202.628.2000
Facsimile:  202.628.2011
Email: kider@thewbkfirm.com, mcelroy@thewbkfirm.com,
         katz@thewbkfirm.com, jean-louis@thewbkfirm.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Thomas M. McInerney, CA Bar No. 162055
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:  415.442.4810
Facsimile:  415.442.4870
Email:  tmm@ogletree.com

*Attorneys for Defendant Academy Mortgage Corporation*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GWEN THROWER, <br><br> Plaintiff, <br><br> vs. <br><br> ACADEMY MORTGAGE CORPORATION, <br><br> Defendant. | Civil Action No. 3:16-cv-02120 (EMC) (SK) <br><br> **ACADEMY MORTGAGE CORPORATION'S OPPOSITION TO RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge: Hon. Edward M. Chen <br> Hearing date:  July 28, 2022 at 1:30 PM PDT |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

STATEMENT OF FACTS ........................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 9

ARGUMENT ............................................................................................................................... 10

    **I.**    **Relator's Interpretation of the FCA's Statute of Limitations Belies Reason and Authority** ...................................................................................................................... 10

       a.   *Cochise Consultancy* Does Not Find the Attorney General to be the "Official Charged with Responsibility" ....................................................................................... 12

       b.   The "Official Charged with Responsibility" is the Agency Official Responsible for the Relevant Program ........................................................................................................ 13

       c.   Even if the Attorney General Were the "Official Charged with Responsibility," the AG Knew or Should Have Known About these Allegations as Early as 2008, and No Later than April 13, 2013 ........................................................................................................ 14

    **II.**   **Academy Has Raised a Genuine Issue of Material Fact that the Government has Waived its Claims** ...................................................................................................... 15

    **III.**  **Academy has Raised a Genuine Issue of Material Fact that the Government Should be Estopped from Bringing these Claims** ................................................................... 18

CONCLUSION ........................................................................................................................... 19

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242 (1986) .................................................. 9

4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 9

5

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*¸ 139 S. Ct. 1507 (2019) ............ 11, 12, 13

6

*Corley v. United States*, 556 U.S. 303 (2009) ............................................................ 11

7

*Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) ................................... 16

8

*Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012) ............................................. 15

9

*Kellogg Brown & Root Servs. v. United States ex rel. Carter*, 575 U.S. 650 (2015) ................. 13

10

*Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540 (Fed. Cir. 1988) ........................... 12

11

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996) ......................................................... 10

12

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) .............. 9

13

*United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810 (9th Cir. 1995) ................... 10, 17

14

*United States ex rel. Butler v. Hughes Helicopters*, 71 F.3d 321 (9th Cir. 1995) ................. 15, 16

15

*United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611 (W.D. Wis. 1995) ................ 19

16

*United States ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842 (E.D. Va. 2010) .............. 15

17

*United States ex rel. Hagood v. Sonoma Co. Water Agency*, 81 F.3d 1465 (9th Cir. 1996) ........ 16

18

*United States ex rel. Hagood v. Sonoma Co. Water Agency*, 929 F.2d 1416 (9th Cir. 1991) ...... 16

19

*United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985, 2002 U.S. Dist. LEXIS 26622 (C.D. Cal. Aug. 5, 2002) ....................................................................... 17

20

*United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) ........................................ 9

21

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 777 F. Supp. 195 (N.D.N.Y. 1991) ....................................................................................................... 14

22

*United States ex rel. Lewis v. Cal., Inst. Of Tech.*, No. 2:18-cv-5964, 2021 U.S. Dist. LEXIS 79171 (C.D. Cal. April 19, 2021) ........................................................................ 9

23

24

*United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625 (D. Md. 2019) ..... 14

25

*United States ex rel. Polansky v. Executive Health Resources, Inc.*, No. 21-1052, 2022 U.S. LEXIS 3021 (U.S. June 21, 2022) ......................................................................... 18

26

27

*United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158 (D.D.C. 2007) ....................... 12

28

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

*United States ex rel. Wilkins v. N. Am. Constr. Corp.*, No. H-95-5614, 2001 U.S. Dist. LEXIS 20538 (S.D. Tex. Sep. 25, 2001) ............................................................................................. 14

*United States v. Island Park*, 791 F. Supp. 354 (E.D.N.Y. 1992) ................................................ 14

**Statutes**

24 C.F.R. Part 25 .................................................................................................................................. 6

31 U.S.C. 3731(b) ............................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................................. 9

**Other Authorities**

Definition of Affirmative Defense, Black's Law Dictionary at 528 (11th Ed.) ........................... 18

John T. Boese and Douglas W. Baruch, Civil False Claims and Qui Tam Actions, §5.04[B][2] (5th ed.) ......................................................................................................................... 14, 15

Relator moves for summary judgment on three of Academy's affirmative defenses, but her arguments misinterpret Supreme Court authority and ignore the record of evidence developed in this matter.  The six-year statute of limitations applies because HUD knew of Academy's performance, including the types of loan-level deficiencies alleged by Relator, throughout the relevant time period due to HUD's regular monitoring of Academy's lending operations.  And HUD was aware that Academy had submitted false annual certifications in 2009, 2010, and 2011, as it entered into a consent order with Academy in 2012 stating that very fact.  Finally, HUD's knowledge of Academy's performance supports Academy's defenses of waiver and estoppel, and Academy has raised a genuine issue of material fact with respect to each of the elements of each of these defenses.  Indeed, Academy's evidence is the only evidence at issue on this motion, as Relator did not even attempt to disprove or rebut Academy's contentions, choosing instead to ignore Academy's evidence in support of its defenses.  Because Academy has raised a genuine issue of material fact with respect to each of the three affirmative defenses attacked by Relator, her motion for summary judgment should be denied.

## STATEMENT OF FACTS

1.     FHA is like an insurance company, funded by Mortgage Insurance Premiums ("MIP") it collects from borrowers.  S. Macias (HUD 30(b)(6)) Depo. Tr. at 111:21-113:9 (attached as Ex. A-6 to Dkt. 323-3[1]); D. LaDuca (HUD 30(b)(6)) Depo. Tr. at 96:20-97:18 (attached as Ex. A-2 to Dkt. 323-3).

