Pete Marketos (admitted *pro hac vice*)
Joshua Russ (admitted *pro hac vice*)
Andrew Wirmani (admitted *pro hac vice*)
Leslie Chaggaris (admitted *pro hac vice*)
Tyler Bexley (admitted *pro hac vice*)
Brett Rosenthal (admitted *pro hac vice*)
Jamison Joiner (admitted *pro hac vice*)
REESE MARKETOS LLP
750 North Saint Paul Street, Suite 600
Dallas, Texas 75201

Alex Reese (State Bar No. 280530)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: areese@fbm.com

Attorneys for Relator Gwen Thrower

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GWEN THROWER,<br><br>Plaintiff,<br><br>vs.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | Civil Action No. 3:16-cv-02120 (EMC)<br><br>**RELATOR'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF SUSAN E. NEAL**<br><br>Judge: Hon. Edward M. Chen<br><br>Date:   **July 28, 2022**<br>Time:  **1:30 P.M.**<br>Ctrm:  **Remote or TBD** |

**NOTICE OF MOTION AND MOTION**

**To all parties and counsel of record:** Pursuant to Local Rule 7-2, please take notice that Relator is filing this Motion to Exclude Expert Testimony of Susan E. Neal. Relator is noticing a remote hearing for July 28, 2022 at 1:30 p.m. Pacific, or as otherwise set by the Court. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings, discovery, and evidence in this case, arguments of counsel, and any other materials the Court may consider in connection with the hearing on the motion.

**STATEMENT OF RELIEF SOUGHT**

Pursuant to Local Rule 7-2 and Federal Rules of Evidence 401, 403, and 702, Relator Gwen Thrower asks the Court to exclude certain testimony of Academy's expert witness Susan E. Neal.

**ISSUE TO BE DECIDED**

1. Whether Academy expert Susan E. Neal's testimony should be excluded under Federal Rules of Evidence 401, 403, and 702.

**SUMMARY**

The Court should exclude certain expert testimony advanced by Academy's expert, Susan E. Neal, because her opinions do not meet the requirements for admissibility. In her report dated April 26, 2022, Ms. Neal advances four opinions or categories of opinions that are not admissible for the reasons set forth below. In summary:





**LEGAL STANDARD**

Expert testimony is admissible under Rule 702 if: (1) the expert testimony helps the trier of fact in understanding the evidence or determining a fact in issue, (2) the expert is qualified to testify on the matters addressed, and (3) the proposed evidence is the product of reliable principles and methods. Fed. R. Evid. 702. The trial court is afforded wide latitude in deciding how to test an expert's reliability. Neither the Rules of Evidence nor *Daubert* require the Court to engage in formal reliability proceedings. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *United*

1  *States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Whether to hold an evidentiary hearing, and if so when, is within the trial court's discretion. *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997); *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997). The trial court may rely on discovery materials to determine the reliability of an expert witness without holding an evidentiary hearing. *Hellerstedt*, 136 S. Ct. at 2317; *Carmichael*, 526 U.S. at 154 (trial court properly applied *Daubert* factors to information from deposition transcripts and expert disclosure reports). Courts are free to base their findings on commonsense inferences drawn from the evidence and exclude expert testimony even in the absence of an evidentiary hearing. *Hellerstedt*, 136 S. Ct. at 2317.

**ARGUMENT**

Ms. Neal offers a variety of unreliable and inadmissible opinions. These opinions are addressed in four respective sections below.

**I.  Ms. Neal's opinions regarding multiple AUS submissions are inadmissible.**

**A.  Ms. Neal lacks basic knowledge.**

A witness may be qualified as an expert if they possess specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Even in light of the permissive qualifications standard, a trial court must assure that a proposed expert witness's qualifications are sufficiently related to their proffered testimony. *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001); *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). A witness cannot testify as an expert when they lack qualifications in the field or subject on which they are opining. *United States v. Redlightning*, 624 F.3d 1090, 1115 (9th Cir. 2010). Further, an expert may not testify on matters that extend beyond their demonstrated expertise. *Avila v. Willits Environ. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011).

