Pete Marketos (admitted *pro hac vice*)
Joshua Russ (admitted *pro hac vice*)
Andrew Wirmani (admitted *pro hac vice*)
Leslie Chaggaris (admitted *pro hac vice*)
Tyler Bexley (admitted *pro hac vice*)
Brett Rosenthal (admitted *pro hac vice*)
Jamison Joiner (admitted *pro hac vice*)
REESE MARKETOS LLP
750 North Saint Paul Street, Suite 600
Dallas, Texas 75201

Alex Reese (State Bar No. 280530)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: areese@fbm.com

Attorneys for Relator Gwen Thrower

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GWEN THROWER,<br><br>Plaintiff,<br><br>vs.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | Civil Action No. 3:16-cv-02120 (EMC)<br><br>**RELATOR'S TRIAL BRIEF**<br><br>Judge: Hon. Edward M. Chen |

# TABLE OF CONTENTS

INTRODUCTION ..... 1
SUMMARY OF RELATOR'S CASE ..... 1
I. False Annual Certifications ..... 1
A. Key Evidence ..... 2
1. Falsity and Knowledge ..... 2
2. Materiality and Causation ..... 2
3. Damages ..... 3
II. False Loan-Level Certifications ..... 3
A. Key Evidence ..... 3
1. Falsity and Knowledge ..... 3
2. Materiality and Causation ..... 4
3. Damages ..... 4
CONTROLLING ISSUES OF LAW ..... 4
I. Falsity ..... 5
II. Scienter ..... 6
III. Materiality ..... 7
IV. Causation ..... 8
V. Damages and Penalties ..... 8
VI. Respondeat Superior ..... 9
ADDITIONAL ISSUES ..... 10
I. Sampling and extrapolation ..... 10
II. Nationwide service of process ..... 11
III. Academy's desire to introduce deposition transcripts from other cases ..... 12
A. Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 govern the use of deposition testimony ..... 13
B. Academy's proffered testimony violates both Rule 32 and Rule 804. ..... 13
1. Relator was neither present at nor on notice of the depositions in question. ..... 13
2. The prior litigation involves different parties and different issues. ..... 13
3. Academy cannot show the witnesses are unavailable. ..... 14
CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. Apple, Inc.*, No. C 09-04436 CW, 2011 WL 232521 (N.D. Cal. Jan. 24, 2011) ........ 12, 14, 15

*Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119 (2003)........ 9

*Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 3:12-cv-933 (CSH), 2014 WL 3824333, (D. Conn. Aug. 4, 2014)........ 10

*Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201 (9th Cir. 2019)........ 6, 7

*Grand Union Co. v. United States*, 696 F.2d 888 (11th Cir. 1983) ........ 9

*Hynix Semiconductor Inc. v. Rambus Inc.*, 250 F.R.D. 458 (N.D. Cal. 2011) ........ 12

*In re RFC and RESCAP Liquidating Trust Action*, 332 F. Supp. 3d 1101 (D. Minn. 2018)........ 10

*Little v. ENI Petroleum Co., Inc.*, No. CIV-06-120-M, 2007 WL 2254318 (W.D. Okla. 2007) .. 11

*Miller v. Holzmann*, 471 F. Supp. 2d 119 (D.D.C. 2007) ........ 11

*Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467 (9th Cir. 1993) ........ 10

*See Hub v. Sun Valley Co.*, 682 F.2d 776 (9th Cir. 1982) ........ 12, 14

*Siebert v. Gene Sec. Network, Inc.*, No. 11-CV-01987-JST, 2015 WL 13884145 (N.D. Cal. Jan. 16, 2015) ........ 11

*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 1:13-cv-00009-BLW, 2015 WL 758988 (D. Idaho Feb. 23, 2015) ........ 11

*United States ex rel. Campie v. Gilead Sci., Inc.*, 862 F.3d 890 (9th Cir. 2017) ........ 1, 3, 5

*United States ex rel. Eisenstein*, 556 U.S. 928 (2009) ........ 13

*United States ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108 (D.D.C. 2007)........ 8

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, —F.4th—, 2022 WL 3206685 (9th Cir. Aug. 9, 2022) ........ 6, 7

*United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) ........ 1, 5, 7, 8

*United States ex rel. McCarthy v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 2d 1062 (D. Haw. 2001) ........ 9

*United States ex rel. Penizotto v. Bates E. Corp.*, No. CIV.A. 94-3626, 1996 WL 417172 (E.D. Pa. July 18, 1996)........ 11

*United States ex rel. Rosales v. San Francisco Hous. Auth.*, 173 F. Supp. 2d 987 (N.D. Cal. 2001) ........ 10

