J. NELSON THOMAS*
JONATHAN W. FERRIS*
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York  14607
Telephone:   (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

*admitted *pro hac vice*

SANFORD JAY ROSEN – 062566
VAN SWEARINGEN – 259809
ADRIENNE PON HARROLD – 326640
ROSEN BIEN GALVAN &
GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
srosen@rbgg.com
vswearingen@rbgg.com
aharrold@rbgg.com

Attorneys for Relator Gwen Thrower

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GWEN THROWER,<br><br>            Plaintiff,<br><br>      v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>            Defendant. | Case No. 16-CV-02120-EMC<br><br>**RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Edward M. Chen<br>Hearing Date:   July 27, 2023<br>Hearing Time:  1:30pm |

[4300463.4]

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

INTRODUCTION ............................................................................................................... 2

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3)) ....................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 3

    A.     Conducting the Initial Investigation, Filing the Lawsuit, and Working with the Government Up To the Government's Declination:  March 2016 – December 2016.......................................................................... 3

    B.     Investigating and Preparing the Amended Complaint, and Briefing Oppositions to Academy's Motions to Dismiss and Transfer: December 2016 – July 2017. .......................................................... 5

    C.     Defeating the Government's Motion to Dismiss and Academy's Motions to Dismiss and to Transfer, and Starting Discovery: July 2017 – December 2018. ............................................................ 6

    D.     Litigating the Government's Ninth Circuit Appeal and Continuing to Develop Evidence:  December 2018 – August 2020. ..................................... 9

    E.     Conducting Substantial Discovery After the Return of the Action to This Court and Preparing for Trial:  August 2020 – August 2022................. 10

    F.     Settling the Case:  August 2022. .................................................... 12

    G.     Fees Work to Secure Fees:  August 2022 – Present...................................... 12

ARGUMENT ..................................................................................................................... 13

I.     THE REQUESTED MERITS LODESTAR AND 2.0 MULTIPLIER ARE REASONABLE AND APPROPRIATE IN THE CIRCUMSTANCES OF THIS CASE. ................................................................................................ 13

    A.     Relator's Counsel's 2023 Billing Rates Are Consistent with the Prevailing Market Rate in the San Francisco Bay Area. .............................. 14

    B.     Relator's Counsel's Detailed Time Records Document Their Reasonable and Appropriate Work as Well as Their Substantial Billing Judgment Reductions. .................................................. 16

    C.     Due to the Extraordinary Results in this Unique Case that Proceeded to a $38,500,000 Settlement Despite Government Opposition, the Court Should Award a 2.0 Multiplier of T&S' Merits Lodestar To Appropriately and Fully Compensate T&S for Their Merits Work.............. 19

RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES

II.     RELATOR'S COUNSEL'S CLAIM FOR FEES FOR LITIGATING THIS
        FEE APPLICATION IS BOTH REASONABLE AND WARRANTED. .............. 22

III.    RELATOR'S COUNSEL'S DOCUMENTED EXPENSES ARE
        REASONABLE AND APPROPRIATE. .................................................................. 23

CONCLUSION............................................................................................................ 24

RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Andrews v. Equinox Holdings, Inc.,* Case No. 20-cv-00485-SK,
  2021 WL 5275822 (N.D. Cal. Nov. 9, 2021) ......................................................... 16

*Blum v. Stenson,*
  465 U.S. 886 (1984) ............................................................................................ 14

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ......................................................................... 14, 22

*Espinosa v Ahearn* (*In re Hyundai & Kia Fuel Econ. Litig.*),
  926 F3d 539 (9th Cir. 2019) ................................................................................. 19

*Hum. Rts. Defense Ctr. v. County of Napa,*
  No. 3:20-cv-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ................ 16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.,*
  No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd,*
  768 F. App'x 651 (9th Cir. 2019) ......................................................................... 19

*Kelly v. Wengler,*
  822 F.3d 1085 (9th Cir. 2016) ......................................................................... 19, 20

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ............................................................................................ 14

*Moore v. James H. Matthews & Co.,*
  682 F.2d 830 (9th Cir. 1982) ................................................................................ 16

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ....................................................................................... 13, 19

*Thompson v. Gomez,*
  45 F.3d 1365 (9th Cir. 1995) ................................................................................ 22

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*
  676 F.2d 1291 (9th Cir. 1982) .............................................................................. 16

*United States ex rel. Lindenthal v. Gen. Dynamics Corp.,*
  61 F.3d 1402 (9th Cir. 1995) ................................................................................ 23

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
  No. 21-1052 (argued Dec. 6, 2022) .................................................................... 2, 21

*United States ex rel. Sequoia Orange Co. v. Baird-Neece Packaging Corp.,*
  151 F.3d 1139 (9th Cir. 1998) ................................................................................ 7

*United States v. $28,000.00 in U.S. Currency,*
  802 F.3d 1100 (9th Cir. 2015) .............................................................................. 14

**STATUTES**

31 U.S.C. § 3730.............................................................................................................. 13, 23

**RULES**

Fed. R. Civ. P. 9 ...................................................................................................................... 4

**OTHER AUTHORITIES**

Nathan T. Tschepik, *The Executive Judgment Rule: A New Standard of Dismissal for Qui Tam Suits Under the False Claims Act*, 87 U. Chi. L. Rev. 1051, 1062 (2020) ............................................................................................................ 20

Oral Argument, *United States, ex rel. Polansky v. Executive Health Resources*, Oyez .................................................................................................................. 21

Press Release 22-1356, U.S. Dep't of Just., Academy Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations Related to Mortgages Insured by the Federal Housing Administration (Dec. 14, 2022) .... 20, 21

## NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **July 27, 2023, at 1:30 p.m.**, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Edward M. Chen, Relator Gwen Thrower, will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 54(d) for an award of Relator's reasonable attorneys' fees and expenses incurred in this case.

Relator seeks an award of attorneys' fees based on a merits lodestar of $6,418,604.35. Relator requests that the merits work performed by one of Relator's counsel, Thomas & Solomon LLP, be adjusted upward by a multiplier of 2.0 pursuant to federal law based on extraordinary results obtained by Thomas & Solomon LLP that are not reflected in or fully compensated by the merits lodestar, making the total award for merits fees $12,622,146.70. Relator further seeks an award of attorneys' fees for work preparing this Motion through May 19, 2023 in the amount of $737,379.55, which will be updated with Relator's Reply papers. Relator also seeks an award of expenses of $89,437.77. The total award sought in this Motion is $13,448,964.02.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities filed herewith; the supporting declarations of Nelson Thomas, Sanford Jay Rosen, and Richard M. Pearl, and the exhibits thereto; the pleadings and orders on file in this matter; and any oral argument or evidence permitted at any hearings on this Motion.

