J. NELSON THOMAS*
JONATHAN W. FERRIS*
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York  14607-2152
Telephone:    (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

*admitted *pro hac vice*

SANFORD JAY ROSEN – 062566
VAN SWEARINGEN – 259809
ADRIENNE PON HARROLD – 326640
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
srosen@rbgg.com
vswearingen@rbgg.com
aharrold@rbgg.com

Attorneys for Relator GWEN THROWER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GWEN THROWER,<br><br>                Plaintiff,<br><br>        v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>                Defendant. | Case No. 16-CV-02120-EMC<br><br>**RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES**<br><br>Judge:   Hon. Edward M. Chen<br>Hearing Date:    September 21, 2023<br>Hearing Time:   1:30pm |

[4329604.13]

Case No. 16-CV-02120-EMC

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................ 1

ARGUMENT .................................................................................................................. 3

I. RELATOR'S COUNSEL'S 2023 BILLING RATES ARE WELL WITHIN THE MARKET RANGE FOR WORK BY COMPARABLE LAWYERS IN COMPARABLE CASES ................................................................................. 3

    A. T&S' Rates Are Appropriate 2023 Market Rates For This Case ................... 3

    B. RBGG's 2023 Billing Rates are Consistent With Its Rates Approved by the Ninth Circuit and Judges of This Court ............................................. 5

II. T&S' MERITS WORK WAS NEITHER EXCESSIVE NOR DUPLICATIVE ............................................................................................. 6

    A. Relator's Counsel's Time Involving "Emails" was Reasonable and Appropriate ............................................................................................. 7

    B. Relator's Counsel Devoted Appropriate Time To "Conferencing" to Manage this Complex, Multi-Faceted, and Multi-Phase Case ...................... 8

    C. T&S' Time Devoted to Specific Projects is Compensable and Was Not Unnecessarily Duplicative or Excessive ........................................... 9

        1. T&S Time for its Search for Trial Counsel ......................................... 9

        2. Paralegal Time .................................................................................. 9

        3. Drafting the Appeal Brief ................................................................ 10

        4. Reviewing Transcripts from the *Allied* Case .................................... 10

        5. Preparing the Complaint and Amended Complaint .......................... 10

III. RELATOR'S COUNSEL'S FEES WORK AND TIME WAS NECESSARY AND APPROPRIATE DUE TO THE COMPLEXITY AND LENGTH OF THE CASE AND ACADEMY'S OPPOSITION ................................................ 11

    A. The Requested Fees Motion Work Are Not Excessive ............................... 11

    B. Academy Unnecessary Increased Relator's Counsel's Fees Motion Work ..................................................................................................... 12

    C. Any Possible Administrative or Duplicative Time on the Fees Motion Has Been Eliminated By Billing Judgment Reductions ............................. 13

    D. RBGG's Fees for Work Since May 19 Are Due to Academy's Tactics and Are Appropriately Proportion to the Stakes in the Case ....................... 14

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

IV.   THE COURT SHOULD AWARD RELATOR'S COUNSEL UP TO A 2.0 MULTIPLIER FOR T&S' MERITS WORK.............................................................. 15

CONCLUSION...................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andrews v. Equinox Holdings, Inc.*,
570 F. Supp. 3d 803 (N.D. Cal. 2021)......................................................................... 4

*Blum v. Stenson*,
465 U.S. 886 (1984) ..................................................................................................... 2

*Defenbaugh v. JBC & Assocs., Inc.*,
No. C-03-0651 JCS, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) ....................... 12

*Dytch v. Lazy Dog Rest. LLC*,
No. 16-CV-03358-EDL, 2019 WL 3928752 (N.D. Cal. Aug. 16, 2019)................ 11

*Hernandez v. Spring Charter Inc.*,
No. 19-CV-01479-TSH, 2020 WL 1171121 (N.D. Cal. Mar. 11, 2020) ................. 12

*Hum. Rts. Def. Ctr. v. Cnty. of Napa*,
No. 20-CV-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ............. 4, 14

*McGrath v County of Nevada*,
67 F.3d 248 (9th Cir. 1995) .......................................................................................... 6

*Mendez v. Radec Corp.*,
907 F. Supp. 2d 353 (W.D.N.Y. 2012)..................................................................... 4, 6

*Osterweil v. Bartlett*,
92 F. Supp. 3d 14 (N.D.N.Y. 2015) ............................................................................. 5

*Perdue v. Kenny A.*,
559 U.S. 542 (2010) .................................................................................................... 15

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010)................................................................................... 3, 5

*Public.Resource.org v. U.S. Internal Revenue Serv.*,
No. 13-CV-02789-WHO, 2015 WL 9987018 (N.D. Cal. Nov. 20, 2015).............. 12

*Rodriguez v. Barrita, Inc.*,
53 F. Supp. 3d 1268 (N.D. Cal. 2014)....................................................................... 11

*Rosenfeld v. U.S. Dep't of Just.*,
904 F. Supp. 2d 988 (N.D. Cal. 2012)....................................................................... 12