2.     HUD has never suspended, revoked, or denied Academy's approval to participate in these programs.  Dkt. 323-3, Ex. A-2 at 13:19-14:1, 15:3-17, 16:4-8, 29:7-10; 50:12-51:11.

3.     To retain FHA approval, lenders must complete FHA's recertification process annually.  HUD Handbook 4000.1 §I.A.8.a.i.A (attached as Ex. 2 to Dkt. 319); *id.* at I.A.8.b.ii.  These annual certifications address the lender's compliance with FHA requirements, among other things, over the prior fiscal year.  *Id.* at I.A.8.b.i; Dkt. 323-3, Ex.A-2 at 31:11-34:14; 62:8-12.

4.     If a lender cannot certify to any statement within the annual certification, it may inform

---

[1] Dkt. 319 is the Declaration of Jason W. McElroy in support of Academy's Motion for Summary Judgment.  Dkt. 323-3 is the Declaration of Jamison Joiner in Support of Relator's Motion for Summary Judgment.  Because of the volume of documents involved, and their prior filing and sealing (*see* Dkt. 333), Academy references these exhibits.

1    HUD that it is unable to certify, and must submit an explanation and/or supporting documents.

2    Dkt. 319, Ex. 2 at I.A.8.b.iii.A; Ex. 2 at I.A.8.b.iii.B.  FHA will review the submission, and

3    render a final decision concerning the certifications.  Dkt. 319, Ex. 2 at I.A.8.b.iii.C; Dkt. 323-3,

4    Ex. A-2 at 34:15-39:6.

5    5.      On April 27, 2012, HUD entered a consent order with Academy for submitting false

6    annual certifications in the years 2009, 2010, and 2011.  HUD_Prod_0000015 (attached as Ex. 5

7    to Dkt. 319).  During those years, Academy inadvertently failed to notify HUD of state actions in

8    which Academy was involved.  Academy_1025399 (attached as Ex. 6 to Dkt. 319).  Academy

9    paid a $75,000 fine.  *Id.*  Dkt. 323-3, Ex. A-2 at 82:5-20.  HUD took no further action against

10   Academy.  Dkt. 323-3, Ex. A-2 at 12:1-14:1, 22:6-24:7.

11   6.      HUD considered Academy's annual certifications in 2009, 2010, and 2011 false as a

12   result of Academy's inadvertent failure to timely notify HUD of the state actions.  Dkt. 323-3,

13   Ex. A-2 at 81:11-82:20.  The 2012 consent order was published in the federal register on April

14   11, 2013.  78 Fed. Reg. 21618, 21618 (April 11, 2013).

15   7.      As part of its 2012 recertification process, Academy notified HUD that it was unable to

16   certify, in relevant part, because of settlement agreements with certain states:  after providing

17   supporting information, HUD authorized Academy to recertify, and Academy did.  Dkt. 323-3,

18   Ex. A-2 at 40:7-41:17; Dkt. 319, Ex. 6.

19   8.      As part of its 2013 recertification process, Academy notified HUD that it was unable to

20   certify, in relevant part, because of settlement agreements with Massachusetts and Washington:

21   after providing supporting information, HUD authorized Academy to recertify, and Academy

22   did.  Dkt. 323-3, Ex. A-2 at 43:21-45:4; Academy_1025418-19 (attached as Ex. 7 to Dkt. 319).

23   9.      As part of its 2014 recertification process, Academy notified HUD that it was unable to

24   certify, in relevant part, because of a consent order entered into with Washington.  Dkt. 323-3,

25   Ex. A-2 at 46:12-48:5; Academy_1025426-31 (attached as Ex. 8 to Dkt. 319).  Academy also

26   informed HUD it was unable to certify that it was in compliance with all FHA requirements

27   under paragraph 9 of the certification, stating it was not aware of any material deficiencies.  *Id.*

28   HUD authorized Academy to recertify, stating that it did not consider the information provided

by Academy to render the certification materially false.  *Id.*  Academy subsequently certified.  *Id.*

10.     As part of its 2015 recertification, Academy notified HUD that it was unable to certify, in relevant part, because of a consent order entered into with Kentucky:  after providing supporting information, HUD authorized Academy to recertify, and Academy did.  Dkt. 323-3, Ex. A-2 at 52:6-53:10; Academy_1025494 (attached as Ex. 9 to Dkt. 319).

11.     As part of its 2016 recertification, Academy notified HUD that it was unable to certify, in part, because of a notice of violation from HUD and this qui tam action: after providing supporting information, HUD authorized Academy to recertify, and Academy did.  Dkt. 323-3, Ex. A-2 at 55:16-56:2; Academy_1025501-15 (attached as Ex. 10 to Dkt. 319); REL_HUD-000011-16 (attached as Ex. 11 to Dkt. 319).

12.     Academy originated 110,978 FHA loans between 2008 and 2017.  HUD_Prod_0027022 (listed on "All Loans UW" tab) (attached as Ex. 31 to Dkt. 319).

13.     HUD monitors lender performance to reduce the risk of defaults and claims, improve lender performance, and remove non-complying lenders from the program.  HUD Handbook 4155.2 9.A.1.a. (attached as Ex. 32 to Dkt. 319).  These include:  on-site lender reviews; post endorsement technical reviews ("PETRs"); and analyzing lender default and claims data.  Dkt. 319, Ex. 32 at 9.A.1.b; Dkt. 323-3, Ex.A-6 at 11:10-12:16, 27:10-30:20; 95:22-99:1.

14.     During on-site and PETR reviews, "[l]oans are reviewed to determine whether a lender adhered to FHA's written policies and procedures . . . .  [E]mphasis is placed on the materiality of the risk . . . . rather than on strict adherence to compliance, procedural, and documentation requirements. Invariably, there are documentation deficiencies or processing errors on a loan that do not result in significant material risk."  J. Shaffer (former Branch Chief of HUD's Quality Assurance Division, Pennsylvania) Depo. Tr. at 173 (DOJ_0030965) (Quoting DOJ_0061013) (attached as Ex. 33 to Dkt. 319).