Academy gamed the TOTAL Mortgage Scorecard and AUS process to achieve "accept/approve" ratings and avoid "refer" determinations. As the Court will see from the evidence and the testimony of Relator's expert, W. Barefoot Bankhead, Academy's practice of submitting excessive AUS runs—which occurred in approximately 42% of Academy's FHA loans taken in a randomly selected, statistically valid sample—was aimed at manipulating the FHA underwriting

1  process. In fact, Academy is missing a shocking number of prior AUS run reports that would show
2  what information Academy's employees changed before re-running the AUS program.
3        In an attempt to counter these facts, Academy proffers the testimony of Ms. Neal that
4  ████████████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████ Ex. A-1, Neal Report ¶ 112. Yet unlike Mr.
6  Bankhead, Ms. Neal does not provide helpful opinions for a fact finder on this point—such as the
7  customary number of AUS runs to be expected in an FHA loan file or what constitutes an excessive
8  number of runs. To the contrary, Ms. Neal's testimony establishes that she lacks even basic
9  knowledge required to offer opinions regarding ordinary AUS activity in FHA loan files. ███
10 ████████████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████. An expert familiar with AUS runs in FHA
12 loans would know at least an approximate average number of runs for such loans—Ms. Neal just
13 does not know. Nor could Ms. Neal answer simple questions regarding AUS runs, such as the
14 highest number of AUS submissions she had ever seen on a loan file. *Id.* at 36:1–19. As a result,
15 Ms. Neal's purported expertise regarding multiple AUS runs is wholly lacking, and her testimony
16 is unreliable because she lacks knowledge about ordinary and customary AUS runs on FHA loans.

17       **B.**    **Ms. Neal's opinions are not based on sufficient facts or data.**

18       The Court should also exclude Ms. Neal's testimony as unreliable because it is not "based
19 on sufficient facts or data" as Rule 702 requires. To be admissible as expert testimony, an expert's
20 proffered opinions must be based on "sufficient facts or data." Fed. R. Evid. 702; *Hellerstedt*, 136
21 S. Ct. at 2316; *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007). An expert's
22 testimony is inadmissible if it is based on suppositions rather than facts. *Guidroz-Brault v. Mo.*
23 *Pac. R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001) (excluding expert testimony that was based on
24 assumptions and unsupported by facts).
25       In opining that Academy's practice of multiple submissions to FHA's TOTAL Mortgage
26 Scorecard Technology is not indicative of fraudulent lending practices, Ms. Neal defines
27 "multiple" as "more than one" without providing any delineation or nuanced examination between
28

two AUS runs and, say, 200 AUS runs. Neal Dep. 39:10–39:14, 45:16–17. In an attempt to correct for this analytical gap and her lack of knowledge regarding ordinary AUS activity on FHA loan files, Ms. Neal claims that whether AUS activity is potentially problematic "depends on the individual file, the individual circumstances of that file." *Id.* at 38:10–38:14; 45:18–45:23. Yet in complete contradiction of the individualized analysis she herself articulates as necessary to determine whether AUS activity is potentially problematic, Ms. Neal admits that she did not look at the prior AUS runs for the loans at issue in this case and that she failed to evaluate the loan files as part of her assignment from Academy in this action. *Id.* 40:24–41:3, 46:4–12, 24:24–25:6. Accordingly, Ms. Neal's opinion that "Academy's practice of multiple submissions to FHA's TOTAL Mortgage Scorecard Technology is not indicative of fraudulent lending practices" is, by her own standards, unreliable—she admits that the only way she can offer this opinion is to review the individual loan files, but she did not do so.

### C. Ms. Neal proffers an improper state of mind opinion.

Finally, even if Ms. Neal had the requisite knowledge and had properly performed an analysis of Academy's actual excessive-AUS-run conduct on the loans, her opinion is excludable as an improper state of mind opinion regarding fraud. Courts exclude expert testimony on the state of mind of a party because that is a subject reserved for the trier of fact. *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *Marlin v. Moody Nat'l Bank*, 248 F. App'x 534, 541 (5th Cir. 2007). Ms. Neal cannot opine whether something is fraudulent or indicative of fraud because fraud requires a requisite mental state. *See Tom Trading, Inc. v. Better Blue, Inc.*, 26 F. App'x 733, 736 (9th Cir. 2002) (listing elements of fraud in California, including knowledge of falsity and intent to defraud or induce). Ms. Neal's ultimate conclusion as to the presence or absence of fraud indicia necessarily encompasses Academy's mental state, a subject exclusively reserved for the trier of fact and thus not admissible as expert testimony. Further, liability under the False Claims Act does not require proof of actual fraud, making her opinions confusing and prejudicial. *See* 31 U.S.C. § 3729(b)(1)(B) ("knowing" element under the False Claims Act requires "no proof of specific intent to defraud"). These opinions should be excluded.