*United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012 (9th Cir. 2018) ........ 7

*United States ex rel. Scott v. Ariz. Ctr. for Hematology & Oncology, PLC*, No. CV-16-03703-PHX-DGC, 2020 WL 2059926 (D. Ariz. Apr. 29, 2020)........ 10

*United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667 (9th Cir. 2018)........ 6

*United States ex rel. Thomas v. Siemens AG*, No. 04-116, 2009 WL 1657429 (D.V.I. June 12, 2009) ........ 11

*United States ex rel. Tutanes-Luster v. Broker Solutions, Inc.*, No. CV 19-1630 PSG, 2019 WL 6972689 (C.D. Cal. July 8, 2019) ........ 5, 7

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42 (D.D.C. 2011) ........ 11

*United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, No. CA 06-12195-MLW, 2013 WL 3327317 (D. Mass. June 27, 2013) ........ 11

*United States v. Acad. Mortg. Corporation*, No. 16-CV-02120-EMC, 2018 WL 4053484 (N.D. Cal. Aug. 24, 2018) ........ 11

*United States v. Americus Mortg. Co.*, Civ. A. No. 4:12-CV-2676, 2017 WL 4083589, (S.D. Tex. Sept. 14, 2017) ........ 10

*United States v. Bornstein*, 423 U.S. 303 (1976) ........ 8

*United States v. Capitol Supply, Inc.*, No. 10-1094 (BAH), 2017 WL 1422364 (D.D.C. April 19, 2017) ........ 9

*United States v. Eghbal*, 548 F.3d 1281 (9th Cir. 2008) ........ 8

*United States v. Gwinn*, No. CIVA 5:06-CV-00267, 2008 WL 867927 (S.D.W. Va. Mar. 31, 2008) ........ 11

*United States v. Hangar One, Inc.*, 563 F.2d 1155 (5th Cir. 1977) ........ 9

*United States v. Movtady*, 13 F. Supp. 3d 325 (S.D.N.Y. 2014) ........ 5

*United States v. Ovist*, No. 3:11-CR-00076-BR, 2012 WL 5830296 (D. Or. Nov. 16, 2012) ........ 13

*United States v. Quicken Loans, Inc.*, 239 F. Supp. 3d 1014 (E.D. Mich. 2017) ........ 7

*United States v. TXL Mortg. Corp.*, 2016 WL 5108019 (D.D.C. Sept. 20, 2016) ........ 5

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) ........ 6

*United States v. Wyeth*, No. CV 03-12366-DPW, 2015 WL 8024407 (D. Mass. Dec. 4, 2015) ........ 11

*United States, ex rel. Penizotto v. Bates East Corp.*, No. CIV.A. 94-3626, 1996 WL 417172 (E.D. Pa. 1996) ........ 11

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) ........ 7

*Wilson v. Seven Seventeen HB Philadelphia Corp.*, No. Civ. A. 99-CV-1729, 2003 WL 22709073 (E.D. Pa. Nov. 14, 2003) ........ 14

**Regulations**

28 C.F.R. § 85.3 ........ 9

28 C.F.R. § 85.5 ........ 9

**Rules**

Fed. R. Civ. P. 32 ........ 12, 13, 14

Federal R. Evid. 804 ........ 12, 13, 14

**Statutes**

28 U.S.C. § 2461 .......... 9
31 U.S.C. § 3129 .......... 7
31 U.S.C. § 3729(b)(1) .......... 6, 8
31 U.S.C. § 3731 .......... 11

## INTRODUCTION

Pursuant to the Court's Case Management and Pretrial Order (Doc. 326) and the Court's extension order (Doc. 371), Relator Gwen Thrower submits her Trial Brief in preparation for the jury trial scheduled to begin October 7, 2022.

## SUMMARY OF RELATOR'S CASE

Relator Thrower is a former Academy underwriter who filed this False Claims Act suit in 2016 alleging that Academy caused false claims to be submitted to the United States Department of Housing and Urban Development (HUD) through its fraudulent conduct in connection with its participation in the Federal Housing Administration (FHA) mortgage insurance program. Specifically, Relator alleges Academy falsely certified compliance with FHA requirements in annual and loan-level certifications.

Relator advances two legal theories, both under the doctrine of promissory fraud (sometimes referred to as fraudulent inducement): (1) false annual certifications and (2) false loan-level certifications. Under the promissory fraud theory of False Claims Act liability, "subsequent claims are false because of an *original fraud*," which may include "a certification or otherwise." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Liability attaches to each claim submitted under an extension of a government benefit obtained through false statements or fraudulent conduct (here, participation in the FHA program and the government insuring Academy's FHA loans). *United States ex rel. Campie v. Gilead Sci., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017). The elements under promissory fraud are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174.