DATED:  May 31, 2023                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Sanford Jay Rosen*
     Sanford Jay Rosen

Attorneys for Relator GWEN THROWER

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Relator Gwen Thrower ("Relator") blew the whistle on her employer Academy Mortgage Corporation ("Academy") for its deliberate scheme to defraud the United States by approving ineligible mortgage loans for government insurance.  After Thomas & Solomon LLP ("T&S") conducted preliminary due diligence work, she retained the firm to represent her in bringing a False Claims Act ("FCA") case against Academy.  It took seven years of intense work before Academy, just weeks before trial, agreed to settle the claims and pay $38,500,000.00, of which $26,988,500.00 redounded to the benefit of the U.S. Government and taxpayers.  T&S' work included extensive factual investigation; repeated attempts to get the United States to intervene; multiple dismissal, stay, and summary judgment motions; an expedited interlocutory appeal; additional extensive factual investigation and contentious discovery centering around massive e-discovery; and multiple mediations to achieve this extraordinary result.

T&S prosecuted this action in the face of the United States' refusal to participate in the lawsuit and its subsequent motion to dismiss.  Until this Court denied the Government's motion to dismiss, "no court had ever permitted the continuation of a qui tam action in the United States' name that the United States sought to end."  Reply Brief for United States, Ninth Circuit ECF. No. 51 at 2, 2019 WL 4132218; *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, No. 21-1052 (argued Dec. 6, 2022) (Supreme Court case this term presenting a very similar issue).

T&S is a well-established, experienced, and nationally recognized law firm that has returned over $200 million to taxpayers in False Claims Act cases.  In this case, T&S attorneys used their specialized expertise to effectively and efficiently get exceptional results, overcoming unusual obstacles and barriers and against all odds.

Through this motion, Relator and her attorneys, T&S and its co-counsel Rosen Bien Galvan & Grunfeld LLP ("RBGG"), seek their fees using current 2023 rates.  After substantial billing judgment reductions of discrete and across the board discounts

amounting to 16.1% of their total recorded time for merits work, they seek a merits lodestar of $6,418,604.35.  They also seek a 2.0 multiplier on T&S' merits work time for outstanding results not compensated by the lodestar, bringing the total value of merits time to $12,622,146.70.  After similar billing judgment reductions amounting to 19.7% of the recorded time for fees work, Relator and her attorneys also seek $737,379.55 for their work through May 19, 2023 on this fees motion.  In addition, they seek $89,437.77 for recoverable litigation expenses as part of this Motion.

In total, Relator's counsel seek in this Motion $13,448,964.02 for their reasonable fees and expenses through May 19, 2023.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

1.      Whether Relator and her counsel should be compensated at their 2023 San Francisco Bay Area market rates for their time reasonably and appropriately devoted to this matter.

2.      Whether Relator and her counsel, T&S, should be awarded an upward adjustment of 2.0 on their merits work due to the outstanding results achieved.

3.      Whether Relator's counsel should recover their reasonable costs and expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Counsel's work at each phase of the case demonstrates that the time they spent over their seven-year representation of Relator was necessary and appropriate to secure the $38,500,000.00 settlement of Academy's false claims submitted to the United States.

### A.      Conducting the Initial Investigation, Filing the Lawsuit, and Working with the Government Up To the Government's Declination:  March 2016 – December 2016.

Relator, a former underwriter at Academy, came forward to disclose evidence that Academy knowingly contravened federal regulations and caused the government to insure loans it otherwise would not have.  *See* ECF No. 117 at 1-5 (background explained in this Court's Order denying Academy's motions to dismiss and to transfer).

T&S attorneys first spoke with Relator in March 2016, and at that time, learned

about her evidence supporting a FCA case against Academy.  Declaration of Nelson Thomas in Support of Relator's Motion for Reasonable Attorneys' Fees and Expenses ("Thomas Decl.") ¶ 43.  T&S had to use substantial firm resources and move as quickly as possible to vet, develop, and promptly file Relator's claims for two reasons.  *Id.* ¶¶ 44-47.  First, T&S needed to ensure that Relator was the first person to file a claim against Academy given the FCA's first-to-file rules (meaning a relator's award in a qui tam action is awarded only to the first person who brings the action).  *Id.* ¶¶ 44-45.  Second, because of the FCA's statute of limitations, any delay in filing—even a matter of days—would likely mean that some of the Government's claims against Academy would be extinguishing and the United States (and its taxpayers) could lose out on tens of thousands of dollars (or more) for every day that a case was not filed.  *Id.* ¶ 46.  Because Federal Rule of Civil Procedure 9(b) requires fraud to be plead with greater particularity, T&S necessarily spent substantial time researching and drafting the Complaint.  *Id.* ¶ 47.  In addition to scouring publicly available information, this work included analyzing Academy's finances and corporate structure, the performance of Academy's loans, the factual evidence detailing how Academy's fraudulent schemes worked, and the potential damages.  *Id.* ¶¶ 48-55.  T&S also had to carefully investigate and analyze the complex Fair Housing Act ("FHA") insurance scheme and the many detailed regulations applicable to these loans.  *Id.* ¶¶ 56-58.  T&S was able to do all of this and file Relator's Complaint in just a few weeks, on April 21, 2016.  ECF No. 1; Thomas Decl. ¶ 61.

Once the Complaint was filed under seal, as the FCA required, T&S prepared Relator's disclosure statement to the Government which explained in detail her material evidence, included more specific information about Academy's alleged fraudulent scheme, provided FHA case file numbers where fraud likely occurred, and identified potential witnesses and their expected testimony.  Thomas Decl. ¶ 64.  This evidence was given to the Government in July 2016.  *Id.*  Following the handover, T&S prepared Relator for her interview with the Department of Justice attorneys and traveled from Rochester, New York to San Francisco, California for the interview in October 2016.  *Id*. ¶¶ 65-66.  After the

RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES

interview, T&S followed up on issues raised by the Government in the interview, including by vetting and providing additional documents in December 2016.  *Id.* ¶ 67.

On December 21, 2016, the Government declined to intervene in the case.  *Id.* ¶ 68.

**B.    Investigating and Preparing the Amended Complaint, and Briefing Oppositions to Academy's Motions to Dismiss and Transfer:  December 2016 – July 2017.**

The Government told T&S that it had declined to intervene because there was insufficient evidence that the mortgage fraud Relator witnessed at her individual branch office was part of a nationwide pattern.  *Id.* ¶ 69.  Based on conversations with the DOJ attorneys, T&S believed that the Government had not performed as thorough an investigation as T&S had, and that the Government had failed to consider the entirety of the evidence Relator had provided.  *Id.* ¶ 70.  On or about January 8, 2017, T&S confirmed to the Government that Relator would exercise her right to proceed with the case.  *Id.* ¶ 72.[1]

T&S conducted a multi-week investigation to establish that Academy's fraudulent policies and practices were systemic to the company and to identify even more specific instances of fraud from across the country.  *Id.* ¶¶ 73-86.  T&S worked with Relator to further develop and document specific factual information establishing her first-hand knowledge of Academy's scheme to pressure employees to approve ineligible loans.  *Id.* ¶¶ 76-77.  T&S retained and worked with a statistician whose analysis substantiated the allegations that Academy's loans defaulted at significantly higher rates than those of comparable lenders.  *Id.* ¶ 100.  T&S conducted additional investigation by identifying, locating, and interviewing former Academy employees across the country.  *Id.* ¶¶ 78-86.