*Stonebrae, L.P. v. Toll Bros., Inc.*,
2011 U.S. Dist. LEXIS 39832 (N.D. Cal. 2011)........................................................ 3

*United States ex rel. Carranza v. Guaranteed Rate, Inc.*,
No. 1:17-CV-637MADDJS, 2021 WL 494696 (N.D.N.Y. Feb. 10, 2021) .......... 5, 6

*United States ex rel. Polansky v. Executive Health Resource Inc.*,
216 L.Ed.2d 370 (U.S. 2023) ................................................................................ 15

*Wit v. United Behavioral Health*,
578 F.Supp.3d 1060 (N.D. Cal. Jan. 5, 2022) .......................................................... 12

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

**INTRODUCTION**

Relator secured total victory in this nearly eight year False Claims Act case. She secured a $38.5 million recovery from Academy, most of which benefited the taxpayers. Her attorneys had to defeat the Government's efforts to terminate the case, including by defeating its Ninth Circuit appeal. And they had to overcome Academy's tough opposition and refusal to settle until at the verge of trial.

Relator's well-documented attorneys' fees application evidences the work counsel performed and their vast billing adjustment reductions. *See* ECF No. 440 (Fee Motion). Academy has continued its delay and scorched earth tactics, including by seeking post judgment discovery and by supporting its Opposition with an 872-page seriously flawed expert's report. *See* ECF Nos. 448 (Opp.), 448-2 (Stiefel Dec.); 449 (Discovery Motion). Academy and its expert ignore or misstate the facts. They offer scattershot defenses peppered with factual errors and inapposite authorities, some of which undermine Academy's position. At long last the Court should award the fees requested and end this case. *See* Rosen Reply Decl. ¶ 69, Attachment 2 (total claim summary chart).

**SUMMARY OF THE ARGUMENT**

Academy concedes that Relator is the prevailing party, and that the Court should award her attorneys' fees. Opp. at 6.[1] Academy does not contest Relator's statutory costs of $1,438.67 and her litigation expenses of $89,437.77. *Id.* at 6 n.1.

But Academy asks the Court to drastically reduce the fee award in three ways:

(1)    Reduce counsel's billing rates because of the nature of the work and Thomas & Solomon's (T&S') rates in other matters.

(2)    Reduce the number of hours for which fees will be awarded due to alleged excessive work, overstaffing, and defective billing practices.

(3)    Award no multiplier.

Academy and its expert ask that the Court award Relator's counsel a total fee of

---

[1] We cite to the ECF pagination, for clarity.

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

$2,960,355.00. Opp. at 30; Stiefel Decl. ¶ 90 & Ex. Y.

That is a lot of money. But it is not the fully compensable fee due under the facts of this case or controlling attorneys' fees-shifting law. *See Blum v. Stenson*, 465 U.S. 886, 901 (1984) ("excellent results" warrant "recover[ing] a fully compensatory fee").

Academy tries to limit the fees with a false history of the case, featuring the attorneys' fees negotiations, that stands reality on its head. *See* Opp. at 7-9, 27-28. The record makes clear that T&S repeatedly urged defendant to negotiate and settle everything in the case, early and often, reminding Academy that not settling would increase Relator's counsel's fees. *See* Thomas Reply Decl. ¶ 5. After the damages settled, T&S and Rosen Bien Galvan & Grunfeld LLP ("RBGG") tried to facilitate settlement of fees, but were met with Academy's delays. *See id.* ¶¶ 6-17; Rosen Reply Decl. ¶¶ 12-17. Even now, Academy has increased counsel's work by seeking at the last minute to take disfavored post-judgment discovery which it intends to use to further delay concluding this case presumably well into 2024. *See* Opp. at 6 n.2 (stating that, if discovery is granted, it will seek to file supplemental material); ECF No. 449.

Academy's and its expert's assault on Relator's counsel's rates and time are riddled with factual and legal errors. *See* Pearl Reply Decl. ¶¶ 9-80; Rosen Reply Decl. ¶¶ 21-62; Thomas Reply Decl. ¶¶ 24-48.

As evidenced by the declarations supporting the fees application and this Reply, Relator's counsel's current hourly rates are the appropriate rates for this case. The time counsel committed and recorded was necessary and appropriate to secure the results here.

Counsel's billing records and practices are fully consistent with those mandated by fees law and the practices of proper and ethical billing. Counsel's discrete and across-the-board billing judgement reductions are more than sufficient to account for any possible inefficiencies, administrative time, or unnecessary duplication of effort.

Finally, a multiplier of up to 2.0 to T&S' work on the merits of the case is warranted to account for the extraordinary results, due to superior attorney performance to overcome significant obstacles, which is not included in the lodestar.