15.     One way HUD monitors lender performance is by conducting Post Endorsement Technical Reviews (PETRs) of FHA-insured loans based on a percentage of endorsed loans originated by each lender.  Dkt. 319, Ex. 32 at 9.A.1.b; Ex. 3 at 11:10-12:16, 13:7-21, 45:10-

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

3

46:5, 95:22-99:1.  HUD requests loan files to evaluate: 1) "the risk that loans represent to FHA's insurance funds;" and 2) "the lender's compliance with FHA's underwriting requirements, and documentation requirements."  *Id.* at 9.B.1.a.

16.     PETR reviews are 3-4 hour comprehensive reviews for all aspects of the loan.  Dkt. 319, Ex. 21 at 67:22-70:4 (DOJ_0032553-0032556).

17.     During a PETR, the reviewer can assign one of the following ratings to the FHA-insured loan: 1) conforming, indicating "[t]he loan presents an acceptable level of risk, and no documentation deficiencies or processing errors were identified[;]" 2) deficient, indicating "[t]he loan presents an acceptable level of risk, but FHA identified documentation deficiencies or processing errors[,]" which "[the] FHA expects the lender to correct. . .in future submissions[;]" 3) unacceptable, indicating "[t]he loan exhibits such serious violations of FHA requirements and, therefore, poses such a level of risk to the Department, that it should not have been approved[;]" and 4) mitigated, indicating a loan that was previously rated as unacceptable prior to the lender's explanation to mitigate the perceived risk.  Dkt. 319, Ex. 32 at 9.C.2.b.

18.     HUD maintains a PETR reporting system that correlates specific findings to specific codes.  *See* Dkt. 319, Ex. 32 at 12.B.4.a.  These codes are used for PETR and QAD reviews. Dkt. 323-3, Ex. A-6 at 59:11-61:15; 88:9-108:22; HUD_Prod_0010981 (attached as Ex. 36 to Dkt. 319); HUD_Prod_0000021 (attached as Ex. 37 to Dkt. 319); HUD_Prod_0000321 (attached as Ex. 38 to Dkt. 319).  These codes correlate to Relator's alleged violations.  Report of W. Barefoot Bankhead at ¶¶ 16, 50-93 (attached as Ex. 39 to Dkt. 319).

19.     A lender is always given an opportunity to respond to and mitigate HUD findings resulting from a PETR.  Dkt. 319, Ex. 21 at 73-74 (DOJ_0032559-0032560); Dkt. 323-3, Ex. A-6 at 61:16-62:22; Dkt. 323-3, Ex. A-2 at 77:21-78:16; 2006 OIG Report at 16 (attached as Ex. 40 to Dkt. 319).

20.     HUD also monitors lender performance by conducting on-site lender monitoring reviews, conducted by their Quality Assurance Division ("QAD Review").  Dkt. 319, Ex. 32 at 9.B.4.c; *id.* at 9.A.1.b.  The Quality Assurance Division performs "lender oversight and lender monitoring, review[s] the operations of the lender to assure that they're in compliance with our

1   operating requirements as defined in the policy guide." Dkt. 323-3, Ex. A-6 at 11:19-12:8. To

2   perform these reviews, HUD requests "operational documents" from lenders, and "review[s] a

3   sampling of their loan files in conjunction with the documentation that we request." Dkt. 323-3,

4   Ex. A-6 at 15:3-12. During the time period at issue in this matter, HUD would bring physical

5   loan files into its office to review them for compliance with its requirements. Dkt. 323-3, Ex. A-

6   6 at 17:6-19.

7   21.     As part of the QAD reviews, HUD utilizes trending reports and analyses with respect to

8   the lender it is reviewing: "We review the lenders' pipeline and the performance of their loans

9   over the lookback period, which would generally be two-year lookback period. How many loans

10  have gone into default? How many loans have gone to claim? Do we notice a particular market

11  area that may be having adverse performance? And we would select samples of those loans to

12  review, to assure that all of our underwriting requirements and also our eligibility for insurance

13  requirements had been met." Dkt. 323-3, Ex. A-6 at 30:21-31:15.

14  22.     QAD Reviews are designed, *inter alia*, to "ensure that lender practices are in compliance

15  with statutory, regulatory, and administrative loan origination and servicing requirements[;]

16  "uncover mortgage finance fraud and abuse of HUD programs[;]" and "provide consistency in

17  the resolution of problems relating to lender noncompliance with FHA's loan origination and

18  servicing requirements[.]" Dkt. 319, Ex. 32 at 9.B.4.a; Dkt. 323-3, Ex. A-6 at 14:12-18:1; 26:8-

19  31:15, 44:4-45:9. "We review lenders, and we review loans to assure the lenders' conformance

20  with HUD's requirements for eligibility for the endorsement of the loan, as well as their

21  operational compliance for approval to be direct endorsement underwriter on behalf of the

22  government under the DE program." Dkt. 323-3, Ex. A-6 at 115:1-10. HUD uses QAD reviews

23  to "assess the performance of the lender due to the requirements." Dkt. 323-3, Ex. A-6 at 130:8-

24  15.

25  23.     QAD Reviews include, but are not limited to: reverification of information in the file;

26  reviewing borrower income documentation and calculation; reviewing borrowers' credit reports

27  and credit documents; reviewing sources of funds for the borrower's down payment and closing

28  costs; reviewing gift letters and documentation; and reviewing data entered into TOTAL. Dkt.

1    319, Ex. 32 at 9.B.4.d; M. Watkins (former specialist in HUD's Single Family Housing

2    Program) Depo. Tr. at 26-43 (DOJ_0032311-0032328) (referencing (DOJ_0062594)) (attached

3    as Ex. 41 to Dkt. 319).   QAD Reviews also review a lender's quality control policy and quality

4    control findings, and review loans for eligibility requirements.   Dkt. 319, Ex. 32 at 9.B.4.d; Dkt.