1  II.    **Ms. Neal's Inadmissible "No Evidence" Opinions**

2  ▮

3  ▮

4  ▮ Ms. Neal is not purporting to be an expert fact-finder, an expert investigator, or an expert juror. The determination of whether there is evidence of a certain fact or allegation falls within the exclusive purview of the Court and the jury, and is therefore an inappropriate opinion for the jury. Expert testimony is not permitted on issues that are the sole province of the trier of fact. *United States v. Finley*, 301 F.3d 1000, 1009 (9th Cir. 2002). Moreover, because Ms. Neal admits she has limited her review in this action (including not evaluating the loans at issue in this case), her testimony that there is "no evidence" of a fact is unreliable and very likely to confuse the jury and prejudice Relator. The Court may exclude expert evidence if its probative value is outweighed by the danger of confusion or misleading the jury under Rule 403. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993); *In re Hanford*, 534 F.3d 986, 1016 (9th Cir. 2007); *United States v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994). Courts exercise more control over expert witnesses when making Rule 403 determinations because of the powerful and potentially misleading nature of expert testimony. *Daubert*, 509 U.S. at 595; *Rincon*, 28 F.3d at 925.

18 III.   **Ms. Neal's Inadmissible "Industry Best Practices" and Narrative Opinions**

19 ▮

20 ▮

21 ▮

22 ▮ Ms. Neal does not define the vague and amorphous benchmark phrase "industry best practices," and it appears she has never before provided such an opinion as an expert witness. Ms. Neal wrote a lengthy report based on her review of written documents—written policies at Academy primarily—to opine that Academy's documents are in line with other unenumerated and unnamed mortgage lenders in "the industry." These opinions are inadmissible for a variety of reasons.

First, Ms. Neal is unqualified to provide an "industry best practices" opinion. She believes she began serving as an expert witness in the mortgage industry approximately eight years ago, believes she may have served as an expert in one other False Claims Act case (but cannot recall the name of that case), and has provided expert testimony in one case in the last four years (which she does not recall specifically but apparently did not involve AUS runs or policies, procedures, or practices). Ex. A-2, Neal Tr. at 8:23–9:4, 12:22–14:3, 69:21–72:5. As stated above, a witness cannot testify as an expert when they lack qualifications in the field or subject on which they are opining, and an expert may not testify on matters that extend beyond their demonstrated expertise. *Redlightning*, 624 F.3d at 1115; *Avila*, 633 F.3d at 839.

In addition, even if Ms. Neal were qualified to provide those opinions, the proffered "industry best practices" opinions are inadmissible. *See Bona Fide Conglomerate, Inc. v. SourceAmerca*, Case No. 3:14-cv-00751-GPC-AGS, at *27 (S.D. Cal. Mar. 26, 2019) ("Courts are not in the business of allowing experts to opine on whether documents in litigation, such as SourceAmerica's internal policies, meet federal regulatory standards."). The actions or inactions of other nonparties in an industry are irrelevant and prejudicial. Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. What the "industry" believes is a best practice does not make it more or less probable that Academy violated the False Claims Act when making FHA loans or when signing certifications attesting to compliance with federal law.

Even if "industry best practices" were relevant, the Court may exclude expert evidence if its probative value is outweighed by the danger of confusion or misleading the jury under Rule 403. *Daubert*, 509 U.S. at 595; *In re Hanford*, 534 F.3d 986, 1016 (9th Cir. 2007); *Rincon*, 28 F.3d at 925). Allowing Academy to present evidence to the jury regarding policies present in the "industry" would only serve to expand the scope of the trial and confuse the issues. Academy's efforts to introduce "industry" evidence to downplay or distract from its specific misconduct is classic Rule 403 material. And if that door is opened, Relator would be justly entitled to present

evidence of all of the DOJ settlements with mortgage lenders for FHA violations and the hundreds of millions of dollars recovered from the "industry." *See, e.g.*, *The False Claims & Federal Housing Administration Loans*, Dept. of Justice (last visited June 22, 2022), https://www.justice.gov/archives/opa/blog/false-claims-act-federal-housing-administration-lending.

Next, Academy seeks to use Ms. Neal to read and summarize documents for the jury, which is not a proper use of expert testimony. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But an expert witness may not simply read or present a narrative summary of documents to the jury. *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma U.S.*, 296 F. Supp. 3d 1142, 1194 (N.D. Cal. 2017); *In re Prempro Prods. Liability Litig.*, 586 F.3d 547, 571 (8th Cir. 2009) (holding that the district court did not abuse its discretion by granting a motion to strike the testimony of expert witness because the expert primarily just read and summarized documents). Compounding the problem with this testimony, Ms. Neal conducted no interviews and did not evaluate the loans at issue in this case. Neal Dep. 22:17–18, 26:23–27:1, 87:4–8. Ms. Neal effectively offers an opinion that Academy had good-looking policies on paper. *Angioscore, Inc. v. Trireme Med., Inc.*, 87 F. Supp. 3d 986, 1016-17 (N.D. Cal. 2015) (excluding expert report on "anecdotal, self-selected examples" of "governance practices" that were "not consonant with real-world practices" because the expert "failed to establish that his opinions are sufficiently rooted in factual knowledge such that they are reliable and relevant").