### I. False Annual Certifications

Relator's first theory is that, from 2008 through 2017, Academy fraudulently induced the government to allow it to participate in the FHA mortgage program by submitting false annual certifications to HUD. Among other things, Academy falsely certified in each of the relevant years that it had "complied with and agree[d] to continue to comply with HUD-FHA regulations,

handbooks, [and] Mortgagee Letters." False annual certifications by an FHA lender can lead to termination from the program.

### A. Key Evidence[1]

#### *1. Falsity and Knowledge*

Academy knowingly and/or recklessly submitted false annual certifications to HUD regarding its compliance with HUD-FHA rules and regulations. The types of key evidence of the falsity of these certifications and Academy's knowledge thereof includes: the expert testimony of W. Barefoot Bankhead, including his re-underwriting of a statistical sample of 300 FHA loans that found, at a minimum, 147 loans from the sample materially violated FHA requirements rendering the loans uninsurable; internal Academy emails, documents, and complaints concerning fraud, document removal, alteration, and destruction, disregard of HUD-FHA rules and regulations, "business decisions" and managerial overrides of HUD-FHA rules and regulations, manipulation of borrower data and other information, forgery, "trashing" or otherwise siloing harmful information to shield it from scrutiny by underwriters, auditors, and others; testimony, emails, and documents concerning inadequate quality controls; testimony, emails, and documents of a culture prioritizing profitability over compliance with HUD-FHA rules and regulations; prior false annual certifications and related repercussions; testimony concerning the lack of adequate investigation and diligence before making annual certifications; and testimony, emails, documents concerning manipulation of AUS platforms and the TOTAL Mortgage Scorecard, and HUD Handbook provisions, mortgagee letters, and other training and guidance to lenders.

#### *2. Materiality and Causation*

Academy's false annual certifications were material to the Government and caused the Government to suffer loss. The types of key evidence of materiality and causation include testimony from HUD and its representatives; indemnification demands by, and agreements with, HUD; and testimony by the parties' experts.

---

[1] The key evidence and relevant facts have been detailed extensively. *See, e.g.*, Doc. 409. This is merely a non-exhaustive, representative description of key evidence that Relator intends to offer.

#### *3. Damages*

Relator is not seeking as damages every payment HUD made arising from all loans originated by Academy and insured by FHA from 2008 through 2017. Instead, Relator focused her case on early defaulting FHA loans, specifically loans that were 60-days delinquent within two years of their respective endorsement date. HUD identified 1,325 FHA loans that are the universe of claims in this action. When these loans defaulted, the government paid a total of $133 million, which are Relator's single damages under her theory of annual certification promissory fraud. These payments are established through HUD records.

## II. False Loan-Level Certifications

Relator's second theory is that, from 2008 through 2017, Academy fraudulently induced FHA insurance on a portion of the 1,325 loans when it falsely certified, via Form 92900-A, that individual loans with material violations qualified for FHA insurance. As stated above, liability attaches to each claim submitted under an extension of a government benefit obtained through false statements or fraudulent conduct (here, participation in the FHA program and the government insuring Academy's FHA loans). *Campie*, 862 F.3d at 902.

### A. Key Evidence[2]

#### *1. Falsity and Knowledge*

Academy knowingly and/or recklessly submitted false loan-level certifications to HUD regarding its compliance with HUD-FHA rules and regulations. The types of key evidence of the falsity of these certifications and Academy's knowledge thereof includes: the expert testimony of W. Barefoot Bankhead, including his re-underwriting of a statistical sample of 300 FHA loans that found, at a minimum, 147 loans from the sample materially violated FHA requirements rendering the loans uninsurable; Academy internal emails, documents, and complaints concerning fraud, document removal, alteration, and destruction, disregard of HUD-FHA rules and regulations, "business decisions" and managerial overrides of HUD-FHA rules and regulations, manipulation of borrower data and other information, forgery, "trashing" or otherwise siloing harmful

[2] The key evidence and relevant facts have been detailed extensively. *See, e.g.*, Doc. 409. This is merely a non-exhaustive, representative description of key evidence that Relator intends to offer.

information to shield it from scrutiny by underwriters, auditors, and others; testimony, emails, and documents concerning inadequate quality controls; testimony, emails, and documents of a culture prioritizing profitability over compliance with HUD-FHA rules and regulations; indemnification demands by, and agreements with, HUD; testimony concerning the lack of adequate investigation and diligence before making loan-level certifications; and testimony, emails, documents concerning manipulation of AUS platforms and the TOTAL Mortgage Scorecard, and HUD Handbook provisions, mortgagee letters, and other training and guidance to lenders.