After the case was unsealed and served on Academy, but before Relator filed an amended complaint, Academy filed motions to dismiss the Complaint and to transfer the action.  *Id.* ¶ 87; ECF Nos. 23, 27.  Among other things, Academy argued that Relator

---

[1] T&S retained RBGG as local counsel in January 2017, paying RBGG on a monthly basis. Declaration of Sanford Jay Rosen in Support of Relator's Motion for Reasonable Attorneys' Fees and Expenses ("Rosen") Decl. ¶ 5; Thomas Decl. ¶ 41.  Accordingly, RBGG's merit time began accruing and being paid by T&S during this phase.

RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES

1    could not establish that the loans identified in the Complaint were fraudulently approved.

2    *See* Thomas Decl. ¶ 87; ECF No. 23 at 7-10.  In response, T&S spent the time that was

3    necessary to ensure Relator's Amended Complaint pleaded with sufficient particularity

4    that the claims in these loans were false, including by performing extensive analyses of

5    data from various sources to identify Academy loans that had resulted in foreclosures as

6    well as additional research into the legal theories related to how Academy's conduct

7    constituted fraud.  Thomas Decl. ¶¶ 87-89

8         T&S filed an Amended Complaint in April 2017.  *Id.* ¶ 90; ECF No. 45.  It

9    contained new evidence of systemic nationwide fraudulent practices from seventeen

10   former managers and employees who worked at fourteen of Academy's locations across

11   the country, and ran to over 500 paragraphs (with nearly double the number of pages of the

12   original Complaint).  *See* Thomas Decl. ¶¶ 90-100; ECF No. 45.

13        On June 8, 2017, Academy moved again to dismiss the operative complaint (raising

14   at least ten different arguments involving complex issues), and also filed an amended

15   motion to transfer (raising at least nine separate arguments that the case should be

16   transferred to the District of Utah).  *See* Thomas Decl. ¶¶ 101, 103, 105; ECF Nos. 50, 48.

17   In addition to addressing the numerous nuanced FCA legal issues raised in the motions,

18   T&S had to develop and present additional evidence of the locations of the employee

19   witnesses and foreclosed properties.  Thomas Decl. ¶¶ 104, 106.

20        **C.    Defeating the Government's Motion to Dismiss and Academy's Motions
             to Dismiss and to Transfer, and Starting Discovery:**
21        **July 2017 – December 2018.**

22        On July 19, 2017, the Government moved to dismiss Relator's Amended

23   Complaint.  ECF No. 60.  Among other things, the Government asserted that it had

24   performed a cost-benefit analysis on litigating and that Relator's case failed that analysis.

25   *See* ECF No. 60 at 6-8; Thomas Decl. ¶ 107.  The Government also argued that it should

26   be free of any burdens associated with monitoring this case or providing relevant evidence

27   in response to discovery requests.  *See id.*

28        T&S prepared and filed Relator's response to the Government's motion on

September 25, 2017.  ECF No. 68.  T&S argued that, by not providing evidence of its cost-benefit analysis or any other record evidence, the Government failed to meet its burden for dismissing the action under *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packaging Corp.*, 151 F.3d 1139 (9th Cir. 1998).  *See id.* at 2, 5-6; Thomas Decl. ¶ 108.  The Government submitted an attorney declaration in its reply briefing in support of its argument that it performed a cost-benefit analysis and that this lawsuit would create considerable useless work for the Government if not dismissed.  *See* ECF Nos. 69-1, 69 at 5-7; Thomas Decl. ¶ 109.  Because the Government provided this evidence for the first time with its reply brief, T&S filed an objection asking the Court to strike the affirmation.  ECF No. 70; Thomas Decl. ¶ 109.

At the hearing on the Government's motion, the Court repeatedly asked the Government to offer proof that it had performed a cost-benefit analysis and that the analysis demonstrated that the case was not worth pursuing; however, the Government failed to provide any such evidence.  Thomas Decl. ¶ 110.  The Court permitted T&S to provide supplemental briefing in response to the Government's late submission of evidence in its reply.  ECF No. 79; Thomas Decl. ¶¶ 111-12.

To prepare for a possible evidentiary hearing, T&S also sought and made use of materials in court records of two other FCA cases in which evidentiary hearings had been held, including by obtaining, reviewing, and summarizing records from *Sequoia Orange*.  Thomas Decl. ¶ 113.  These records were both extensive and disorganized, and required significant time by T&S' paralegals to make them usable for Relator's supplemental briefing.  *Id*.

After the first round of supplemental briefing, on April 25, 2018, the Court ordered Relator to proffer evidence that the Government's dismissal was unreasonable, that it had not fully or adequately investigated Relator's allegations, or that the decision was based on arbitrary or improper considerations.  *Id.* ¶ 114; ECF No. 90.  To comply with the Court's order, T&S analyzed FHA claims data that it had received in response to a Freedom of Information Act ("FOIA") request for information about other lenders that had been

RELATOR'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES

involved in FCA cases or investigations involving FHA mortgage origination.  Thomas Decl. ¶¶ 115-18.  This critical analysis was synthesized in a chart illustrating the value of claims from 2010 to 2017 for the top 28 FCA actions involving FHA funds, which was submitted in connection with Relator's 23-page brief, two attorney declarations, a statistical expert's declaration, and eleven exhibits derived from the aforementioned information.  *See* ECF Nos. 92, 93; Thomas Decl. ¶¶ 118-120.

On June 29, 2018, the Court denied the Government's motion to dismiss.  ECF No. 97.  The Court decided that, although Relator alleged significant nationwide miscon-duct over six years, the Government arbitrarily limited its investigation to just a few claims from one location for a eighteen-month period.  ECF No. 97 at 2-3; Thomas Decl. ¶ 122.  The Court ruled that the Government failed to meet its burden of demonstrating a valid governmental purpose for the dismissing the case, and that it failed to fully or adequately investigate the Amended Complaint's allegations.  ECF No. 97 at 2; Thomas Decl. ¶ 122.