In total, counsel's lodestar fees and expenses through August 13 is $7,333,471.97, plus any additional fees the Court deems appropriate to conclude this matter.[2]

**ARGUMENT**

**I.    RELATOR'S COUNSEL'S 2023 BILLING RATES ARE WELL WITHIN THE MARKET RANGE FOR WORK BY COMPARABLE LAWYERS IN COMPARABLE CASES**

Relator's counsel's hourly rates are readily in line with the range of rates charged by and awarded to comparably qualified attorneys for comparable services in the San Francisco Bay Area legal community.  Pearl Reply Decl. ¶ 9 (citing, e.g., *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. 2011)).[3]

**A.    T&S' Rates Are Appropriate 2023 Market Rates For This Case**

The "proper scope of comparison" for rates "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).  Academy agrees that forum rates control.  *See* Opp. at 10; Stiefel Decl. ¶ 82.  But Academy buys that concession back, contending that T&S' rates are "extraordinarily high in the Northern District of California."  Opp. at 10.  Its expert cherry picks from the Real Rate Report for certain subject matters, opining that the appropriate comparison is the 75th percentile rate for nationwide finance and securities partners or the 75th percentile rate for employment partners in San Francisco.  Stiefel Dec. ¶¶ 83-95.

In contrast, Mr. Pearl relied on the Real Rate Report's data on "Litigation" in his opinion.  *See* ECF No. 440-3 (Pearl Decl.) ¶¶ 15, 24 & Ex. D; Pearl Reply Decl. ¶¶ 14-15.  Mr. Pearl explained that "[g]iven counsel's stellar performance here, along with their exceptional expertise and experience, the exceptional results obtained in the face of the

---

[2] *See* Rosen Reply Decl. ¶¶ 68-69, Attachments 1 & 2 (summary chart showing all fees, as discounted, expenses and statutory costs).

[3] Academy does not dispute that there is up to an eight years' delay in payment.  Academy suggests possibly using the attorneys' historical rates and adding a prime rate enhancement, but cites no case where such methodology has been used.  Opp. at 12-13; *see* Pearl Reply Decl. ¶ 19 (knows of none except in EAJA cases).

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

difficult obstacles they overcame, and two years of increases in the legal marketplace generally, it is clear that Counsel's rates would rank well above even Third Quartile rates in this legal marketplace."  Pearl Decl. ¶ 24; *see also, e.g.*, *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 807 (N.D. Cal. 2021) (finding "Pearl's opinions [on rates] well supported and persuasive"); *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021) (same).

Academy relies too heavily on lower rates T&S received in this District in three cases:  *Sullivan v. Safeway, Inc.*, No. 3:19-cv-03187-MMC (consolidated), *Hutto v. Albertsons Companies Inc.*, No. 3:20-cv-07541-MMC, and *Hardin v. Mason McDuffie Mortgage Corporation*, No. 14-cv-02372-PJH.  *See* Opp. at 11-12; Stiefel Decl. ¶ 90.  Their facts are so different that they are entirely inapposite.

All three cases were small Fair Labor Standards Act or Fair Credit Reporting Act class action common fund settlement cases.  The fees and expenses were paid out of common fund settlements that included all class member payments, as well as administrator payments and service awards to the named plaintiffs.  Lukasiewicz Decl. (filed concurrently with this Reply) ¶¶ 2-3, 5, 9.  The lodestars presented in all three cases were cross-checks against percentages of class action settlement common funds.  *Id*. ¶¶ 3, 6, 11.  In all three, the attorneys' fees were cabined as a percentage of the settlement fund.  *Id.* ¶¶ 3, 11, 14.  In all three, T&S had to key off of co-counsel's rates.  *Id.* ¶¶ 3, 7, 10, 14.  Ms. Lukasiewicz only later learned that the rates she used were substantially below the rates awarded by courts in this District in comparable class action cases, and substantially below the San Francisco Bay Area market rates.  *Id.* ¶ 3

Academy also relies on a Western District of New York case and a Northern District of New York case, both of which were factually the reverse of this case.  *See* Opp. at 13-14, 17-19, 29.  *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 358-59 (W.D.N.Y. 2012) was a FSLA opt-in class case in which the court awarded T&S rates prevailing in the Western District of New York rather than the higher "national" rates T&S sought.  In *United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 1:17-CV-637-MADDJS,

4                                                    Case No. 16-CV-02120-EMC

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

2021 WL 494696, at **5-9 (N.D.N.Y. Feb. 10, 2021), the court reduced T&S' requested rates because the prevailing rate in the Northern District of New York was less than the rates of T&S' home forum of the Western District of New York.  The courts in both cases applied the "forum rule," *id.* at *5, using the prevailing rates in their legal markets.  The San Francisco Bay Area market rates apply here, not those in upstate New York 3,000 miles away.  *See Prison Legal News*, 608 F.3d at 454 (rates "accepted in the District of Columbia" are not a "a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away").[4]

**B.    RBGG's 2023 Billing Rates are Consistent With Its Rates Approved by the Ninth Circuit and Judges of This Court**

RBGG's 2020, 2021, and 2022 rates for both merits and fees work have been approved and applied by courts in this District and the Ninth Circuit in matters that were not nearly as difficult or complicated as this matter.  *See* ECF No. 440-3 (Rosen Decl.) ¶ 28 (collecting cases).  RBGG's 2023 rates are well within the range of rates billed by comparable attorneys in the San Francisco Bay Area, and are the rates RBGG bill and are paid for by clients.  *Id.* ¶ 39; *see* Pearl Decl. ¶¶ 16-25.