5    323-3, Ex. A-6 at 26:8-20; 44:3-45:9.

6    24.    Following a QAD Review, HUD will issue a letter listing purported violations that

7    significantly increase FHA's risk ("Findings Letter").   Dkt. 323-3, Ex. A-6 at 46:17-48:22.   As

8    with PETRs, the lender is expected to provide an explanation to mitigate the identified risk.   Dkt.

9    323-3, Ex. A-6 at 53:12-54:2, 54:22-58:2, 59:15-63:3; HUD_Prod_0026770-73 (attached as Ex.

10   42 to Dkt. 319), 0026769 (attached as Ex. 43 to Dkt. 319), 0026774-76 (attached as Ex. 44 to

11   Dkt. 319), 0026783-84 (attached as Ex. 45 to Dkt. 319).

12   25.    Prior to 2015, HUD maintained information about QAD Reviews in the Approval,

13   Recertification and Review Tracking System ("ARRTS").   Dkt. 323-3, Ex. A-6 at 42:9-19.

14   Since 2015, HUD has maintained this information in the Loan Review System ("LRS").   *Id.*   Dkt.

15   319, Ex. 37.

16   26.    If HUD identifies violations through PETRs or QAD Reviews, it may impose sanctions,

17   including: lender probation; withdrawal of DE status; withdrawal of FHA approval;

18   indemnification agreements; civil money penalties; and sanctions against individual program

19   participants.   24 C.F.R. Part 25; Dkt. 319, Ex. 32 at 9.A.1.c; Ex. 32 at 9.D; Dkt. 323-3, Ex. A-6

20   at 99:2-101:8.

21   27.    Since 2008, HUD has conducted PETRs annually on the FHA loans Academy has

22   underwritten.   HUD_Prod_0000135-167 (attached as Ex. 48 to Dkt. 319); Dkt. 319, Ex. 38.

23   28.    HUD maintained detailed reports on Academy's PETR performance between the first

24   quarter of 2012 and the third quarter of 2017.   Dkt. 319, Ex. 48; Dkt. 319, Ex. 32 at 9.B.2.b.

25   These quarterly reports identify the number of PETR reviews and deficiencies identified,

26   breaking them down into categories similar to those identified by Relator, and noting the

27   percentage of deficiencies in those categories in each quarter.   *Compare* Dkt. 319, Ex. 48 *with*

28   Dkt. 319, Ex. 39 at ¶¶ 16, 50-93.   *See also* Dkt. 319, Ex. 32 at 9.B.2.b.   HUD reviewed

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

1   approximately 1,223 FHA-insured loans between Q12012 and Q32017.  Dkt. 319, Ex. 48.  HUD

2   initially rated 687 of these loans unacceptable, but later rated only 66 unacceptable following

3   Academy's mitigation efforts, entering indemnification agreements for 62 loans.  *Id*.

4   29.      Based on HUD data produced regarding PETRs conducted since 2008, HUD reviewed

5   2,625 loans underwritten by Academy.  In those 2,625 loans, HUD identified 273 loans

6   Academy had obtained AUS approvals improperly or erroneously,[2] 153 loans with debt-to-

7   income ratio errors,[3] 353 loans with insufficient asset verification,[4] 37 loans with insufficient

8   statutory investments,[5] 1,167 loans with deficient property appraisals,[6] 246 loans with

9   insufficient income and/or employment verification,[7] 611 loans with missing documents,[8] and

10  145 loans involving other underwriting errors.[9]  Dkt. 319, Ex. 38; Dkt. 323-3, Ex. A-6 at 95:19-

11  108:22.

12  30.      Between 2008 and 2015, HUD conducted four on-site QAD Reviews of Academy's

13  lending operations.  Dkt. 323-3, Ex. A-6 at 23:17-39:14, 65:8-68:18.

14  31.      HUD conducted an on-site QAD Review of Academy in 2008 ("QAD Review 20739").

15  HUD reviewed 62 loans, which resulted in Academy entering into indemnification agreements

16  for three FHA-insured loans.  HUD_Prod_0027023-27 (attached as Ex. 49 to Dkt. 319); Dkt.

17  319, Ex. 37.

18  32.      HUD conducted an on-site QAD Review of Academy in 2011 ("QAD Review 32547").

19  HUD_Prod_0026679 (attached as Ex. 50 to Dkt. 319).  HUD reviewed approximately 218 loans,

20  and gave 90 loans an initial rating of unacceptable.  Dkt. 319, Ex. 37.  Academy signed

21  indemnifications for seven loans, having mitigated the remaining deficiencies.

22

23  [2] *See* Dkt. 319, Ex. 32 at 12.b.4.a (defining codes AU01-2 and AU05 to indicate issues
    concerning AUS underwriting).

24  [3] *See id*. (defining code LA04 to indicate errors with the debt-to-income ratio).

25  [4] *See id*. (defining codes FD10 and FD20 to indicate failures to verify assets).

    [5] *See id*. (defining code FD60 to indicate lack of statutory investments).

26  [6] *See id*. (defining codes V06-17 to indicate deficient property appraisals).

27  [7] *See id*. (defining codes IC02, IC20, IC22, and IC30 to indicate failure to verify income and/or
    employment).

    [8] *See id*. (defining codes DC10-15 to indicate missing loan file documents).

28  [9] *See id*. (defining codes beginning with EQ and FP to indicate other underwriting errors).

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

1   HUD_Prod_0010288-9 (attached as Ex. 51 to Dkt. 319).

2   33.     HUD conducted an on-site QAD Review during September 2012 ("QAD Review

3   37861").  HUD_Prod_0009905-12 (attached as Ex. 52 to Dkt. 319).  HUD reviewed 210 loans,

4   and gave 15 loans an initial rating of unacceptable.  Dkt. 319, Ex. 37; HUD_Prod_0010774-84

5   (attached as Ex. 53 to Dkt. 319); Dkt. 319, Ex. 52; HUD_Prod_0026617-22 (attached as Ex. 54

6   to Dkt. 319). Academy signed indemnifications for eight loans, having mitigated the remaining

7   deficiencies.  Dkt. 319, Ex. 54.