Finally, highlighting the improper attempt to have an expert explain to the jury Academy's policies and procedures, Academy failed to appropriately prepare its 30(b)(6) corporate representative on numerous topics related to its policies and practices. Relator's deposition notice included multiple sections of topics related to Academy's policies and practices, including:

Topic 6:  Academy's training, policies, and procedures regarding the False Claims Act;

Topic 7:  Academy's training, policies, and procedures for underwriting FHA loans, preventing fraud, and/or ensuring compliance with HUD-FHA

regulations;

Topic 8: Academy's policies and procedures pertaining to reviews, research, investigation, or due diligence by Academy personnel prior to signing certifications of FHA compliance or making representations to HUD;

Topic 9: Academy's policies and processes for reviewing FHA loan applications for approval including Academy's policies and practices for its automated underwriting system (AUS), Desktop Underwriter submissions, and manual underwriting;

Topic 32: Academy's policies and practices with respect to exceptions to HUD-FHA regulations, including credit exceptions;

Topic 34: Academy's policies and practices with respect to the payment of commissions or bonuses to its personnel.

Academy designated James W. Taylor, Jr. as its corporate representative for each of these topics, and Relator deposed Mr. Taylor on April 19, 2022. Ex. A-3, Taylor Tr. Dep. at 25:15–19; Ex. A-4, Taylor Dep. Notice. Despite the fact that Ms. Neal issued her expert opinion on Academy's policies and practices on April 26, 2022 (a week after Mr. Taylor's deposition), Mr. Taylor was unable, unwilling, and/or unprepared to fully testify regarding Academy's policies and procedures. Specifically, Mr. Taylor could offer no testimony regarding Academy's policies and practices prior to his arrival at the company in 2014, and his knowledge was at times limited to 2017 and after (this case was filed in 2016). Ex. A-3, Taylor Tr. at 39:14–20, 114:16–24. Over and over, Mr. Taylor claimed he had no familiarity—and therefore was not prepared to testify for Academy—regarding certain policies and procedures from 2008 through 2014 (*i.e.*, the majority of the relevant time period of this case). *See id.* 49:25–50:9, 50:23–51:3, 85:20–23, 104:11–16, 106:13–17; 107:6–10, 112:11–113:5; 113:17–114:4; 286:15–25.Moreover, Academy—through Mr. Taylor—testified that "every loan is different" and that Academy cannot say that an "error made was the result of policies and procedures that were in place." *Id.* at 112:5–14. Academy again—through Mr. Taylor—admitted that it could not say whether Academy's policies and procedures for underwriting FHA loans did or did not contribute to a loan being uninsurable. *Id.* at 113:17–114:4. This testimony—Academy's own admission—is fatal to Ms. Neal's entire attempt to shoehorn in the existence of policies as inferential or circumstantial evidence that

1  Academy followed those policies as to the loans at issue in this case. Said differently, Ms. Neal
2  cannot opine that Academy's policies and practices protected against material noncompliance with
3  HUD requirements if Academy itself cannot even connect the existence of written policies to
4  whether a loan is uninsurable.

5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Yet Academy could only minimally testify regarding its policies
7  back to, at best, 2014. Therefore, excluding Ms. Neal's opinions also comports with general
8  fairness principles—if Academy itself cannot testify about its policies and procedures before 2014,
9  Ms. Neal should not be allowed to do so as an expert. At bottom, this discrepancy shows that the
10 existence and contents of policies are facts to which a lay witness can testify—Academy cannot
11 attribute a special aura to its policies by having a purported expert describe them to the jury.

12 **IV.    Ms. Neal's Inadmissible Comparative Loan Approval Opinions**

13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. For the same reasons Ms. Neal's
15 "industry best practices" opinions are improper, Ms. Neal's comparison of Academy's behavior
16 to other lenders is irrelevant, confusing, and prejudicial and should therefore be excluded. The
17 behavior of other potential defendants, such as the speed of other drivers in a speeding trial, is not
18 appropriate evidence. This type of evidence proffered by Ms. Neal is no different—she attempts
19 to show how Academy compared to the "industry" in approving loan applications. This is
20 irrelevant to the False Claims Act elements at issue in this case, and, as with the "industry best
21 practices" opinions, will, in the end, serve to confuse the jury and open the door to other
22 enforcement actions brought by the Government against the mortgage lenders. *See id.* ¶ 132. Ms.
23 Neal's comparative loan approval opinions should therefore be excluded.

24 Dated: July 13, 2022
25                                                      Respectfully submitted,
26                                                      */s/ Joshua M. Russ*
                                                        Joshua M. Russ (admitted *pro hac vice*)
27                                                      REESE MARKETOS LLP
                                                        Attorney for Relator
28