***2. Materiality and Causation***

Academy's false loan-level certifications were material to the Government and caused the Government to suffer loss. The types of key evidence of materiality and causation include testimony from HUD and its representatives; indemnification demands by, and agreements with, HUD; testimony, emails, and documents showing Academy's belief that certain violations would require indemnification; and testimony by the parties' experts.

***3. Damages***

Academy could not produce usable loan files for its 2008 loans from the 1,325-loan universe, so Relator's expert statistician drew a sample of 300 from the 1,158 FHA loans at issue from 2009 through 2017. Relator's expert, Barefoot Bankhead, re-underwrote all 300 loans in the sample, and he found 147 out of the 300 had materially violated FHA requirements rendering the loans uninsurable. Mr. Bankhead identified another 71 loans that had red flags indicating manipulation of borrower information to receive AUS approval. Relator's expert statistician then extrapolated these damages across the universe of 1,158 FHA loans and found single damages from HUD's payments to be as high as $76.776 million. These payments are established through HUD records.

**CONTROLLING ISSUES OF LAW**

This is a straightforward case under well-established legal theories of False Claims Act liability. In fact, over the past ten years, the United States has recovered billions of dollars from

FHA lenders under the False Claims Act for fraudulent lending practices and lenders' submission of false certifications.[3]

The Ninth Circuit has held that the False Claims Act is to be construed "broadly, as it is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *Campie*, 862 F.3d at 899 (quoting *Hendow*, 461 F.3d at 1170). Moreover, False Claim Act case law is well-developed in the area of FHA mortgage fraud. *See, e.g.*, *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014 (E.D. Mich. 2017); *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 622-25 (S.D.N.Y. 2013).

## I. Falsity

In the Ninth Circuit, liability under the False Claims Act attaches where "false statements were 'relevant to the government's decision to confer a benefit.'" *United States v. Eghbal*, 548 F.3d 1281,1283 (9th Cir. 2008) (quoting *Hendow*, 461 F.3d at 1173). In addition to this Court, other courts have recognized in the FHA lending context that both false annual certifications and false loan-level certifications can give rise to False Claims Act liability. *See United States ex rel. Tutanes-Luster v. Broker Solutions, Inc.*, No. CV 19-1630 PSG, 2019 WL 6972689, at *10 (C.D. Cal. July 8, 2019) (citing cases that have held regulations that are the subject of annual certifications are "conditions of payment that can give rise to FCA liability."). In fact, in *United States v. Movtady*, the Southern District of New York held, "[Both the individual-loan and annual certifications at issues in this case are explicit conditions for ongoing payments and therefore proper bases for False Claims Act claims[.]" 13 F. Supp. 3d 325, 331 (S.D.N.Y. 2014); *see also United States v. TXL Mortg. Corp.*, 2016 WL 5108019, *3 (D.D.C. Sept. 20, 2016) (recognizing

---

[3] *See, e.g.*, *The False Claims & Federal Housing Administration Loans*, Dept. of Justice (last visited August 16, 2022), https://www.justice.gov/archives/opa/blog/false-claims-act-federal-housing-administration-lending; 2012 DOJ Settlement with Flagstar Bank (last visited August 16, 2022), https://www.justice.gov/archive/usao/nys/pressreleases/February12/flagstar/flagstarsettlementagreement.pdf; 2014 DOJ Settlement with JPMorgan Chase (last visited August 16, 2022), https://www.justice.gov/opa/pr/jpmorgan-chase-pay-614-million-submitting-false-claims-fha-insured-and-va-guaranteed-mortgage; 2016 DOJ Settlement with Wells Fargo (last visited August 16, 2022), https://www.justice.gov/opa/pr/wells-fargo-bank-agrees-pay-12-billion-improper-mortgage-lending-practices.

fraudulent inducement where defendant "provided facially inaccurate facts or violated key FHA underwriting requirements").