The Government filed a notice of appeal on July 27, 2018, and a motion to stay proceedings pending appeal on August 22, 2018.  ECF Nos. 106, 115; *see* Thomas Decl. ¶¶ 128-29.  T&S filed a response on September 5, 2018.  ECF No. 123.  On August 27, 2018, the Ninth Circuit *sua sponte* issued an Order to Show Cause directing the Government to show why the appeal should not be dismissed for lack of appellate jurisdiction.  *See* Ninth Circuit Court of Appeals Docket No. 18-16408 (hereinafter "Ninth Circuit ECF") ECF No. 8; Thomas Decl. ¶ 130.  T&S filed a 17-page brief with the Ninth Circuit on October 25, 2018.  *See* Ninth Circuit ECF No. 12; Thomas Decl. ¶ 131.

The summer months of 2018 were marked by tremendous activity in this case, as T&S was defending not only the Government's attempts to dismiss the case but also those of defendant Academy.  Following the July 19, 2018 hearing on Academy's motions to dismiss and to transfer, the Court requested supplemental briefing to include additional factual information, due in four days.  ECF Nos. 102, 103; Thomas Decl. ¶ 125.  T&S expeditiously analyzed additional complicated, raw data and timely presented the necessary information to the Court.  Thomas Decl. ¶ 126.  Although the overwhelming

majority of declined cases result in dismissals, on August 24, 2018, the Court denied Academy's motions to dismiss and transfer.  *See* ECF No. 117; Thomas Decl. ¶ 127.

Following this Court's denial of Academy's motion to dismiss, the parties quickly moved into the discovery phase of the case.  Thomas Decl. ¶ 132.  From early September to late December 2018, T&S attorneys:  prepared and served initial disclosures and written discovery requests; participated in case management conferences and drafted appropriate case management plans; retained and consulted ESI and mortgage fraud experts; researched and drafted ESI protocols and conferred with Academy's lawyers about them; reviewed Academy's 16,000-page initial document production and started drafting deficiency letters to Academy based on issues identified in Academy's discovery responses.  *Id.*

While discovery was proceeding, the parties also engaged in substantial motion practice.  *Id.* ¶ 135.  Academy filed a motion to certify the Court's dismissal of its motions for interlocutory appeal, raising complex and "novel" issues (as claimed by Academy) related to the certification and promissory fraud theories raised in the Amended Complaint. ECF No. 134 at 3; *see* Thomas Decl. ¶ 136.  Relator's response required careful research and analysis of the issues, particularly as Academy was seeking to make the Court's order immediately appealable to the Ninth Circuit.  ECF No. 149; Thomas Decl. ¶ 136.  During this time, T&S also moved to strike Academy's insufficient affirmative defenses in its amended answer.  ECF No. 137; Thomas Decl. ¶ 137.

**D.**      **Litigating the Government's Ninth Circuit Appeal and Continuing to Develop Evidence:  December 2018 – August 2020.**

On December 21, 2018, the Ninth Circuit granted the United States' motion to stay proceedings in the district court and to expedite the appeal.  Ninth Circuit ECF No. 17. The Ninth Circuit also ordered the parties to address whether the court had jurisdiction over this appeal under the collateral order doctrine.  *Id.*; Thomas Decl. ¶ 138.

The Government filed its opening brief and excerpts of record on March 15, 2019. Ninth Circuit ECF Nos. 22, 23.  The Government's excerpts of records contained

memorandum of law from the proceedings in this Court in violation of the circuit rules, and the Government cited the improper excerpts as factual support throughout its opening brief.  *See id.*; Thomas Decl. ¶ 139.  T&S accordingly moved to strike the excerpts and the Government's opening brief, which contained more than 30 improper citations to the Government's memorandums of law.  Ninth Circuit ECF No. 31; Thomas Decl. ¶ 139. The motion was referred to the merits panel.  Ninth Circuit ECF No. 34.

Before this Court's order denying the Government's motion to dismiss, "no court had ever permitted the continuation of a qui tam action in the United States' name that the United States sought to end."  Reply Brief for United States, Ninth Circuit ECF. No. 51 at 2, 2019 WL 4132218.  Given the absence of precedents, T&S had to research and brief novel of issues of law.  Thomas Decl. ¶ 140.  T&S also researched and briefed complex issues relating to whether the Ninth Circuit had jurisdiction under the collateral order doctrine.  *Id.* ¶ 141.  To maximize its chances of winning in the Ninth Circuit, T&S spoke with multiple appellate experts regarding strategy and additionally worked to recruit amicus curiae, Taxpayers Against Fraud, to prepare an amicus brief to support Relator's position.  Thomas Decl. ¶ 143; *see also* Ninth Circuit ECF No. 40.  T&S attorneys participated in several moot court sessions, *see* Thomas Decl. ¶ 144; Rosen Decl. ¶ 6, and traveled to San Francisco for the oral argument held on November 14, 2019, Thomas Decl. ¶ 144.

While the appeal was pending, T&S continued to develop evidence of Academy's fraudulent practices, including working with another former Academy employee witness. *Id.* ¶ 145.

On August 4, 2020, the Ninth Circuit dismissed the Government's appeal for lack of jurisdiction.  Ninth Circuit ECF No. 62 at 5.

**E.** **Conducting Substantial Discovery After the Return of the Action to This Court and Preparing for Trial:  August 2020 – August 2022.**

Following the dismissal of the Government's appeal, the parties resumed the discovery process before this Court.  Thomas Decl. ¶ 148.  T&S used its experience from

litigating other FHA mortgage fraud actions to focus its discovery efforts and develop a
strategy to obtain the evidence necessary to take the case to trial. *Id*. ¶ 149. For example,
T&S knew email ESI evidence would be critical to developing scienter evidence that
Academy knowingly engaged in fraudulent practices. *Id*. ¶ 150. Accordingly, T&S had to
make sure that the ESI process was conducted properly and with precision. *Id*. ¶¶ 150-51.
This was unusually time consuming because Academy created many obstacles in the
selection of ESI custodians—including backtracking on an earlier agreement, offering an
unreasonably low number of custodians, and refusing to provide sufficient information for
T&S to consider in its evaluation of the appropriate custodians. *Id*. ¶¶ 152-54. Due to its
substantial and thorough efforts, T&S ensured that Academy produced more than two
million pages of documents, including ESI containing strong evidence of scienter. *Id*.
¶¶ 155-57.

　　　　To best prepare for any settlement negotiations and trial, T&S secured the summary
judgment briefing and evidence in *United States v. Quicken Loans*, No. 16-cv-14050 (E.D.
Mich.), a case that had many of the same kinds of FCA violations and types of fraudulent
conduct as this case. Thomas Decl. ¶ 159-162. In addition, after determining that
Academy's subpoena to the Department of Housing and Urban Development ("HUD")
was seriously flawed, T&S prepared a revised subpoena to HUD for the proper time period
and engaged in numerous conferrals with HUD to obtain the correct information. *Id*.
¶¶ 158, 163. As a result, the materials T&S obtained from HUD included over 110,000
lines of raw data containing individual loan information that required extensive coding and
analysis. *Id*. ¶ 166. T&S effectively used the data to create a thorough damages model,
which gave T&S confidence that the Government would approve the $38,500,000
settlement the parties later reached. *Id*. ¶¶ 167-68.