Academy argues that because RBGG billed T&S and was paid for its merits work, the rates should be limited to the 2017 rates RBGG was paid.  Opp. at 14 -15; *see supra*, note 3.  RBGG held its rates to 2017 rates as an extra-generous billing judgment reduction, due to multiple factors.  *See* Rosen Decl. ¶ 5; Rosen Reply Decl. ¶ 22.  Academy's argument fails because RBGG's merits work fees are just that, fees and not costs.  Fees are paid to the prevailing party at current rates to compensate for "delay in payment." *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

Although Academy seems to accept RBGG's 2017 rates for its merits work, Opp. at

---

[4] It is noteworthy that same Northern District of New York judge who awarded Mr. Thomas a rate of $300 in *Carranza* also awarded former U.S. Solicitor General and Supreme Court advocate Paul Clement the same $300 rate.  *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 37 (N.D.N.Y. 2015); Thomas Reply Decl. ¶ 28; Rosen Reply Decl. ¶ 24 (Mr. Clement paid his full rate in N.D. Cal. case with RBGG).

14-15, it uses lower rates for RBGG in calculating Academy's proposed fee award. Despite describing Mr. Rosen as "a Michelangelo of the courts" (sarcasm or irony in the original), Stiefel Decl. ¶ 91, Mr. Stiefel and Academy brush the incontrovertible evidence of RBGG's approved rates aside, and seek to reduce its rates to the much too reduced rates they propose for T&S' attorneys. *Compare* Opp. at 15 (applying RBGG 2017 rates), *with* Stiefel Decl. Ex Y (applying to RBGG rates Academy proposed for T&S).

## II.    T&S' MERITS WORK WAS NEITHER EXCESSIVE NOR DUPLICATIVE

Relying on Mr. Stiefel's flawed opinions, Academy contends that T&S' time on the merits of this case was excessive and duplicative, and that T&S' billing and timekeeping practices are infirm. Opp. at 19-26. His attacks comport with neither the correct legal standards nor the local legal marketplace, and his analyses and exhibits are riddled with errors that make his calculations and opinions unreliable. *See* Pearl Reply Decl. ¶¶ 21-69; Rosen Reply Decl. ¶¶ 21-62. Academy fails to meet its burden of providing evidence that this time was not reasonably spent. *See McGrath v County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (party challenging fee application "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged").

Academy relies again on the two inapposite New York district court fees orders discussed above. Opp. at 19-20. Again, the facts of each of those cases are radically different from those of the instant case. In *Mendez*, the court reduced the fees claim by 70% due mostly due to "Plaintiff's continued refusal to settle the case," and that attorneys had overvalued the case and achieved a settlement amount of $225,000 that was dwarfed by their $1,600,000 attorneys' fees claim. 907 F. Supp. 2d at 358. In the *Carranza* case, the court refused to reduce T&S' fees by 70%. It applied a 20% reduction of the claim, not a 70% reduction as defendant in that case requested. 2021 WL 494696 at *10.

By contrast, here T&S made every effort to settle the case, and the fee claim is dwarfed by the $38.5 million settlement. *See* Thomas Reply Decl. ¶¶ 5-12. And T&S in those cases did not have fees counsel to guide it to make deep billing judgment and across-the-board reductions. *See* Thomas Reply Decl. ¶¶ 13, 48; Pearl Reply Decl.¶¶ 70-78.

## A.    Relator's Counsel's Time Involving "Emails" was Reasonable and Appropriate

Academy contends that Relator's counsel spent too much time on "emails."  Opp. at 20-22.  As Mr. Pearl explained, "Managing a complex case with a large team necessarily generates a great deal of email traffic.  Courts widely recognize that modern litigation involves attorneys relying on email.  Email communication can also be a more efficient means to confer and share critical information, compared to scheduling and holding meetings and phone calls."  Pearl Reply Decl. ¶ 36 (citing case law); *see also* Rosen Decl. ¶ 49.  Many communications Mr. Stiefel described as "emails" would have been billed as "memos" or "letters" decades ago.  The vast majority of time records identified by Mr. Stiefel as pertaining to "emails" are proper, substantive communications that advanced Relator's case.  *See* Pearl Reply Decl.¶ 38; Rosen Reply Decl. ¶ 37.