8   34.     HUD conducted an on-site QAD Review of Academy during December 2015 ("QAD

9   Review 67209").  Dkt. 319, Ex. 54.  HUD reviewed 75 loans, and gave 50 loans an initial rating

10  of unacceptable.  Dkt. 319, Ex. 54; Dkt. 319, Ex. 37.  Academy signed indemnifications for 10

11  loans, having mitigated the remaining deficiencies.  HUD_Prod_0010863 (attached as Ex. 55 to

12  Dkt. 319).

13  35.     Based on a HUD production containing aggregate data for QAD Reviews conducted

14  since 2008, HUD reviewed approximately 1,273 FHA-insured loans.  Dkt. 319, Ex. 37.  Of these

15  1,273 loans, it identified 6 loans Academy obtained AUS approvals improperly or erroneously,[10]

16  21 loans with debt-to-income ratio errors,[11] 299 loans with insufficient asset verification,[12] 10

17  loans that lacked appropriate statutory investments,[13] 34 loans with deficient property

18  appraisals,[14] 42 loans with insufficient income and/or employment verification,[15] 20 loans with

19  missing documents,[16] and 259 loans involving other underwriting errors.[17]  *See* Dkt. 319, Ex. 37;

20  Dkt. 323-3, Ex. A-6 at 88:9-95:16.

21  36.     Relator's expert identified 218 loans as having a "deficiency" or a "possible deficiency."

22

23  [10] *See* Dkt. 319, Ex. 32 at 12.b.4.a (defining codes AU01-2 and AU05 to indicate failures to manually underwrite).

24  [11] *See id.* (defining code LA04 to indicate errors with the debt-to-income ratio).

25  [12] *See id.* (defining codes FD10 and FD20 to indicate failures to verify assets).
    [13] *See id.* (defining code FD60 to indicate lack of statutory investments).

26  [14] *See id.* (defining codes V06-17 to indicate deficient property appraisals).
    [15] *See id.* (defining codes IC02, IC20, IC22, and IC30 to indicate failure to verify income and/or

27  employment).
    [16] *See id.* (defining codes DC10-15 to indicate missing loan file documents).

28  [17] *See id.* (defining codes beginning with EQ and FP to indicate other underwriting errors).

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

1    Dkt. 319, Ex. 39 at ¶ 97.  HUD performed PETR or QAD reviews on 49 of those loans,

2    including 4 loans on which HUD performed both PETR and QAD reviews.  *Compare* Dkt. 319,

3    Ex. 39 at Ex. 5 *with* Dkt. 319, Ex. 37 and Dkt. 319, Ex. 38.  HUD required Academy to

4    indemnify only three of the 49 loans it performed PETR or QAD loans that Relator's expert

5    identified as having a "deficiency" or a "possible deficiency."  Dkt. 319, Ex. 31 ("All Loans

6    UW" tab at lines 56409, 71089, and 84422).

7    37.     HUD has the ability to refer lenders to the Mortgagee Review Board for discipline when

8    it determines a lender is not in compliance with its requirements.  Dkt. 323-3, Ex. A-6 at 141:16-

9    143:3; Dkt. 323-3, Ex. A-2 at 20:15-24:7.  HUD's Mortgagee Review Board has taken no

10   actions against Academy other than the 2012 Consent Order.  Dkt. 323-3, Ex. A-2 at 22:6-24:7.

11   38.     HUD never suspended, denied, or revoked any of Academy's statuses as an FHA lender.

12   Dkt. 323-3, Ex. A-2 at 13:19-14:1, 15:3-17, 16:4-8, 29:7-10; 50:12-51:11.

13                                **LEGAL STANDARD**

14          Summary judgment must be granted where "there is no genuine dispute as to any

15   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

16   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

17   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

18   any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*

19   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court views the evidence in the light most

20   favorable to the non-movant, but the "mere existence of some alleged factual dispute between

21   the parties will not defeat an otherwise properly supported motion for summary judgment. . . ."

22   *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 329 (9th Cir. 2017) (cleaned up).  "If the

23   evidence is merely colorable, or is not significantly probative, summary judgment may be

24   granted." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)*.*

25          "To survive summary judgment, the relator must establish evidence on which a

26   reasonable jury could find for the plaintiff." *Serco,* 846 F.3d at 330 (quoting *United States ex rel.*

27   *Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).  "If the facts make a

28   claim 'implausible,' the non-movant must present 'more persuasive evidence than would

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

otherwise be necessary' in order to defeat a summary judgment motion." *Serco,* 846 F.3d at 330 (quoting *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995)). "The mere existence of a 'scintilla' of evidence is not enough to create a 'genuine issue of material fact' in order to preclude summary judgment.  Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (cleaned up).  "Summary judgment must be granted for the moving party if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States ex rel. Lewis v. Cal., Inst. Of Tech.*, No. 2:18-cv-5964, 2021 U.S. Dist. LEXIS 79171, at *22-23 (C.D. Cal. April 19, 2021) (cleaned up).

## ARGUMENT

Relator's arguments are based on her perception that Academy has brought forth no evidence in support of its defenses, citing few documents in only six paragraphs of statements of fact in support of her motion.  Dkt. 323-1 at 1-2.  However, Relator simply ignores the mountain of evidence developed by Academy in support of its defenses, including the government's knowledge of Academy's performance throughout the relevant time period.  Indeed, HUD monitored Academy's performance annually, reviewing nearly 4,000 Academy loans for compliance with HUD's requirements.  Relator also misconstrues the authority she cites, creating previously non-existent findings in recent Supreme Court authority in support of her arguments against Academy's statute of limitations defense, and failing to address controlling ninth circuit authority in support of her other arguments.  Because Academy can raise a genuine issue of material fact with respect to its affirmative defenses of Statute of Limitations, Waiver, and Estoppel, Relator's motion for summary judgment should be denied.