**II. Scienter**

The False Claims Act imposes liability on individuals who act "knowingly," which is defined by statute as acting with knowledge that a claim was false or with reckless disregard or deliberate indifference as to the truth or falsity of the claim. *See* 31 U.S.C. § 3729(b)(1); *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679 (9th Cir. 2018). The statute explicitly states that it "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Indeed, "[t]he deliberate ignorance standard can cover 'the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted.'" *Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1211 (9th Cir. 2019) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016)). "'Congress adopted the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek.'" *Id.*

On August 9, 2022, the Ninth Circuit issued an opinion in *United States ex rel. Hartpence v. Kinetic Concepts, Inc.* reversing a district court that granted summary judgment on the elements of scienter and materiality. —F.4th—, 2022 WL 3206685 (9th Cir. Aug. 9, 2022). While its opinion primarily addressed materiality (discussed below), the court pointed to email correspondence as evidence that the defendant knew it was wrongly using a specific code modifier. The court did not decide whether a defendant must have knowledge of materiality as well as knowledge of falsity; however, the court concluded that the record established triable issues of fact. As detailed above and in Relator's summary judgment response, Academy had actual knowledge that HUD considered compliance with regulatory requirements to be material. Further, the evidence presented by Relator establishes a culture of approving loans and selling FHA loans quickly. In fact, the record is replete with internal correspondence and reporting that Academy was fraudulently endorsing loans. The fact that Academy continued endorsing FHA loans for years

with the same types of material defects presents a triable issue of fact for the jury.

**III. Materiality**

A false statement is material under the False Claims Act if it has "a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property." *Tutanes-Luster*, 2019 WL 6972689, at *10 (quoting 31 U.S.C. § 3129(b)). While the materiality requirement is "demanding," the Supreme Court has held that there is not a bright-line test for determining whether the materiality requirement has been met. *Godecke*, 937 F.3d at 1213 (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016)). And as the Court previously recognized in this case, the Court in *Escobar* "only address the implied certification theory," not promissory fraud. Doc. 117 at 15. Indeed, "with regard to materiality, . . . 'the question is merely whether the false certification . . . was relevant to the government's decision to confer a benefit." *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 (9th Cir. 2018) (citing *Hendow*, 461 F.3d at 1173). In answering that question, "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," meaning the government. *Id.* (citing *Escobar*, 136 S. Ct. at 2002). At least one court has held that FHA program requirements "go to the essence of the bargain between HUD and [DE lenders]." *United States v. Quicken Loans, Inc.*, 239 F. Supp. 3d 1014, 1040 (E.D. Mich. 2017).

The Ninth Circuit's recent decision in *Hartpence* is particularly relevant in this action. The court held that "it would be reasonable to conclude that the Government attaches importance, in making a payment decision, to a provider's certification of compliance with the relevant criteria[.]" 2022 WL 3206685, at *7. Here, Academy argues that HUD's audits and process for correcting material defects is evidence that HUD's requirements are not material to a payment decision. Rejecting that premise, the court in *Hartpence* recognized that, as here, the vast majority of claims were not subject to audits and were paid in reliance on the defendant's representations. *Id.* at *7–10. Moreover, the evidence in this case shows that HUD routinely required Academy to indemnify it because Academy had approved loans with material underwriting deficiencies that exposed the government to unacceptable levels of default risk.

**IV. Causation**

The False Claims Act requires a causal rather than a temporal connection between fraud and payment. *Hendow*, 461 F.3d at 1174. The Ninth Circuit has not decided the requisite causation to establish False Claims Act liability—a narrower proximate causation standard versus a "but for" standard. *United States v. Eghbal*, 548 F.3d 1281, 1284 (9th Cir. 2008) (finding that because the element of causation was analyzed under and satisfied both a proximate cause and a "but for standard," there was no need for the court to decide which standard governed). Under a proximate cause standard, "the submitter of a false claim should be liable only for those damages that arise because of the *falsity* of the claim, *i.e.*, only for those damages that would not have come about if the defendant's misrepresentations had been true." *United States ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108, 120 (D.D.C. 2007) (emphasis in original).

Here, Academy's false certifications are both the "but for" and the proximate cause of HUD's damages. Academy could not participate in the FHA program without making annual certifications of compliance with HUD-FHA rules and regulations. And HUD would not insure loans without loan-level certifications of compliance with underwriting requirements. All of Academy's false statements in this case were foreseeable causes of HUD insuring ineligible loans, and HUD ultimately paying when those loans defaulted.

**V. Damages and Penalties**

The False Claims Act "provides for damages of '3 times the amount of damages which the Government sustains.'" *Eghbal*, 548 F.3d at 1285 (quoting 31 U.S.C. § 3729(a)). In 1976, the Supreme Court observed that the statute "speaks of multiplying damages, not 'net damages' or 'uncompensated damages.'" *Id.* (quoting *United States v. Bornstein*, 423 U.S. 303, 314 n. 10 (1976). "In computing the treble damages, the Court specifically directed that 'the Government's actual damages are to be [multiplied] before any subtractions are made for compensatory payments previously received by the Government from any source.'" *Id.* Here, all payments made by the government on a false claim caused by Academy are damages. All damages found by the jury are required to be trebled by the Court. *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 132

(2003) (holding that, if the jury finds FCA liability, "its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty."). Then, after trebling, the Court deducts any offset amounts determined by the jury under Academy's affirmative defense of setoff.