　　　　In May 2021, Relator and T&S engaged the Reese Marketos firm as trial counsel
and to take the lead on the remaining discovery. *Id.* ¶ 169. In connection with this
transition, T&S ended its local-counsel engagement with RBGG in June 2021. *Id.* ¶ 169;
Rosen Decl. ¶ 5.

1    Because T&S had handled the litigation for over five years at that point and had

2    detailed knowledge about all aspects of the case, T&S frequently was called on to assist

3    with aspects of the remaining litigation.  Thomas Decl. ¶ 170.  For example, T&S

4    attorneys traveled to San Francisco in July 2021 to assist in preparing Relator for her

5    deposition given that they had drafted the Complaint, worked with her for years, and

6    prepared interrogatory responses on her behalf.  *Id.* ¶ 171.  Among other things, T&S also

7    assisted with other discovery-related projects and provided substantial assistance to Reese

8    Marketos in reviewing, editing, and commenting on the summary judgment briefing.  *Id.*

9    ¶¶ 172-73.

10    Prior to trial, T&S worked with Reese Marketos to formulate strategies for

11    negotiating the settlement and obtaining the Government's approval of any settlement.  *Id.*

12    ¶¶ 176-77.  This work included providing guidance and calculations of the value of

13    potential settlement based on the FHA claims data as well as analysis of the error rates

14    expressed in the expert reports that had been submitted in the summary judgment briefing.

15    *Id.* ¶ 177.  T&S also advised Reese Marketos as to how the covered conduct and overall

16    settlement agreement had to be structured.  *Id.* ¶ 176.

17    **F.    Settling the Case:  August 2022.**

18    Following the oral argument on Academy's summary judgment motion (filed

19    June 23, 2022, ECF No. 318) and shortly before trial was to begin, the parties held a

20    mediation session on August 24, 2022, with Judge Leonidas Rosen.  Thomas Decl. ¶ 175.

21    At the mediation, the parties settled the case for $38,500,000 excluding attorneys' fees and

22    costs.  *Id.* ¶ 178.  After the mediation, T&S helped negotiate the specific terms of the

23    settlement.  *Id.* ¶ 179.

24    **G.    Fees Work to Secure Fees:  August 2022 – Present.**

25    In September 2022, T&S engaged RBGG as lead fees counsel on a contingent fee-

26    shifting basis.  *Id.* ¶ 41; Rosen Decl. ¶ 7.

27    In making the fees claim, T&S and RBGG carefully reviewed all of both firms'

28    time records and made appropriate billing judgment reductions.  Thomas Decl. ¶¶ 187-

[4300463.4]

200; Rosen Decl. ¶¶ 7, 43-53.  In doing so, T&S compiled and vetted over seven years of its billing records, which had been recorded and maintained in at least four different computer systems that were used to store time records over that period.  Thomas Decl. ¶ 189.  After T&S had prepared its raw fees records, making substantial billing judgment reductions, RBGG further reviewed and reorganized T&S' fee records, and in the process, made additional billing judgment reductions above and beyond those already identified by T&S.  Rosen Decl. ¶¶ 7, 48.  RBGG also prepared its own time records, making substantial billing judgment reductions to those records.  *Id*. ¶ 39-47.

On April 14, 2023, RBGG sent Academy a fully documented demand.  *Id*. ¶ 59. The parties engaged a meet and confer telephone conference call, followed by additional written exchanges.  *Id*.  They were unable to reach agreement in the fees meet and confer process.  *Id*.

## ARGUMENT

Indisputably, Relator is the prevailing party in this action and is entitled to an award of attorneys' fees.  *See* 31 U.S.C. § 3730(d)(2); *see also* ECF No. 438 (providing this Court has jurisdiction over Relator's claims for reasonable attorneys' fees, expenses, and costs).

## I. THE REQUESTED MERITS LODESTAR AND 2.0 MULTIPLIER ARE REASONABLE AND APPROPRIATE IN THE CIRCUMSTANCES OF THIS CASE.

Uniformly, under the plethora of federal fee-shifting statutes, the calculation of fee awards is performed using the lodestar method, multiplying the number of hours the prevailing party reasonably expended by the reasonable hourly rate.  The lodestar is presumed to be the reasonable fee.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (stating that "the presumption is a 'strong' one").

Here, Relator's counsel demonstrate that the hours expended as reduced by their substantial billing judgments are reasonable and appropriate, and that their 2023 rates are well in line with those prevailing in the San Francisco Bay Area market for comparable legal services.  They also demonstrate that a 2.0 multiplier of T&S' merits lodestar should

1   be awarded because they obtained extraordinary results.

2         **A.**     **Relator's Counsel's 2023 Billing Rates Are Consistent with the Prevailing Market Rate in the San Francisco Bay Area.**

3

4         "[T]he established standard when determining a reasonable hourly rate is the rate

5   prevailing in the community for similar work performed by attorneys of comparable skill,

6   experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100,

7   1106 (9th Cir. 2015) (internal quotation marks omitted); *see also Blum v. Stenson*, 465

8   U.S. 886, 895 n.11 (1984) ("prevailing market rate" is "normally deemed to be reason-

9   able"). "[T]he relevant community is the forum in which the district court sits." *Camacho*

10   *v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

11         Relator's counsel have applied current rates for calculating the lodestar to account

12   for delay in payment over the seven years of representing Relator in this action. *See*

13   *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *$28,000.00 in U.S. Currency*, 802 F.3d at

14   1107 ("We have repeatedly held that the court must base its determination on the *current*

15   market rate."); Declaration of Richard Pearl in Support of Relator's Motion for Reasonable

16   Attorneys' Fees and Expenses ("Pearl Decl.") ¶¶ 12, 16-25. The market rates for Relator's

17   counsel are presented below:

| Timekeeper | Position | Class | Rate |
|---|---|---|---|
| **Thomas & Solomon LLP** | | | |
| J. Nelson Thomas | Partner | 1993 | $1,200 |
| Jonathan Ferris | Partner (Oct 2022-present); Associate (2012-Oct 2022) | 2012 | $800 |
| Michael Lingle | Partner | 2000 | $1,000 |
| Jessica Lukasiewicz | Partner | 2008 | $925 |
| Conor Tallet | Associate | 2018 | $550 |
| Adam Sanderson | Associate (2018-present) | 2018 | $550 |
| Adam Sanderson | Law Clerk (2017) | N/A | $325 |
| Sarah Hulbert (SKH) | Lead Paralegal | N/A | $435 |

| Timekeeper | Position | Class | Rate |
|---|---|---|---|
| Samuel Noto (SJN) | Paralegal | N/A | $325 |
| Jonathan Francisco (JDF) | Paralegal | N/A | $435 |
| MLH[2] | Paralegal | N/A | $435 |
| CSS | Paralegal | N/A | $435 |
| GJS | Paralegal | N/A | $435 |
| MMY | Paralegal | N/A | $325 |
| MAH | Paralegal | N/A | $325 |
| CMM | Paralegal | N/A | $325 |
| AMM | Paralegal | N/A | $325 |
| JEB | Paralegal | N/A | $325 |
| **Rosen Bien Galvan & Grunfeld LLP** | | | |
| Sanford Rosen | Partner | 1962 | $1,475 |
| Van Swearingen | Partner | 2008 | $875 |
| Lisa Ells | Partner | 2005 | $925 |
| Adrienne Harrold | Associate | 2018 | $525 |
| Michael Freedman | Senior Counsel | 2008 | $825 |
| Karen Stilber | Senior Paralegal | N/A | $435 |
| Linda Woo | Senior Paralegal | N/A | $435 |
| F. Gail LaPurja | Senior Paralegal | N/A | $405 |