The Opposition points to only four cherry-picked examples out of the thousands of time entries, and Mr. Stiefel points to only one 2017 email exchange.  *See* Opp. at 20-22.; Stiefel Decl. ¶¶ 35-44.  As for the rest of the time, Mr. Stiefel collects in an exhibit what he identifies as time entries attributable to emails.  Stiefel Decl. ¶ 47.  However, the exhibit is riddled with errors, including but not limited to: (1) time entries that are clearly-marked billing judgment reductions; (2) time entries where the email was just one part of multiple activities in the same description (e.g., "11/12/2019 Lisa Ells: Additional review of materials and draft questions for moot, emails with counsel re same."); (3) time entries where the amount of time billed is so large that it is clear that other substantive work was involved, such as revising documents or conducting analyses; and (4) time entries that are not about emails at all (e.g., "03/25/2016 Nelson Thomas: Prepare for call to US Attorneys office re: filing potential FCA case and leave voicemail re: same.").  *See* Pearl Reply Decl.¶¶ 41-45; Rosen Reply Decl. ¶¶ 38-43 (collecting these errors in tables).

Academy suggests that T&S used a 0.2 minimum charge for emails.  Opp. at 20; Stiefel Dec. ¶ 34, 44-46.  But well over 600 time entries were billed at 0.1, well over 1,100 time entries were billed at more than 0.2, and many entries billed at 0.2 refer to more than

one email in the same description.  *See* Pearl Reply Decl.¶ 40; Rosen Reply Decl. ¶ 44.

**B.      Relator's Counsel Devoted Appropriate Time To "Conferencing" to Manage this Complex, Multi-Faceted, and Multi-Phase Case**

Academy asserts that Relator's time entries show "excessive" internal conferencing. Opp. at 17-18.  It relies on Mr. Stiefel and his Exhibit D, entitled "Billable Hours and Fees Attributed to Internal Communications," purportedly collecting time spent "conferencing conferring, meeting, calling, strategizing, commenting, sending/reviewing memos, and other communications."  Stiefel Dec. ¶ 24, Ex. D.  Mr. Stiefel proposes reducing that time by an arbitrary 75%.  *Id*. ¶ 98.  He bases his opinion on his global view that "internal conferencing and communication are ripe for bill padding."  *Id.* ¶ 26.  Mr. Pearl explains the realities of litigating a complex matter like this one in which multiple lawyers are working on common and discrete projects in multiple locations.  Pearl Reply Decl. ¶¶ 25-27; *see also* Rosen Reply Decl. ¶¶ 34-35.

Mr. Stiefel's Exhibit D identifying alleged offensive "**internal** communications" is plagued by errors, including entries (1) for numerous **external** communications—with opposing counsel, the DOJ, and even their client, Ms. Thrower; (2) where there is no indication on the time entries that the work involved conferring with another member of T&S' team; (3) where conferencing was only one of multiple activities; and (4) entries that Relator's counsel eliminated from the fees claimed as billing judgment reductions.  *See* Pearl Reply Decl. ¶¶ 28-32; Rosen Reply Decl. ¶¶ 29-33 & Ex. B (exhibit highlighting, line-by-line, the errors in Mr. Stiefel's Exhibit D).

Academy provides some examples of "entries [that purportedly] demonstrate excessive internal conferencing emails in which each attorney has billed the same amount of time for sending or reviewing the same email."  Opp. at 23.  Many prove the opposite. For example, Academy identifies a set of 11/6/2019 entries by three T&S attorneys at 0.4 hours each for emails and a phone call related to a FRAP Rule 28(j) letter related to the *Campie* decision.  Opp. at 23.  In addition to the call, at least six emails were sent among counsel that included an attached draft and subsequent heavily redlined two-page letter to

the Ninth Circuit regarding *Campie*.  Thomas Reply Decl. ¶ 33.

Academy criticizes two T&S attorneys for spending 0.2 hours for reviewing emails between co-counsel regarding a dismissal stipulation.  Opp. at 24.  But that work involved reading four emails concerning the stipulation, and reviewing an attached redlined draft identifying four substantive issues: (1) whether certain attachments to the stipulation would be included, (2) the scope of the stipulation, (3) which firms' fees would be included in a motion that would be carved out from the stipulation, and (4) whether to ask the Court to set a briefing schedule for the fees motion.  Thomas Reply Decl. ¶ 34.

**C.    T&S' Time Devoted to Specific Projects is Compensable and Was Not Unnecessarily Duplicative or Excessive**

Academy summarily contends that T&S' time spent on several projects was excessive or otherwise non-compensable.  Opp. at 24-27.  Academy is wrong and Mr. Stiefel's data on which it relies is, again, fatally flawed and peppered with mistakes. *See* Pearl Reply Decl. ¶¶ 58-69; Rosen Reply Decl. ¶¶ 53-62.

**1.    T&S Time for its Search for Trial Counsel**

Academy objects to the time T&S spent recruiting trial counsel.  Opp at 24; Stiefel Decl. ¶¶ 70-71.  The time is compensable.  *See* Pearl Reply Decl. ¶ 68.  Moreover, some of the identified time entries included work after the "search" was over, and many activities unrelated to the search, such as a phone call with Relator "re deposition updates." *See* Stiefel Decl. ¶ 71 & Ex. O; *see also* Pearl Reply Decl. ¶ 69; Rosen Reply Decl. ¶ 56.