### I.      Relator's Interpretation of the FCA's Statute of Limitations Belies Reason and Authority

Relator's interpretation of the FCA's statute of limitations would vitiate the plain language of the FCA, creating a *de facto* ten-year statute of repose for all FCA violations unless

1
2
3
4

the Defendant can prove the government learned of the purported activity in enough time for the standard six year provision to apply.  To get here, Relator misstates the Supreme Court's holding in *Cochise*, and ignores a multitude of evidence indicating the government knew or should have known of the activity alleged to violate the FCA here.

5
6
7
8
9
10
11
12
13
14
15
16

The FCA has a conditional six-year statute of limitations, subject to a ten-year statute of repose:  all actions must be brought within six years of the activity alleged to violate the FCA, or within three years "after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances," whichever comes later.  31 U.S.C. 3731(b).  In no event may an action be brought more than ten years after the alleged violation is committed.  *Id*. In *Cochise*, the Supreme Court made two rulings:  1) that both provisions of § 3731(b) apply to non-intervened cases; and 2) that the Relator in a non-intervened case does not qualify as an "official of the United States" that may trigger the possible three-year extension clause.  *Cochise Consultancy, Inc. v. United States ex rel. Hunt*¸ 139 S. Ct. 1507, 1510 (2019).

17
18
19
20
21
22
23
24
25
26
27

Relator argues that the statute of repose must apply *de facto*, unless Academy demonstrates otherwise.  But this turns the plain statutory language on its head, creating a statute of repose that can be transformed into a shorter statute of limitations period upon a proper showing from a defendant.  This reading of the statute would render § 3731(a) superfluous, a result to be avoided in all statutory interpretation.  *Corley v. United States*, 556 U.S. 303, 314 (2009).  But in fact, the three year extension period is more akin to an equitable tolling provision.  A plaintiff that attempts to take advantage of an equitable tolling provision such as that in § 3731(b) bears the burden of proving its applicability.  *Roberts v. Marshall*, 627 F.3d 768, 771-72 (9th Cir. 2010).  Moreover, Relator's position would effectively "substitute a rigorous actual notice standard for a threshold inquiry notice standard, an approach justified only

28

1
2
when the defendant has fraudulently concealed his wrongdoing*.*" *United States ex rel. Purcell v.*
*MWI Corp.*, 520 F. Supp. 2d 158, 172 (D.D.C. 2007).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
Nonetheless, Academy can meet this standard here, and Relator cannot.  Relator has
failed to develop any evidence as to when HUD learned of or may have learned of the activity
that allegedly occurred here, relying solely on her speculation that HUD must have learned of it
only through her filing of the original complaint.  But Relator cannot raise any evidence
consistent with her theory, because the plain implications of the evidence developed by
Academy demonstrates that HUD knew of, or should have known of, the alleged activity as early
as 2008 and no later than April 13, 2013.  HUD conducted an on-site review of Academy in
2008, and made multiple loan level findings of underwriting errors consistent with those alleged
by Relator.  Statement of Facts ¶¶ 30-31.  This is uncontroverted.  And HUD, through its
Mortgagee Review Board, entered into a public consent order on April 27, 2012 with Academy
that explicitly alleged Academy falsely certified its compliance with HUD requirements on its
annual certifications.  Statement of Facts ¶¶ 5-6.  The government knew, or should have known,
of Academy's purportedly false annual certifications as early as that date, but no later than April
11, 2013 when the consent order was published in the Federal Register.  Statement of Facts ¶¶ 5-
6.  Because Relator did not file her original complaint in this matter until April 21, 2016, the
three year tolling provision in § 3731(b) is not available, and the six-year limitations period of §
3731(a) applies.

> a. *Cochise Consultancy* Does Not Find the Attorney General to be the "Official
> Charged with Responsibility"

24
25
26
27
28
Relator also argues that the "Government Official Charged with Responsibility," as
identified in § 3731(b)(2), can only be the Attorney General of the United States.  In support of
this, Relator cites *Cochise Consultancy*, which makes no such finding, and *Martin v. J. Simko*
*Constr. v. United States,* a federal circuit opinion that ruled only on the jurisdiction of the court

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

of federal claims.  *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540 (Fed. Cir. 1988).

A closer reading of *Cochise Consultancy* and other recent Supreme Court authority on the FCA's statute of limitations indicates a much broader application of the term, however.  In *Cochise Consultancy*, the Supreme Court explicitly did not rule on the meaning of the term "government official charged with responsibility," but the analysis it performed in determining that a Relator does not meet that definition is instructive. *Cochise Consultancy,* 139 S. Ct. at 1513-14.  The Supreme Court begins by analyzing whether a Relator is a "government official" at all, using broad definitions of government official as either a government employee or an appointed officer of the United States. *Id.*  Further, the Supreme Court was urged to adopt Relator's restrictive definition here, that only the Attorney General of the United States fits the definition, and declined to adopt the definition. *Id.*  And in rejecting that the Wartime Statute of Limitations Act operated to extend the statute of limitations under civil FCA claims indefinitely due to the Authorization for the Use of Military Force in effect for military operations in Iraq and Afghanistan, the Supreme Court stated simply that such actions must be brought "within three years of the date by which ***the United States*** should have known about a violation." *Kellogg Brown & Root Servs. v. United States ex rel. Carter*, 575 U.S. 650, 654 (2015) (emphasis added).

           b.  The "Official Charged with Responsibility" is the Agency Official Responsible for the Relevant Program

As inferred by the Supreme Court in *Cochise Consultancy*, a "government official" can be either a government employee or an appointed officer of the United States.  139 S. Ct. at 1513-14.  Here, the government officials with responsibility should be interpreted to be HUD officials with responsibility for the program at issue:

> This case is plainly governed by the FCA's six-year limitations period. As the Complaint makes clear, ***the Relator communicated to the FSA her belief that defendants were engaged in fraud to the FSA in 2014***.  However, she did not file

1
2

her Complaint until September 28, 2018.  Consequently, § 3731(b)(2) is inapplicable, and the Relator's only basis for asserting that her claims were timely filed is to proceed under the six-year limitation period in § 3731(b)(1).