The False Claims Act also provides for mandatory per-false-claim civil penalties that are adjusted for inflation periodically. *Id.*; 28 C.F.R. § 85.3; 28 C.F.R. § 85.5; 28 U.S.C. § 2461. The jury determines the number of false claims, and the Court assesses the appropriate penalty. *Chandler*, 538 U.S. at 132; *see United States v. Capitol Supply, Inc.*, No. 10-1094 (BAH), 2017 WL 1422364, * 23 n. 31 (D.D.C. April 19, 2017). The applicable penalty range depends upon when the violation occurred and when the penalty is assessed, but, in this case, it ranges from $5,500 per claim to $25,076 per claim. *See* 28 C.F.R. § 85.3; 28 C.F.R. § 85.5.

## VI. Respondeat Superior

Academy is liable under the False Claims Act for the conduct of its employees and agents. *See Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) ("[A] corporation will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefiting the corporation . . . . In short, liability of a corporation for a False Claims Act violation may arise from the conduct of employees other than those with 'substantial authority and broad responsibility.'") (quoting *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977)); *United States ex rel. McCarthy v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 2d 1062, 1070 n. 7 (D. Haw. 2001). In a False Claims Act case from 2001, this Court held in examining the applicability of vicarious liability:

> The Ninth Circuit has given no indication that anything other than the traditional rules of vicarious liability apply in analyzing scienter, even if, as defendants assert, the damages at stake are substantial. *See Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1387 (9th Cir.1985) (adopting the standard of Restatement (Second) of Torts § 909 and allowing 'imposition of punitive damages' on a corporation for the 'egregious acts of one employed in a managerial capacity and acting in the scope of employment'). This court will not take it upon itself to adopt an 'intent to benefit' limitation that is absent from the statutory

language of the FCA and the case law of this circuit.

*United States ex rel. Rosales v. San Francisco Hous. Auth.*, 173 F. Supp. 2d 987, 1004 (N.D. Cal. 2001).

## ADDITIONAL ISSUES

### I. Sampling and extrapolation

The Ninth Circuit has made plain that statistical "sampling and extrapolation" are a recognized and accepted means to establish both liability and damages. *Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) ("To deny public agencies the use of statistical and mathematical audit methods would be to deny them an effective means of detecting abuses in the use of public funds."). This is equally true in cases involving the False Claims Act. *United States ex rel. Scott v. Ariz. Ctr. for Hematology & Oncology, PLC*, No. CV-16-03703-PHX-DGC, 2020 WL 2059926, at *8–9 (D. Ariz. Apr. 29, 2020) (citing *id.*). Indeed, "FCA cases often involve statistical sampling because, in view of the enormous logistical problems of proving fraud in complex government programs, statistical sampling is the only feasible method." *Id.* at *2.

Cases like this one involving mortgage loans are particularly suitable for expert sampling and extrapolation. *See In re RFC and RESCAP Liquidating Trust Action*, 332 F. Supp. 3d 1101, 1147 (D. Minn. 2018) (collecting authority) ("[S]tatistical sampling has been approved in numerous cases involving large numbers of mortgage loans."); *see also United States v. Americus Mortg. Co.*, Civ. A. No. 4:12-CV-2676, 2017 WL 4083589, at *4 (S.D. Tex. Sept. 14, 2017) (allowing sampling for false loan-level certifications and rejecting defendant's argument that the Government "should have been required to show that [the defendant] proximately caused each default."); *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 3:12-cv-933 (CSH), 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014) ("[S]tatistical evidence is an accepted and useful way of proving liability (and by extension, damage) in an RMBS case.").

**II. Nationwide service of process**

The False Claims Act provides for nationwide service of process and enforcement of trial subpoenas. The statute dictates that "[a] subpoena requiring the attendance of a witness at a trial or hearing conducted under section 3730 of this title may be served at any place in the United States." 31 U.S.C. § 3731. As the Court recognized in its order denying Academy's motion to transfer venue in this action, "Under the FCA, courts appear to have nationwide subpoena power." Doc. 117 at 8; *see Siebert v. Gene Sec. Network, Inc.*, No. 11-CV-01987-JST, 2015 WL 13884145, at *2 (N.D. Cal. Jan. 16, 2015) ("Although the issue has not been decided by any circuit court, the majority of district courts to consider the question have held that section 3731's statement that a subpoena for 'attendance of a witness at trial' may be served anywhere in the United States means that the witness can be compelled to testify at a trial without regard to the 100-mile limitation of Rule 45.") (citing *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 49 (D.D.C. 2011)); *see also United States v. Acad. Mortg. Corporation*, No. 16-CV-02120-EMC, 2018 WL 4053484, at *6 (N.D. Cal. Aug. 24, 2018) (quoting *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 1:13-cv-00009-BLW, 2015 WL 758988, at *10 (D. Idaho Feb. 23, 2015) (collecting cases)).[4]

Because the parties have nationwide service of process available to them to procure witnesses at trial, Relator intends to call all witnesses live at trial. Relator addresses below Academy's expressed intent to read transcripts of deposition testimony from separate cases into the record at trial.