Richard Pearl, who literally wrote the book on attorney's fees in California, attests that Relator's counsel's requested 2023 rates are well within the range of prevailing rates for attorneys in the Bay Area of comparable skill, qualifications, reputation, and experience paid hourly in non-contingent cases. Pearl Decl. ¶¶ 6, 11-25. Mr. Pearl provides detailed evidence of law firm rates in the relevant marketplace, including a survey of rates

---

[2] Multiple paralegal personnel at T&S assisted over the seven years T&S worked on this case. Thomas Decl. ¶¶ 8, 36. The three aforementioned named paralegals were the principal non-attorney staff on the case. *Id.* The remaining paralegals, identified by their initials, are those for whom T&S is claiming more than 20 hours. *Id.* ¶ 192.

found reasonable for reasonably comparable services by courts in the Bay Area, *id.* ¶ 20, as well as a survey of the standard hourly non-contingent rates for comparable civil litigation by law firms with offices or practices in the Bay Area, *id.* ¶ 22.  Mr. Pearl also testifies that the rates requested for T&S' and RBGG's paralegal timekeepers are well within the range of market rates for professionals at or near their experience levels.  *Id.* ¶ 21.

Further, RBGG's 2020, 2021 and 2022 rates have been approved and adopted by recent decisions in the Ninth Circuit and this Court.  *See Prison Legal News v. Ryan,* No. 19-17449 (9th Cir. Mar. 21, 2023) (awarding RBGG's full 2022 billing rates for work on an appeal performed from 2015 to 2022, including Mr. Rosen's rate of $1,350 and Ms. Silber's rate of $400); *Andrews v. Equinox Holdings, Inc.,* Case No. 20-cv-00485-SK, 2021 WL 5275822 (N.D. Cal. Nov. 9, 2021) (approving RBGG's 2021 billing rates for attorneys and paralegals, including Mr. Rosen's rate of $1,250 and Ms. Harrold's rate of $425); *Hum. Rts. Defense Ctr. v. County of Napa*, No. 3:20-cv-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) (awarding RBGG's 2020 rates for work done that year, including Mr. Rosen's rate of $1,100); *see also* Rosen Decl. ¶ 28 & Ex. F.

**B.    Relator's Counsel's Detailed Time Records Document Their Reasonable and Appropriate Work as Well as Their Substantial Billing Judgment Reductions.**

Relator is entitled to compensation for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest."  *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (quoting *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)).  Here, the time Relator's counsel expended in the past seven years of representing Relator was both necessary and reasonable to successfully prosecute this action.

Relator's claim is fully documented by detailed contemporaneous time records showing discrete entries describing each item of work performed by T&S and RBGG attorneys and paralegals, which are in turn supported by sworn declarations.  *See* Thomas Decl. ¶¶ 202-04 & Exs. M, N, O, P; Rosen Decl. ¶¶ 44-45, Exs. G, H.  For T&S, Nelson

1    Thomas led a team primarily staffed by Jonathan Ferris, Michael Lingle, Jessica

2    Lukasiewicz, Connor Tallet, Adam Sanderson, and Sarah K. Hulbert (lead paralegal).

3    Thomas Decl. ¶ 8.  They used other paralegals appropriately.  *See id.* ¶¶ 8, 36, 38-40.  For

4    RBGG, Sanford Jay Rosen and Van Sweringen primarily staffed the case during their

5    engagement as active local counsel and were assisted on appropriate occasion by Lisa Ells

6    for her Ninth Circuit appellate experience.  Rosen Decl. ¶ 8.  Mr. Rosen and

7    Mr. Swearingen were joined by Adrienne Harrold for preparing the instant fee application.

8    *Id.* ¶ 9.  Senior paralegal Karen Silber assisted them for both the local counsel and fees

9    counsel phases.  *Id.* ¶¶ 8-9.

10        T&S' experience litigating FCA cases greatly reduced the amount of time they

11   expended in this matter.[3]  *See, e.g.*, Thomas Decl. ¶¶ 2-40 (T&S background), 102, 150

12   200.  For example, T&S efficiently prepared Relator's claims for her Complaint in a matter

13   of weeks, balancing both the pressure for speed to ensure she was the first-filed FCA

14   action, and the need to substantially research and vet her claims to plead fraud with

15   particularity under Rule 9(b).  *Id.* ¶¶ 44-63.

16        Relator's counsel also efficiently staffed this matter, including by dividing up the

17   labor on the case to minimize duplication of effort and to efficiently use each attorneys'

18   expertise.  *See, e.g.*, *id.* ¶ 102.  For example, after Academy filed its motions to dismiss the

19   Amended Complaint and to transfer the case, Mr. Thomas—the most experienced attorney

20   at T&S on FCA matters—led preparing Relator's response to the motion to dismiss, with

21   assistance from Mr. Ferris (who was then an associate), and Mr. Lingle led preparing

22   Relator's response to the motion to transfer, with assistance from Mr. Ferris.  *Id.* ¶ 102; *see*

23   *id.* ¶¶ 9-19, 25-27.

24        Much of the work performed by Relator's counsel could have been avoided but for

25   Academy's and the Government's multiple attempts to terminate the case.  To respond to

26

27   ────────────────────

28   [3] T&S, in this case, used data obtained in T&S' other FHA mortgage fraud cases; however,
     T&S is not claiming time for work in those cases.  Thomas Decl. ¶¶ 115, 199.

these efforts and keep Relator's claims alive, T&S was forced to conduct extensive investigations and analyses to develop particularized evidence of Academy's nationwide fraudulent practices as well as research and brief issues of law that both the Government and Academy recognized as complex and novel.  Academy also expanded the amount of time T&S had to spend on discovery by, for example, hindering efforts to identify ESI custodians, and serving HUD with a subpoena so inadequate that T&S had to pursue its own subpoena to secure the correct records.