**2.    Paralegal Time**

Academy asserts that the work of eight of T&S paralegals should be reduced to zero because they were identified by their initials.  Opp. at 24-25; Stiefel Dec. ¶¶ 68-69, 98. Mr. Stiefel made his generic challenges to the time despite not having these paralegal's names.  *See* Pearl Reply Decl. ¶¶ 66-67; Rosen Reply Decl. ¶¶ 54-55.  This work is compensable.  *See* Pearl Reply Decl. ¶¶ 66-67.

Mr. Stiefel identifies only four examples of what he claims is administrative time. Stiefel Decl. ¶ 68(a)-(d).  In two of the examples, paralegals prepared binders.  Even

though that kind of work was necessary to managing the case and saved attorney time, T&S nonetheless wrote off a substantial amount of time for preparing of binders.  *See* Thomas Decl. ¶ 195.  In another example, disregarded by Mr. Stiefel, a paralegal organized approximately 500 files, received by T&S in disarray, from the *Sequoia Orange* case.  *See* Thomas Decl. ¶ 113; Thomas Reply Decl. ¶ 44; ECF No. 97 at 5 ("In light of *Sequoia Orange*, the Court denies the Government's motion to dismiss.…").

### 3. Drafting the Appeal Brief

Academy and Mr. Stiefel assert the time T&S spent on their Ninth Circuit answering brief was excessive.  Opp. at 25; Stiefel Dec. ¶ 65.  Mr. Stiefel is not an appellate lawyer.  *See* Pearl Reply Decl. ¶ 61.  And he demonstrated no familiarity with the legal issues in the case that enable him to form his opinion.  *See id*.

The Government's appeal was a make or break event.  *See* Rosen Reply Decl. ¶ 57.  The issues were novel and complicated, involving both statutory and constitutional law and appellate jurisdiction.  All the issues had to be addressed because the Court could have addressed both.  No appellate lawyer would have done less than full briefing given the stakes.  *See* Rosen Reply Decl. ¶ 57; *see also* Pearl Reply Decl. ¶¶ 61-64.

### 4. Reviewing Transcripts from the *Allied* Case

Academy claims time T&S spent reviewing the transcripts in the *Allied* case was excessive.  Opp. at 25; Stiefel Dec. ¶ 66.  But reviewing the transcripts of the *Allied* case was crucial to develop case strategies and discovery requests.  Thomas Decl. ¶ 134.  The same defense counsel firm defended the *Allied* case.  *Id.*  It involved FHA mortgage fraud False Claims Act claims similar to those here.  *Id.*  Reviewing the transcripts from that five-week trial assisted T&S to effectively and efficiently identify the types of documents to obtain in discovery to show elements such as scienter and materiality.  *Id.*  T&S would have spent much more time to prepare the case if T&S had not reviewed those transcripts and had to reinvent that wheel.  *See* Pearl Reply Decl. ¶ 65; Thomas Reply Decl. ¶ 40.

### 5. Preparing the Complaint and Amended Complaint

Mr. Stiefel's critique that time spent on the Amended Complaint was "massive,"

RELATOR'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

Stiefel Dec. ¶ 64, ignores the difficulties T&S faced and the intensive investigation needed. *See* Thomas Decl. ¶¶ 73-86; Thomas Reply Decl. ¶ 37; Pearl Reply Decl. ¶ 60.

The assertion that Relator's Complaint was copied from prior complaints is disingenuous.  Opp. at 25-26; Stiefel Decl. ¶ 63.  It is an attempt to resuscitate the Government's argument in its motion to dismiss, which the Court denied.  *See* ECF Nos. 60, 97; Thomas Reply Decl. ¶ 35.  Academy says "several of the paragraphs" of the Complaint were taken verbatim or close to verbatim, Opp. at 25, but the complaint had 167 paragraphs.  Academy's analysis actually illustrates that the core of the Complaint and Amended Complaint were unique and tailored to this case.  Thomas Reply Decl. ¶¶ 35-37.

## III. RELATOR'S COUNSEL'S FEES WORK AND TIME WAS NECESSARY AND APPROPRIATE DUE TO THE COMPLEXITY AND LENGTH OF THE CASE AND ACADEMY'S OPPOSITION

Academy contends that the fees motion work was excessive.  *See* Opp. at 26-27; Stiefel Decl. ¶¶ 72-81.  These complaints suffer the same kinds of flaws as its complaints about the merits work.  *See* Rosen Reply Decl. ¶¶ 59-62; Pearl Reply Decl. ¶¶ 70-78.  The fees work and time were necessary and appropriate given the circumstances.  *See, e.g.,* Pearl Reply Decl. ¶¶ 70-78

Neither Academy nor its expert has demonstrated any experience in making contested fees applications.  Neither acknowledges the complexities of preparing and defending this application.  Neither acknowledges Academy's responsibility for much of Relator's counsel's work, including work due to Academy's latest attempt to extend the life of this case by seeking last minute discovery.  *See* ECF No. 449.