3   *United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 650-51 (D. Md.

4   2019) (cleaned up).  The Court should find that HUD officials' knowledge suffices to trigger the

5   three-year tolling provision, and that the six-year provision applies because it is the period which

6   occurs last.   *See United States ex rel. Wilkins v. N. Am. Constr. Corp*., No. H-95-5614, 2001

7
8   U.S. Dist. LEXIS 20538, at *14 (S.D. Tex. Sep. 25, 2001); *United States ex rel. Kreindler &*

9   *Kreindler v. United Techs. Corp*., 777 F. Supp. 195, 205 (N.D.N.Y. 1991).  *See also* JOHN T.

10   BOESE AND DOUGLAS W. BARUCH, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS, §5.04[B][2]

11   (5th ed.) ("Limiting the knowledge only to highest-level DOJ officials disregards the broad

12   function that lower-level contracting officers, auditors, investigators, and other government

13   officials have to detect and report fraud.").

14
15
16

> c.   Even if the Attorney General Were the "Official Charged with Responsibility," the AG Knew or Should Have Known About these Allegations as Early as 2008, and No Later than April 13, 2013

17         Even if the Court were to determine that the appropriate government official is the

18   Attorney General, he should have known of the alleged activity as early as 2008 and no later

19   than April 13, 2013.  Where the Department of Justice was on "inquiry notice" of potential

20   allegations, it had a duty to investigate, and Relator cannot rely on the government's failure to

21   act prudently.  The facts here are similar to those in *United States v. Island Park*, 791 F. Supp.

22
23   354, 363-64 (E.D.N.Y. 1992), in which the Court found that, because the DOJ serves as the

24   "litigator" for HUD, and that "powerful officials at HUD" knew of the complained of activity,

25   "it cannot be but that the Department of Justice 'should have . . . known' through the exercise of

26   'due diligence' about these matters at the time that they were well known throughout the rest of

27   the United States government."  *Id*. at 363-64.  Indeed, the Court in *Island Park* found that "It

28

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

would be absurd indeed to conclude that an official audit report of a cabinet-level department does not foreclose tolling of the limitations period but that a happenstance review of a newspaper article initiates the running of the clock against the government." *Id.  See also United States ex rel. Frascella v. Oracle Corp.,* 751 F. Supp. 2d 842, 852 (E.D. Va. 2010); BOESE & BARUCH at § 5.04[B][1].

Here, HUD had performed formal, on-site audits of Academy as early as 2008, finding similar underwriting violations as alleged by Relator.  Statement of Facts ¶¶ 30-36.  The Mortgagee Review Board entered into a public consent order with Academy in 2012, and further published that consent order in the Federal Register in April 2013.  Statement of Facts ¶¶ 5-6.  Even if the Attorney General is "the government official" for purposes of §3731(b)(2), the Attorney General was on inquiry notice of Academy's alleged conduct no later than April 11, 2013, precluding Relator's use of §3731(b)(2).

## II.     Academy Has Raised a Genuine Issue of Material Fact that the Government has Waived its Claims

Relator claims that Academy has raised no genuine issue of material fact with respect to its waiver defense, but she ignores the evidence of yearly underwriting reviews and four on-site reviews HUD conducted specifically to monitor Academy's compliance with its requirements. Statement of Facts ¶¶ 30-36.  And Relator's reliance on a 2017 opinion from the Northern District of Georgia is both non-controlling and unpersuasive.  As set forth in Academy's own Motion for Summary Judgment, the Ninth Circuit has found the government's knowledge to be a key fact able to negate scienter.  *United States ex rel. Butler v. Hughes Helicopters*, 71 F.3d 321 (9th Cir. 1995);  *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1051 (9th Cir. 2012) ("where Lockheed submitted overwhelming evidence that it shared with the Air Force in its Disclosure Letters the use of FOSS and also disclosed to the Air Force its testing procedures. Accordingly, Hooper's claims fail because he has failed to demonstrate the existence of a genuine issue of

material fact as to whether Lockheed "knowingly" submitted a false claim.").

And Relator's reliance on *Hagood* misstates the ruling, ignores the procedural posture of the matter, and fails to acknowledge the subsequent decision in the same matter from the Ninth Circuit in which it upheld government knowledge as a proper basis to negate scienter.  The initial opinion in *Hagood* was on a motion to dismiss.  *United States ex rel. Hagood v. Sonoma Co. Water Agency*, 929 F.2d 1416, 1418-19 (9th Cir. 1991).  In reversing the district court's dismissal of the claims, the Court emphasized the procedural posture of the matter:  "[The] knowledge possessed by officials of the United States may be highly relevant.  Such knowledge may show that the defendant did not submit its claim in deliberate ignorance or reckless disregard of the truth.  But this comforting conclusion . . . cannot be reached by mere inspection of Hagood's complaint." *Id*. at 1421.  On subsequent appeal upon defendant's motion for summary judgment, the Ninth Circuit affirmed dismissal, noted:  "We can now say, as we could not on the basis of the complaint alone, 'that the Water Agency did merely what the Corps bid it to do.'"  *United States ex rel. Hagood v. Sonoma Co. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (*Hagood II*).  *See also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) (relying on *Hagood II*)

And Relator claims that Academy has no evidence that the Government was informed or otherwise knew of the alleged conduct here, making the bald and unsupportable statement that "all the underlying facts means just that – all the underlying facts," and implying that Academy must agree with Relator's flawed assessment in order to utilize the government's knowledge. Dkt. 323-1 at 6 n.1.  Relator cites to an out-of-circuit district court case, while ignoring the raft of Ninth Circuit opinions holding the opposite.  *See, e.g., Butler*, 71 F.3d at 326 ("the overwhelming evidence established a pattern of cooperation between the Army and MDHC during the course of a complicated, sophisticated, and highly technical military procurement

program. . . . The evidence established that all information upon which [Butler] bases his case was not only available to the Army, but in the Army's possession."); *United States ex rel. Anderson*, 52 F.3d at 817 ("There is evidence that, when installed, the Letterkenny switch did not work properly.  But no reasonable jury could draw an inference of presentation of a false or fraudulent claim from that.  The Army knew the switch was unsatisfactory, and expressed its dissatisfaction.  There is no evidence in the record that Northern Telecom knowingly presented a false or fraudulent claim for the switch.").