---

[4] *See also United States v. Wyeth*, No. CV 03-12366-DPW, 2015 WL 8024407, at *1 (D. Mass. Dec. 4, 2015); *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, No. CA 06-12195-MLW, 2013 WL 3327317, at *3 (D. Mass. June 27, 2013); *United States v. Gwinn*, No. CIVA 5:06-CV-00267, 2008 WL 867927 (S.D.W. Va. Mar. 31, 2008); *Little v. ENI Petroleum Co., Inc.*, No. CIV-06-120-M, 2007 WL 2254318 (W.D. Okla. 2007); *United States, ex rel. Penizotto v. Bates East Corp.*, No. CIV.A. 94-3626, 1996 WL 417172 (E.D. Pa. 1996); *United States ex rel. Penizotto v. Bates E. Corp.*, No. CIV.A. 94-3626, 1996 WL 417172, at *5 (E.D. Pa. July 18, 1996); *but see Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007); *United States ex rel. Thomas v. Siemens AG*, No. 04-116, 2009 WL 1657429, at *2 (D.V.I. June 12, 2009).

**III. Academy's desire to introduce deposition transcripts from other cases**

Academy seeks to present the jury with transcripts of the depositions of 13 current and former HUD employees taken in separate, prior litigation. *See, e.g.*, Doc. 394 at 6–8; Doc. 394-1 at 13–18. Academy could have subpoenaed these individuals—whom Academy disclosed as potential witnesses just a month before the close of discovery—to appear at trial to offer live testimony. Yet it strategically chose not to, opting instead to inject hearsay and deprive Relator of any chance at cross-examination.

To be clear, the depositions at issue were taken in different litigation to which neither Relator nor Academy were parties. None of the non-party witnesses have testified in this case or have otherwise been examined by counsel for Relator or, to the best of Relator's knowledge, counsel for Academy.

Simply put, Academy argues that it should be able to forgo live trial testimony from available witnesses and instead read to the jury hundreds upon hundreds of pages of cold record from unrelated proceedings—despite those proceedings involving different parties and issues, and despite Relator's inability to conduct cross-examination. Unsurprisingly, Academy cites no authority that supports this argument. Indeed, the two cases it does cite underscore why the argument fails. *See Hub v. Sun Valley Co.*, 682 F.2d 776, 788 n.* (9th Cir. 1982) (observing that efforts to disregard F.R.C.P. 32(a)'s "same parties" requirement for use of depositions from other litigation were "troubling" because they deprived litigants of cross-examination); *Hynix Semiconductor Inc. v. Rambus Inc.*, 250 F.R.D. 458 (N.D. Cal. 2011) (observing that an "unavailable witness" is a prerequisite to use of that witness's prior testimony at trial).

Federal Rule of Civil Procedure 32, Federal Rule of Evidence 804, and basic principles of fairness require that this testimony be excluded. *See, e.g.*, *Affinity Labs of Tex., LLC v. Apple, Inc.*, No. C 09-04436 CW, 2011 WL 232521, at *1–3 (N.D. Cal. Jan. 24, 2011) (excluding "testimony of three third-party witnesses taken in a prior action" because proponent failed to establish that the witnesses were unavailable or that opponent "was afforded an opportunity to develop their testimony in the prior depositions").

**A. Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 govern the use of deposition testimony.**

Federal Rule of Civil Procedure 32(a) provides that deposition testimony taken in an earlier action may be used "against a party" at "a hearing or trial" only when (1) the party was present or represented at the taking of the deposition or had reasonable notice of it; (2) the prior action "involv[es] the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action"; and (3) the testimony is "admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(1), (8). Federal Rule of Evidence 804(b) further requires that prior deposition testimony is admissible only if "the declarant is unavailable as a witness."

**B. Academy's proffered testimony violates both Rule 32 and Rule 804.**

***1. Relator was neither present at nor on notice of the depositions in question.***

The depositions at issue occurred five or more years ago in separate litigation across the country. Neither Relator nor her counsel attended the depositions or had reasonable notice of them. And for good reason—Relator was not involved in those cases in any way. Similarly, to the best of Relator's knowledge, neither Academy nor its counsel attended or were notified of the depositions. For this reason alone, the testimony should be excluded.