In preparing the instant fee motion, T&S and RBGG made significant billing judgment reductions to the time claimed for merits work, based on careful review of the time records.  *See* Thomas Decl. ¶¶ 188-200, 204 & Ex. O, 209; Rosen Decl. ¶¶ 5, 7, 43, 44 & Ex. G.  T&S' significant reductions included, for example, writing off the time of all timekeepers who billed less than 20 claimable hours to the case; eliminating purely administrative time; and reducing in half the time spent for T&S' Ninth Circuit motion to strike and reply in support of, even though the work spent was reasonable and necessarily incurred given the Government's inclusion of improper material in its excerpts of record.  Thomas Decl. ¶¶ 192-97.  In addition to these reductions, some time was not claimed because it was not recorded.  *Id.* ¶¶ 198.  To further account for any time that might possibly be considered duplicative, administrative, or excessive, T&S has reduced the claimed time by 5% across the board.  *Id.* ¶¶ 200, 209, 212.

RBGG's merits time for work while active local counsel was paid to RBGG on a monthly basis.  Rosen Decl. ¶¶ 5, 44 & Ex. G.  RBGG's invoices during this time included extraordinary billing judgment reductions in recognition of the fact that T&S was representing Relator on a wholly contingent fee basis.  *Id.*  Recovery of these fees are sought at 2023 rates, just as are all other fees.  For its work as fees counsel, RBGG has written off the time of all timekeepers who billed less than 10 hours; eliminated all entries for administrative work; and eliminated time for meetings identified by one attorney but not logged by the other participant.  *Id.* ¶¶ 45 & Ex. H, 46.

In total, T&S and RBGG made billing judgments that have reduced the merits work

1    lodestar by $1,227,950.65, a 16.1% reduction.   After billing judgment reductions,

2    Relator's counsel's claim 7,499.9 hours for their work on the merits of this case, with a

3    lodestar of $6,418,604.35.  *See* Thomas Decl. ¶¶ 207-15; Rosen Decl. ¶¶ 44 & Ex. G, 57.

4         **C.**   **Due to the Extraordinary Results in this Unique Case that Proceeded to**
          **a $38,500,000 Settlement Despite Government Opposition, the Court**
5         **Should Award a 2.0 Multiplier of T&S' Merits Lodestar To**
          **Appropriately and Fully Compensate T&S for Their Merits Work.**
6

7         This is one of those rare cases in which T&S should be awarded a 2.0 enhancement

8    of their merits work lodestar because they achieved "superior results" that "are the result of

9    superior attorney performance." *Perdue*, 559 U.S. at 554; *see, e.g.*, *Kelly v. Wengler*, 822

10   F.3d 1085, 1093, 1103 (9th Cir. 2016) (affirming 2.0 and 1.3 multipliers based on

11   "extraordinary performance yielding extraordinary results," and that "the quality of the

12   work that produced these results [was] underrepresented in the hourly fee"); *Espinosa v*

13   *Ahearn* (*In re Hyundai & Kia Fuel Econ. Litig.*), 926 F3d 539, 572 (9th Cir. 2019) (en

14   banc) (affirming lodestar multipliers in non-common-fund class action brought under both

15   federal and California law); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap*

16   *Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *1, *7 (N.D. Cal. Dec. 6,

17   2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (3.66 multiplier of lodestar used as cross-

18   check in class action case awarding fees out of a common fund in which counsel, who

19   litigated numerous cases in the relevant field, obtained an "exceptional result" and faced

20   "difficult questions, requiring extraordinary skill").

21        Richard Pearl testifies that this case squarely fits the type of lawsuit that is so

22   extraordinary that it merits a lodestar enhancement.  Pearl Decl. ¶¶ 26-32.   T&S overcame

23   the Government's declination to take the case and thereafter the Government's concerted

24   opposition to the lawsuit, demonstrating "extraordinary skill and ability" in both this Court

25   and the Ninth Circuit.  *Id.* ¶ 30.  In effect, T&S beat the Government at its own game.  *Id.*

26   ¶ 29.  In doing so, T&S secured an extraordinary $38,500,000 settlement that restored

27   nearly $27,000, 000 to the U.S. Treasury.  T&S has "serve[d] the nation by incentivizing

28   other skilled attorneys to take on meritorious cases like *Thrower*, despite their formidable

1    obstacles, even without a fee-paying client."  *Id.* ¶ 21; *see Kelly v. Wrangler*, 822 F.3d at

2    1104 (noting that multiplier would attract competent counsel to enforce the underlying

3    federal statute).

4         The outstanding result here cannot be overstated.  For the first time ever, a relator

5    prevailed over the Government's efforts to terminate the lawsuit, due to her attorneys'

6    experience and skill, and thereafter secured an outstanding result.  Even before the

7    Government moved to dismiss, Relator faced a steep uphill battle in choosing to proceed

8    with a declined case.  *See* Nathan T. Tschepik, *The Executive Judgment Rule: A New*

9    *Standard of Dismissal for Qui Tam Suits Under the False Claims Act*, 87 U. Chi. L. Rev.

10   1051, 1062 (2020) ("When the government does not intervene … only about 6 percent of

11   those cases are successful, with an average total recovery of $75,000.").

12        Over the course of seven years of merits litigation, T&S represented Relator on a

13   wholly contingent basis while successfully navigating unusual complexities and prevailing

14   on novel issues that ultimately led to the $38,500,000 settlement, which yielded almost $27

15   million to the U.S. Treasury.  *See* Press Release 22-1356, U.S. Dep't of Just., Academy

16   Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations

17   Related to Mortgages Insured by the Federal Housing Administration (Dec. 14, 2022)

18   (hereinafter "DOJ Press Release 22-1356"), https://www.justice.gov/opa/pr/academy-

19   mortgage-corporation-agrees-pay-385-million-settle-false-claims-act-allegations.  As

20   recognized by the Government, this Court's decision keeping the case alive was

21   "unprecedented."  Opening Brief for United States, Ninth Circuit ECF No. No. 22 at 1,

22   2019 WL 1512922.  Prior to Relator's successful opposition to the Government's motion

23   to dismiss, "no court had ever permitted the continuation of a qui tam action in the United

24   States' name that the United States sought to end."  Reply Brief for United States, Ninth

25   Circuit ECF No. 51 at 2, 2019 WL 4132218.  The decision attracted media attention given

26   the unique issues involved.  *See* Thomas Decl. ¶ 146 & Exs. K, L.

27        In fact, this term the Supreme Court is addressing very similar issues regarding the

28   standard for dismissal of a FCA action.  *See United States ex rel. Polansky v. Exec. Health*

*Res., Inc.*, No. 21-1052 (argued Dec. 6, 2022).  At oral argument, the Justices asked for examples of where courts have found that the standard for the Government to dismiss was *not* met and have been affirmed on appeal; counsel referenced only this Court's decision and stated that it is "exceedingly rare."  *See* Thomas Decl. ¶ 147; Oral Argument at 00:27:15, *United States, ex rel. Polansky v. Executive Health Resources*, Oyez, https://www.oyez.org/cases/2022/21-1052.