### A. The Requested Fees Motion Work Are Not Excessive

Relying on a string cite of fees decisions that are factually inapposite, Academy argues that the fees requested for fees work is "facially unreasonable."  *See* Opp. at 26-27.[5]

---

[5] The facts here are very different from those in Academy's cited cases:  *See Dytch v. Lazy Dog Rest, LLC*, No. 16-CV-03358-EDL, 2019 WL 3928752, at *1-*2, *7 (N.D. Cal. Aug. 16, 2019) (disability access case lasting less than 3 years with one sole timekeeper); *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1285 (N.D. Cal. 2014) (fee motion was "vague and incomplete"); *Hernandez v. Spring Charter Inc.*, No. 19-CV-01479-TSH, 2020 (footnote continued)

According to Mr. Stiefel it is "wholly unreasonable" for Relator's counsel to have spent more than a thousand hours on fees for fees. Stiefel Decl. ¶ 72. He pulls a number out of the air to contend that the fees work fees should be limited to 400 hours. *Id*. ¶ 75.

Mr. Stiefel does not appear to have experience serving as fees counsel, does not engage with any of the evidence of the case's history, the complexities of this fees motion, or his client's tactics. *See* Pearl Reply Decl. ¶¶ 71-72. His opinions are based on his misunderstanding of the facts of this case and the law. *See* Pearl Reply Decl. ¶¶ 70-78; *see also Wit v. United Behavioral Health*, 578 F.Supp.3d 1060, 1086 (N.D. Cal. Jan. 5, 2022) (compensating 1,279 hours of fee motion work).

The record is transparent. Relator's counsel's fees work was necessary and appropriate. *See* Pearl Reply Decl. ¶¶ 70-78; Rosen Reply Decl. ¶¶ 9-11. They have made unusually massive more than sufficient billing judgment reductions of the claim. *See* Rosen Reply Decl. ¶¶ 65-67; Thomas Reply Dec. ¶¶ 49-50; Pearl Reply Decl. ¶¶ 71, 77.

**B.    Academy Unnecessary Increased Relator's Counsel's Fees Motion Work**

Contrary to Academy's narrative, Opp. at 4, 27-28, Relator's lawyers repeatedly tried to engage Academy to settle attorneys' fees early, and repeatedly worked to move the case to its conclusion. *See* Thomas Reply Decl. ¶¶ 3-17; Rosen Reply Decl. ¶¶ 12-19.

Academy grossly mischaracterizes the fees negotiations. Less than two weeks after the damages settlement, Mr. Thomas provided Academy's counsel Mr. McElroy a detailed overview of T&S' fees and expenses. Thomas Reply Decl. ¶ 6. Mr. McElroy demanded that he required all of T&S' time entries and expense invoices before making any counter-offer. *Id*. ¶ 7. Mr. Thomas settled a number of cases in the past with Mr. McElroy's firm.

WL 1171121, at *5 (N.D. Cal. Mar. 11, 2020) (fee motion and supporting declaration were "copied and pasted" from other fee motions); *Defenbaugh v. JBC & Assocs., Inc.*, No. C-03-0651 JCS, 2004 WL 1874978, at *14 (N.D. Cal. Aug. 10, 2004) (fees on fees time amounted to 29% of all hours, even though issues in "boilerplate" motion were "not novel or difficult"); *Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 1009 (N.D. Cal. 2012) ("not particularly complicated" fee motion had "a high degree of duplication and lack of specificity" leading to a 20% reduction by the court ); *Public.Resource.org v. U.S. Internal Revenue Serv.*, No. 13-CV-02789-WHO, 2015 WL 9987018, at *8 (N.D. Cal. Nov. 20, 2015) (merits took less than 2 years, fees motion lacked "particularly complex or novel issues," and fee declarations "consist[ed] largely of standard, non-case-specific language").

Mr. Thomas had never provided that level of information.  He offered to provide the time worked by each timekeeper for different stages of the case.  *Id.*  After Mr. McElroy did not agree to this offer, Mr. Thomas agreed to provide "the fees records in advance of filing the motion" in hopes that the parties could settle.  *Id.* ¶ 9.

Academy's assertion that "unbeknownst to Academy or its attorneys," T&S worked hard to prepare the materials Mr. McElroy requested ignores the facts.  Opp. at 27.  RBGG entered its appearance as "fees counsel of record" on January 4, 2023.  ECF Nos. 434, 435.  Academy's lawyers negotiated with RBGG for a schedule for Relator to provide a demand letter fully documented with time records a month and a half before the deadline to file a fee motion.  Thomas Reply Decl. ¶¶ 10-11; Rosen Reply Decl. ¶¶ 13-15.  Academy waited until the very last day to meet and confer about the fee claim.  Rosen Reply Decl. ¶ 16.

Contrary to Academy's spin, Relator agreed to Academy's request for an extension of time to file its Opposition.  Relator opposed only Academy's insistence that the hearing date be September 21, after Academy had agreed to a date in August, in the hope of getting the case concluded this year.  *See* Rosen Reply Decl. ¶¶ 18-19; ECF No. 444.