Relator also argues that HUD offered "uncontroverted testimony" that it did not know of Academy's conduct.  Dkt. 323-1 at 6.  This is patently false.  Relator meekly relies on a few statements that HUD cannot review every single loan originated by all lenders in the FHA program, which state nothing about what HUD did or did not know.  Relator fails to note that HUD testified directly as to its knowledge of Academy's conduct, and that the express purpose of its lender monitoring reviews is to assess lender compliance with FHA origination and participation requirements.  Statement of Facts ¶¶ 13-26.  Indeed, HUD also explicitly states this as their purpose in the HUD Handbook.  Statement of Facts ¶¶ 20-23.  This is the truly uncontroverted testimony—nearly 4,000 Academy loans reviewed by HUD during the relevant time period; four on-site reviews conducted by HUD, including HUD having reviewed a quarter of Relator's loans with alleged underwriting deficiencies; a 2012 Consent Order specifically covering false annual certifications; and HUD expressly telling Academy to submit its annual certifications despite Academy's reservations.  Statement of Facts ¶¶ 4-36.  Academy has raised more than a genuine issue of material fact with respect to the government's knowledge here, and its failure to act, to prevail on summary judgment.  *See United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985, 2002 U.S. Dist. LEXIS 26622, at *19-27 (C.D. Cal. Aug. 5, 2002) (denying motion for summary judgment on defendant's defense of waiver).

Finally, the Department of Justice moved to dismiss this matter. There are few more intentional acts of relinquishment or abandonment than dismissing claims. Not only did the Department of Justice move to dismiss these claims, it sought appellate review of this Court's decision to deny that motion.[18] These are affirmative acts taken by the Department of Justice to relinquish its claims here, and Academy has raised a genuine issue of material fact with respect to its affirmative defense of waiver.

### III. Academy has Raised a Genuine Issue of Material Fact that the Government Should be Estopped from Bringing these Claims

Academy's defense of estoppel is based upon the same fact pattern as its waiver defense, generally. However, to meet the "affirmative misconduct" standard as required by the Ninth Circuit, Academy has developed extensive evidence regarding the specific statements that HUD made to Academy in advance of its annual certifications. In addition to the fact that HUD was aware of Academy's performance in the FHA loan program through its extensive monitoring of Academy's lending operations, Academy has informed HUD every year since 2012 that it is "unable to certify." Statement of Facts ¶¶ 7-11. Each of those years, HUD has specifically instructed Academy to certify, despite Academy's reservations, including HUD informing Academy that HUD did not consider Academy's reservations with respect to being in compliance with all FHA requirements to make the annual certifications "materially false." Statement of Facts ¶¶ 7-11.

And an affirmative defense, of course, only comes into play if the Relator proves her allegations. *See* DEFINITION OF AFFIRMATIVE DEFENSE, BLACK'S LAW DICTIONARY at 528 (11th Ed.). "An affirmative defense is an assertion raising new facts and arguments, that, if true, will

---

[18] While the Ninth Circuit rejected the DOJ's appeal on jurisdictional grounds, the United States Supreme Court has recently granted certiorari to resolve the current circuit split on the standard applied to motions to dismiss a non-intervened qui tam action under the FCA. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, No. 21-1052, 2022 U.S. LEXIS 3021 (U.S. June 21, 2022).

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No. 3:16-cv-02120 (EMC) (SK)

defeat plaintiff's claims, even if all allegations in complaint are true." Dkt. 191 at 6.  For a jury to even reach Academy's affirmative defenses, it must find Academy liable in the first instance—thus, the serious injustice prong of the Ninth Circuit's standard to estop the government would be met here, in that Academy would be subject to the opprobrious penalties of the FCA for relying on, and following the explicit direction of, HUD.  Moreover, the public's interest will not suffer undue damage because, despite Relator's continual statements to the contrary, the federal taxpayer does not pay FHA claims—instead, the FHA is fully funded by FHA borrowers through their payment of mortgage insurance premiums.  Statement of Facts ¶ 1.

Moreover, Academy has raised a genuine issue of material fact with respect to each of the standard four elements of estoppel as well:  HUD is well aware of the facts at issue, and indeed produced most of the evidence relied upon by Academy; HUD clearly intended its conduct to be relied upon, as it directly instructed Academy to submit its annual certifications and that HUD did not consider them to be materially false; Academy was ignorant of Relator's case until it was unsealed; and Academy relied upon HUD's statements regarding certifications, as well as the years of monitoring and cooperation in the program, to continue its participation in the FHA program.  Academy has raised a genuine issue of material fact with respect to its defense of estoppel, and Relator's motion for summary judgment should be denied.  *See United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 619 (W.D. Wis. 1995) (denying motion for summary judgment on defense of estoppel in FCA matter).

## **CONCLUSION**

Because Academy has raised a genuine issue of material fact with respect to its affirmative defenses of Statute of Limitations, Waiver, and Estoppel, Relator's motion should be denied.

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)

1    Dated:  July 7, 2022

2    Respectfully submitted,                    **Weiner Brodsky Kider PC**

3                                               */s/ Jason W. McElroy*
                                                Jason W. McElroy
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I certify that I caused one copy of the foregoing Opposition to Relator's Motion for

3

Partial Summary Judgment to be served on all counsel of record through the Court's CM/ECF

4

system on July 7, 2022.

5

6

7

*/s/ Jason W. McElroy*
Jason W. McElroy

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Opposition to Relator's Motion for Partial Summary Judgment
Case No.  3:16-cv-02120 (EMC) (SK)