***2. The prior litigation involves different parties and different issues.***

The depositions at issue come from two prior False Claims Act cases. Those cases involved completely different parties—different FHA lenders (Quicken Loans and Wells Fargo) and a different plaintiff or relator. Neither Academy nor Relator were involved in any way. That this is *qui tam* litigation does not change that analysis, especially given that the Government declined to intervene. *See United States ex rel. Eisenstein*, 556 U.S. 928, 933 (2009) ("The United States, therefore, is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law."); *see also United States v. Ovist*, No. 3:11-CR-00076-BR, 2012 WL 5830296, at *3 (D. Or. Nov. 16, 2012) (citations omitted) ("[A] number of cases have made clear that government agents are not party-opponents for purposes of Rule 801(d)(2).").

Those cases also involved different issues. While the litigation involved False Claims Act allegations against FHA lenders, there is no evidence that the substance of those allegations was the same as those against Academy in this case. Academy presumable believes the issues are different here as well, considering Wells Fargo and Quicken collectively paid the Government almost $1.3 billion for their misconduct.

Ultimately, the plain text of Rule 32 controls, and requires that the prior litigation involve the "the same subject matter between the same parties." While that may not require "identical issues and parties," it is still a high bar. Indeed, the Ninth Circuit declined to adopt the standard embraced by some other courts that "the presence of an adversary with the same motive to cross-examine" in a case involving a "substantial identity of the issues" is sufficient, calling the approach "troubling." *Hub*, 682 F.2d at 778 at n.*. "Not only does the test disregard the 'same parties' requirement in Rule 32(a), but it also fails to take into account the possibility that the prior opponent mishandled the cross-examination." *Id.* Because the prior litigation involved different parties and different subject matter, and because Relator had no chance to cross examine the witnesses, the testimony should be excluded. *Id.*; *see also Affinity Labs*, 2011 WL 232521, at *2–3.

***3. Academy cannot show the witnesses are unavailable.***

Finally, even if Academy could satisfy Rule 32(a)'s preliminary requirements that Relator be present or have reasonable notice of the depositions and that the prior litigation involved the same parties and subject matter, it would still have to establish that the testimony is admissible under Rule 804. *See* Fed. R. Civ. P. 32(a)(1)(B); Fed. R. Evid. 804(b). Academy cannot carry this burden because it cannot show that the witnesses are unavailable. *See, e.g.*, *Affinity Labs*, 2011 WL 232521, at *2 ("Thus, to qualify for the hearsay exception under Rule 804(b)(1), the proponent of the evidence must first establish the witness's unavailability.").

A witness is available if his or her attendance can be procured "by process or other reasonable means." Fed. R. Evid. 804(a)(5); *see also Wilson v. Seven Seventeen HB Philadelphia Corp.*, No. Civ. A. 99-CV-1729, 2003 WL 22709073, at *4 (E.D. Pa. Nov. 14, 2003) (collecting

authority for proposition that the "ability to serve a subpoena" equates to the ability to "procure attendance by 'process or other reasonable means'"). As detailed above, the False Claims Act provides for nationwide service of process and enforcement of trial subpoenas. Academy thus could have procured the witnesses' attendance at trial, it merely chose not to. Because Academy cannot establish that the witnesses "are unavailable," their deposition testimony is inadmissible under Federal Rule of Evidence 804(b) and, by extension, Federal Rule of Civil Procedure 32(a). *Affinity Labs*, 2011 WL 232521, at *1–3.

* * * *

At bottom, Academy seeks to ambush Relator with years old testimony from available witnesses that Relator cannot contradict on cross-examination. Academy cites no authority to suggest such deposition testimony is admissible at trial under these circumstances, especially in the context of False Claims Act litigation. That is because the Rules of Civil Procedure and the Rules of Evidence make plain the testimony is improper. Accordingly, the testimony should be excluded. *See, e.g.*, *Affinity Labs*, 2011 WL 232521, at *1–3 (excluding deposition testimony from prior proceedings because proponent "ha[d] not established that the [witnesses] are unavailable, or that [the opponent] was afforded an opportunity to develop their testimony in the prior depositions").

**CONCLUSION**

Relator looks forward to trial in this matter and is prepared to brief any additional issues that the Court would find helpful.

Dated: August 18, 2022

Respectfully submitted,

*/s/ Joshua M. Russ*
Joshua M. Russ (admitted *pro hac vice*)
REESE MARKETOS LLP
Attorney for Relator