Nearly $27,000,000, over 70% of the extraordinary $35,500,000 settlement, is returned to the Government and U.S. taxpayers.  *See* DOJ Press Release 22-1356.  After initially declining the case and aggressively seeking dismissal in this Court and the Ninth Circuit, the DOJ praised the settlement, recognizing it was wholly due to T&S' skill litigating the case with Relator's assistance:  "The settlement … is a result of the relator's efforts to develop this case in litigation and complements the department's actions to prevent abuse of government programs designed to foster home ownership."  *Id.*

In sum, Relator's counsel's merits work lodestar, billing judgment reductions, and requested multiplier are reflected in the following two charts:

| MERITS WORK LODESTAR | | | |
|---|---|---|---|
| Firm | Hours | Without 2.0 Multiplier of T&S' Work | With 2.0 Multiplier of T&S' Work |
| T&S | 7,277.3 | $6,203,542.35 | $12,407,084.70 |
| RBGG | 222.6 | $215,062.00 | $215,062.00 |
| **Total** | **7,499.9** | **$6,418,604.35** | **$12,622,146.70** |

| BILLING JUDGMENT REDUCTIONS TO MERITS WORK | | |
|---|---|---|
| Firm | Total (Claimed Entries + Billing Judgment Entries) | Total Billing Judgment Reductions |
| T&S | $7,310,019.50 | $1,106,477.15 |
| RBGG | $336,535.50 | $121,473.50 |
| **Total** | **$7,646,555.00** | **$1,227,950.65** |
| **(% Reduction)** | | **(16.1%)** |

1  **II.   RELATOR'S COUNSEL'S CLAIM FOR FEES FOR LITIGATING THIS**
2  **FEE APPLICATION IS BOTH REASONABLE AND WARRANTED.**

3       Relator is entitled to recover the attorney's fees incurred in preparing and litigating
4  this fee application.  *See Camacho*, 523 F.3d at 981-82; *Thompson v. Gomez*, 45 F.3d
5  1365, 1366 (9th Cir. 1995).

6       Relator's counsel has made deep billing judgment reductions to the time preparing
7  the fee application.  *See* Part I.B.

8       To prepare this fee application, T&S compiled and carefully vetted of its own
9  billing records for time spent preparing this fees application.  Thomas Decl. ¶¶ 185-200,
10  203 & Ex. N, 204 & Ex. P.  RBGG, serving as lead fee counsel, reviewed T&S' fees time
11  records, prepared its own fees time records, applied billing judgment reductions to both
12  sets of records, created the charts and other exhibits in support of the meet and confer
13  proffer and this fees motion, prepared for and participated in meet and confer discussions
14  with Academy's attorneys, and prepared the instant fee application and accompanying
15  declarations.  Rosen Decl. ¶¶ 7, 45-46, 48-57.  To further account for any time that might
16  possibly be considered duplicative, administrative, or excessive, RBGG has further
17  reduced the claimed time by 5% across the board.  *Id.* ¶¶ 46, 56.

18       In total, T&S and RBGG made billing judgments that have reduced the work on this
19  fee application by $181,110.95, a 19.7% reduction.   After billing judgment reductions,
20  Relator's counsel claim 836.8 hours for work on this fee application, for a lodestar of
21  $737,379.55.   *See* Thomas Decl. ¶¶ 211-213; Rosen Decl. ¶¶  45 & Ex. H, 56-57.

22       No multiplier is sought for the fees work.  Relator will submit documentation of
23  additional time spent working on the fees motion since May 19, 2023 with her reply
24  papers, or such other time as the Court directs.  Rosen Decl. ¶ 58.

25       In sum, Relator's counsel's fees work lodestar and billing judgment reductions are
26  reflected in the following two charts:

27

28

| FEES WORK LODESTAR (as of May 19, 2023) | | |
|---|---|---|
| **Firm** | **Hours** | **Amount** |
| T&S | 401.9 | $403,552.88 |
| RBGG | 434.9 | $333,826.68 |
| **Total** | **836.8** | **$737,379.55** |

| BILLING JUDGMENT REDUCTIONS TO FEES WORK (as of May 19, 2023) | | |
|---|---|---|
| **Firm** | **Total (Claimed Entries + Billing Judgment Entries)** | **Total Billing Judgment Reductions** |
| T&S | $550,392.50 | $146,839.63 |
| RBGG | $368,098.00 | $34,271.33 |
| **Total** | **$918,490.50** | **$181,110.95** |
| **(% Reduction)** | | **(19.7%)** |

## III.   RELATOR'S COUNSEL'S DOCUMENTED EXPENSES ARE REASONABLE AND APPROPRIATE.

The FCA provides for payment of litigation expenses, including expert fees, to a prevailing relator.  31 U.S.C. § 3730(d)(2); *see also United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1413 (9th Cir. 1995) ("under the FCA, fees, expenses, and costs are three distinct categories").  The Court should thus award Relator's counsel $89,437.77 ($87,532.93 to T&S and $1,904.84 to RBGG) to reimburse them for their reasonable expenses necessarily incurred, including, for example, expert fees, PACER charges, long-distance telephone charges, and Westlaw charges.  *See* Thomas Decl. ¶ 205 & Exs. Q (itemization), R (supporting documentation)*;* Rosen Decl. ¶¶ 47 & Exs. I (itemization for merits expenses), J (supporting documentation for merits expenses), K (itemization for fees expenses and supporting documentation), 57.

The total award sought in this Motion is $13,448,964.02, as reflected in the following chart:

| TOTAL AWARD (as of May 19, 2023) | | | |
|---|---|---|---|
| Category | Hours | Without 2.0 Multiplier of T&S' Merits Lodestar | With 2.0 Multiplier of T&S' Merits Lodestar |
| Merits Work | 7,499.9 | $6,418,604.35 | $12,622,146.70 |
| Fees Work | 836.8 | $737,379.55 | $737,379.55 |
| Expenses | N/A | $89,437.77 | $89,437.77 |
| **Total** | **8,336.7** | **$7,245,421.67** | **$13,448,964.02** |

In addition to and not overlapping with the aforementioned claimed expenses as part of this Motion, Relator claims $1,438.67 in taxable costs in a concurrently filed Bill of Costs.  *See* Relator's Bill of Costs.

## CONCLUSION

For the foregoing reasons, Relator respectfully requests that the Court enter an award to Relator's counsel of attorneys' fees and expenses for work performed on this case as presented here and to be further substantiated with the reply papers.

DATED:  May 31, 2023                              Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Sanford Jay Rosen*
      Sanford Jay Rosen

Attorneys for Relator GWEN THROWER