Simultaneously with its Opposition, Academy filed its Administrative Motion to serve post-judgment discovery, causing additional work, and hoping to delay resolution of the motion until next year.  *See* Opp. at 6 n.2; Rosen Reply Decl. ¶ 20.

**C.    Any Possible Administrative or Duplicative Time on the Fees Motion Has Been Eliminated By Billing Judgment Reductions**

Academy complains that T&S' time on the fees claim was excessive, duplicated RBGG's work, and administrative work.  *See* Opp. at 28-30; Stiefel Decl. ¶¶ 72-81.  Academy is wrong.  *See* Pearl Reply Decl. ¶ 77.  Much of that time was already heavily discounted by T&S' discrete and across-the-board reductions, amounting to $146,839.63.  Thomas Decl. ¶ 212.  T&S is now making an additional 40% across-the-board reduction of its fees work claim, bringing that claim down by $169,917.00 to a total of $233,635.88.  *Id.* ¶ 50.  T&S is also not claiming fees for its work since May 19, 2023, with an additional value of approximately $25,000.00.  Thomas Reply Decl. ¶ 49.

**D.      RBGG's Fees for Work Since May 19 Are Due to Academy's Tactics and Are Appropriately Proportion to the Stakes in the Case**

Contrary to Academy's argument, Opp. at 30, RBGG's work since May 19, 2023 (the cut-off date used in our Fee Motion) was appropriate and necessary.  Fees for this work should be included in the fees award.  *See Hum. Rts. Def. Ctr.*, 2021 WL 1176640, at **4, 14-15 (awarding all fees for fees claimed including those presented with a supplemental declaration); Rosen Reply Decl. ¶ 64.  We supplemented the claim to include work from May 20 through June 16, 2023, in order to give Academy more time to evaluate these time records, which mostly consists of time devoted to filing the Fee Motion.  *See* ECF No. 447; Rosen Reply Decl. ¶ 64.

With this Reply, RBGG has have further updated its fee claim, submitting our time for work from June 17 through August 13.  Rosen Reply Decl. ¶ 65 & Ex. E.  The enormous amount of work performed since June 16 is almost all due to our work addressing Academy's unusually aggressive Opposition and its attempt to take eleventh hour discovery.  *See id*. ¶ 65.  We have reduced the claim for the post-June 16 work by making discrete reductions that total $18,536.00, and further reduced the claim for that time by an additional 20%, amounting to $36,609.20.  *See id.* ¶ 66.  The total for RBGG's fees work from June 17 through August 13 is $146,436.80.  *See id.* ¶ 68 & Attachment 1.

We have been committing substantial additional time since August 13 to file this Reply, and likely will commit more through the September 21 hearing.  We estimate that, after billing judgment discounts, that work will have a billable value of at least $70,000.00.  Rosen Reply Decl. ¶ 67.  Compensation for that additional necessary work is of course subject to the Court's discretion.  *See* Rosen Reply Decl. ¶ 68 & Attachment 1 (chart of RBGG's fees work claim)

RBGG's and T&S' fees claim is for work that was necessary and appropriate as measured to the stakes involved.  The total fees requested for fees work are proportionate to the total merits work fees claim, constituting approximately 13% of that claim.

## IV.    THE COURT SHOULD AWARD RELATOR'S COUNSEL UP TO A 2.0 MULTIPLIER FOR T&S' MERITS WORK

Academy's opposition to any multiplier is off the mark, and the cases it cites are largely inapposite.  *See* Opp. at 15-19.  Relator's basis for seeking a multiplier is limited to the factors including the difficulty of the case and the unusual skill of merits counsel that were necessary to secure the extraordinary results.  Academy and Mr. Stiefel also do not seem to understand Relator's multiplier request, stating that it applies to both T&S' and RBGG's time, when Relator made clear that it is requesting the lodestar enhancement *only* for T&S' merits work and does not include any of RBGG's time.  *Compare* ECF No. 440 (Fee Motion) at 6, 8, 24-26, *with* Opp. at 15 and Stiefel Decl. ¶¶ 33, 47, 48.[6]

The Court has appropriate discretion to award a multiplier.  *See* Pearl Reply Decl. ¶¶ 79-78.  It is up to the Court whether billing rates and time T&S committed to getting the $38.5 million settlement is the appropriate fees award for the extraordinary result.  *See Perdue v. Kenny A.*, 559 U.S. 542, 544 (2010).

### CONCLUSION

For the foregoing reasons, Relator respectfully requests that the Court grant Relator's fee motion in full.

DATED:  August 18, 2023                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Sanford Jay Rosen*
        Sanford Jay Rosen

Attorneys for Relator GWEN THROWER

---

[6] Academy uses *United States ex rel. Polansky v. Executive Health Resource Inc.*, 599 U.S. 419 (2023) to minimize the result in this case.  Opp. at 19.  Our takeaway is that the case illustrates how extraordinary counsel's one-off victory was because two of the Justices signaled that they would trammel the False Claims Act by relegating private enforcement to the dust bin of history.