**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| United States of America ex rel. GWEN THROWER,<br><br>*Plaintiff - Appellant*,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>*Defendant - Appellee*. | No. 24-6247<br><br>D.C. No. 3:16-cv-02120-EMC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted September 15, 2025
San Francisco, California

Filed April 6, 2026

Before: Milan D. Smith, Jr. and Patrick J. Bumatay, Circuit
Judges, and J. Campbell Barker, District Judge.[*]

Opinion by Judge Bumatay

---

[*] The Honorable J. Campbell Barker, United States District Judge for
the Eastern District of Texas, sitting by designation.

2            THROWER V. ACADEMY MORTGAGE CORP.

## SUMMARY[**]

### False Claims Act / Attorneys' Fees

Affirming the district court's order regarding postjudgment interest on attorneys' fees awarded to the plaintiff under 31 U.S.C. § 3730(d)(2) following the court's confirmation of the settlement of her qui tam action under the False Claims Act, the panel held that the interest accrued from entry of the order awarding attorneys' fees, rather than from entry of the earlier order confirming the settlement.

Under 28 U.S.C. § 1961(a), interest is allowed on "any money judgment" and "shall be calculated" from "the date of the entry of the judgment." Agreeing with some circuits and disagreeing with others, the panel held that for a judgment to serve as a "money judgment" entitled to postjudgment interest, it must have identified parties and a definite and certain designation of the amount that the plaintiff is owed by the defendant. The panel held that because the district court's order confirming a settlement without designating the amount of attorneys' fees therefore was not a "money judgment," the district court correctly concluded that postjudgment interest ran from the date of the award of attorneys' fees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

THROWER V. ACADEMY MORTGAGE CORP.                    3

## COUNSEL

Sanford J. Rosen (argued) and Adrienne P. Harrold (argued), R. Van Swearingen, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California; J. Nelson Thomas, Thomas & Solomon LLP, Rochester, New York; for Plaintiff-Appellee.

Timothy P. Ofak (argued) and Joseph M. Katz (argued), Weiner Brodsky Kider PC, Washington, D.C.; Thomas M. McInerney, Ogletree Deakins Nash Smoak & Stewart PC, San Francisco, California; for Defendant-Appellant.

## OPINION

BUMATAY, Circuit Judge:

Gwen Thrower was awarded attorneys' fees, expenses, and costs in her False Claims Act ("FCA") action against her former employer, Academy Mortgage Corporation. The question in this appeal: when does postjudgment interest begin to accrue on those fees, costs, and expenses (collectively "attorneys' fees")? We have two possible answers here. It could be the day the district court approved the settlement of her FCA action, as Thrower asserts. Because Thrower became legally entitled to attorneys' fees on that date, she argues interest should accrue from then. Or it could be the date that the district court entered judgment awarding her the attorneys' fees, as the district court held. According to the district court, postjudgment interest typically runs from the point that those fees are "actually granted."

4        THROWER V. ACADEMY MORTGAGE CORP.

Under the law, interest is allowed on "any money judgment" and "shall be calculated" from "the date of the entry of the judgment." 28 U.S.C. § 1961(a). Because the district court's order confirming a settlement without designating the amount of attorneys' fees is not a "money judgment" on those fees, we affirm.

## I.

Thrower was a mortgage underwriter for lender Academy Mortgage Corporation. Academy took part in the Federal Housing Administration Direct Endorsement program, which allows lenders to underwrite and endorse eligible mortgages for Federal Housing Administration insurance without government review. If recipients default, the Department of Housing and Urban Development is on the hook for the loans. In 2016, Thrower sued Academy under the FCA, alleging that it had falsely certified compliance with the program's regulations. The government decided not to intervene. In fact, the government moved to dismiss the FCA action, which the district court denied.

Following years of discovery and litigation, Thrower and Academy settled. As part of the settlement, Academy agreed to pay $38.5 million to resolve the FCA allegations. Nearly $27 million would go to the United States Treasury and the rest would go to Thrower. *See* 31 U.S.C. § 3730(d)(2).

In mid-January 2023, Thrower and Academy agreed to dismiss the FCA claims with prejudice. The parties' stipulation expressly excluded Thrower's claim for attorneys' fees. These claims would "not be dismissed and [would] remain pending." "[A]ny disputes" regarding those fees would also "remain pending" before the district court. The parties' joint status report stated that "[t]he only

remaining issue" for the district court to resolve was Thrower's claim for attorneys' fees.

On January 27, 2023, the district court approved the settlement and entered an order incorporating the stipulation ("January 2023 Order"). The January 2023 Order dismissed Thrower's FCA claims against Academy with prejudice. But it expressly excluded Thrower's claims for attorneys' fees from dismissal. Those claims would "remain pending before the Court for disposition pursuant to a schedule to be set by the Court."

Months of dispute over attorneys' fees followed. Thrower sought over $13 million in fees and expenses, which Academy contested. Sixteen months after the settlement was entered, on May 31, 2024, the district court decided the fees dispute ("May 2024 Order"). It awarded Thrower $89,437.77 in expenses and $8,585,530.20 in attorneys' fees.

Over Thrower's objection, the district court later held that postjudgment interest on the attorneys' fees accrued from entry of the May 2024 Order—not from the January 2023 Order. Thrower timely appealed. We review a district court's award of interest on attorneys' fees for abuse of discretion. *See Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 702 (9th Cir. 1996).

## II.

### A.

This case involves the interplay of two federal statutes.

To begin, the FCA creates a mandatory fee-shifting scheme. A successful relator, including one who "settl[es] the claim," "shall . . . receive an amount for reasonable

6           THROWER V. ACADEMY MORTGAGE CORP.

expenses . . . plus reasonable attorneys' fees and costs."  31
U.S.C. § 3730(d)(2); *see In re Schimmels*, 127 F.3d 875, 877
n.1 (9th Cir. 1997) ("[P]rivate individuals who prosecute
meritorious *qui tam* actions are entitled to . . . reasonable
expenses, attorney's fees, and costs."); *Shaw v. AAA Eng'g
& Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000)
(recognizing an FCA relator's entitlement to reasonable
attorneys' fees under § 3730(d)(2)).

But the FCA doesn't establish when postjudgment
interest on those fees begins to accrue.  For that question, we
must turn elsewhere.       28 U.S.C. § 1961 governs
postjudgment interest in all civil matters in federal courts.  It
states,

> Interest shall be allowed on any money
> judgment in a civil case recovered in a district
> court.  Execution therefor may be levied by
> the marshal, in any case where, by the law of
> the State in which such court is held,
> execution may be levied for interest on
> judgments recovered in the courts of the
> State.  Such interest shall be calculated from
> the date of the entry of the judgment. . . .

28 U.S.C. § 1961(a).      So § 1961 ties the accrual of
postjudgment interest to the "date of the entry" of the
"money judgment."  And "postjudgment interest on a district
court judgment is mandatory."   *Air Separation, Inc. v.
Underwriters at Lloyd's of Lond.*, 45 F.3d 288, 290 (9th Cir.
1995).

So what constitutes a "money judgment"?  Some history
helps answer that question.  "[A]t common law, judgments,
whatever the cause of action, did not bear interest."

*Washington & G.R. Co. v. Tobriner*, 147 U.S. 571, 584–85 (1893).  But Congress changed that common-law rule.  In 1842, Congress first authorized interest on judgments, providing "[t]hat, on all judgments in civil causes hereafter recovered in the circuit or district courts of the United States, interest shall be allowed, and may be levied by the marshal, under process of execution issued thereon . . . [with interest] to be calculated from the date of the judgment. . . ."  Act of Aug. 23, 1842, 5 Stat. 516, 518 (1842).  At the time, it was understood that parties "should not [be] charged with interest before the final decree" as "[i]nterest is not generally allowable upon unliquidated damages."  *Mowry v. Whitney*, 81 U.S. 620, 653 (1871); *see also Moore-McCormack Lines, Inc. v. Amirault*, 202 F.2d 893, 897 (1st Cir. 1953) ("[T]he federal cases, at least the older ones, have tended to hold that interest [for an unliquidated claim] cannot be allowed from any date prior to the date of judicial ascertainment of the amount of damages.").

In 1948, Congress enacted the modern-day version of § 1961, using the term "money judgment" for the first time.  Act of June 25, 1948, 62 Stat. 957 (1948).  At the time, a "money judgment" was defined as "[o]ne which adjudges the payment of a sum of money, as distinguished from one directing an act to be done or property to be restored or transferred."  *Black's Law Dictionary* (3d ed. 1933).  In support, Black's Law Dictionary cited two cases: *Fuller v. Aylesworth*, 75 F. 694 (6th Cir. 1896), and *Pendleton v. Cline*, 85 Cal. 142 (1890).  In *Fuller*, then-Judge (and future President and Chief Justice) William Howard Taft defined a "money judgment" as one finding a defendant "absolutely liable to pay a sum certain to the plaintiff, and awards execution therefor[.]"  *Fuller*, 75 F. at 701.

8                THROWER V. ACADEMY MORTGAGE CORP.

This historical understanding of "money judgment" is consistent with the Third Circuit's definition of the term, which we've expressly adopted. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1101 (9th Cir. 2011). According to the Third Circuit,

> In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant. It need not, and generally does not, contain provisions for its enforcement.

*Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 275 (3rd Cir. 1984).

Thus, for a judicial action to qualify as a "money judgment" under § 1961, we require two elements: "(1) an identification of the parties for and against whom judgment is being entered, and (2) a definite and certain designation of the amount which plaintiff is owed by defendant." *Cubic Def. Sys.*, 665 F.3d at 1101 (simplified). Of course, an order may be sufficiently "definite and certain" without itself spelling out the exact dollar amount if the designation is "readily discernible" through the "mechanical task" of applying the order. *Id.* (simplified). And if the amount

specified in the judgment is later modified by the district court or an appellate court, interest on the revised award will run from the date of the original judgment. *See Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 676 (9th Cir. 1973) (When "the district court's determination" of attorneys' fees is "correct to the extent it was permitted to stand," "interest on a judgment . . . partially affirmed should be computed from the date of its initial entry.").

That a judgment must be readily enforceable—having identified parties and a sufficiently definite amount—fits with § 1961's focus on *executing* the money judgment. Under the statute, the "[e]xecution" of the "money judgment" itself may be effected by a federal marshal according to the laws of the state in which the issuing court sits. 28 U.S.C. § 1961(a). Similarly, the version of Rule 69(a) of the Federal Rules of Civil Procedure operative in 1948 provided that the "[p]rocess to enforce a *judgment for the payment of money* shall be a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a) (1948) (amended 2007) (emphasis added). Specifying that a "money judgment" must be able to be *paid* by a party and *executed* by a federal marshal shows that it must include a specified sum to be paid out to a specific party. Otherwise, how else could the "money judgment" be executed?

The requirement of an identified party and a sufficiently definite amount also serves "[t]he purpose of postjudgment interest": "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (simplified). Without specifying the amount of attorneys' fees, no "ascertainment of the damage" has occurred, and the plaintiff suffers no loss

from the lack of payment.  And any "loss of use of money due as damages from the time the claim accrues until judgment is entered" is covered by prejudgment interest. *See West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).

All this shows that, for a judgment to serve as a "money judgment" entitled to postjudgment interest, it must have identified parties and "a definite and certain designation of the amount which plaintiff is owed by defendant." *Cubic Def. Sys., Inc*., 665 F.3d at 1101 (simplified).

## B.

Only one of the two orders here has both (1) identified parties, and (2) a "definite and certain designation of the amount" of attorneys' fees. *Id.* (simplified). Thrower's preferred January 2023 Order does not. To be sure, the January 2023 Order approved the parties' settlement, which favored Thrower. In exchange for dismissing the FCA claim, Academy agreed to pay Thrower and the government $38.5 million. But the January 2023 Order expressly carved out Thrower's claims for attorneys' fees from dismissal. Instead, the order established that Thrower's claims for fees would "remain pending" and be decided according to a schedule set by the district court. The January 2023 Order thus provided no "definite and certain" amount Academy owed to Thrower on attorneys' fees. If Thrower sought to execute the January 2023 Order after its entry, Academy would have no idea how much it owed, and a marshal would also have no idea how much to collect.

In contrast, the May 2024 Order provided all the details needed for a "money judgment." It expressly granted Thrower's request for attorneys' fees from Academy. It thus identifies "the parties for and against whom judgment is being entered." *Cubic Def. Sys.,* 665 F.3d at 1101

(simplified).  And it provides the exact amounts Academy owes Thrower.    It awarded Thrower $8,585,530.20 in attorneys' fees and $89,437.77 for expenses.  So it easily meets the requirement for a "definite and certain designation of the amount which plaintiff is owed by defendant."  *Id.* (simplified).  Only after the May 2024 Order did Academy know the amount it owed and did Thrower suffer any losses from the lack of payment.  Thus, the district court properly concluded that the postjudgment interest on Thrower's attorneys' fees accrued starting from the May 2024 Order.

## C.

Based on a misreading of our precedent, Thrower offers an alternative test.  Citing *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995), Thrower asserts that interest should run from the judgment in which "the party's unconditional entitlement to attorneys' fees is secured." And because the FCA mandates the award of attorneys' fees for a successful relator, *see* 31 U.S.C. § 3730(d)(2), Thrower argues that interest should accrue from the January 2023 Order.  After all, under the FCA, that Order entitled her to fees and costs.

It's true that *Friend* contains the following sentence: "Interest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set."  *See Friend*, 72 F.3d at 1391–92.  But there's a major problem.  That sentence is not from the binding order. Instead, it's from the district court opinion attached as an appendix to the order.  *Id.*  So it isn't precedential.  In *Friend*, the only issue raised on appeal was whether the district court's prevailing-party analysis was consistent with *Farrar v. Hobby*, 506 U.S. 103 (1992).  *Id.* at 1388.  We agreed that it was and expressly "adopted [the district court's]

12            THROWER V. ACADEMY MORTGAGE CORP.

discussion and conclusion that plaintiffs [were] prevailing parties." *Id.* (attaching the district court order in the appendix).     But the district court's discussion of postjudgment interest came from a different section of the opinion that was neither appealed to nor decided by this court.  And no binding opinion of this court has adopted or cited the district court's discussion of postjudgment interest in *Friend*.   It's long established that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *New York Life Ins. Co. v. Gamer*, 106 F.2d 375, 376 (9th Cir. 1939) (simplified).

To be fair, several circuit courts have adopted Thrower's "entitlement" reading of postjudgment interest.  Take the Fifth Circuit.  According to that court, "[i]f a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment." *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 545 (5th Cir. 1983) (en banc) (per curiam), *overruled in part on other grounds by*, *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986) (en banc).     Several circuit courts have followed that example.  *See Jenkins ex rel. Agyei v. Missouri*, 931 F.2d 1273, 1276–77 (8th Cir. 1991) (adopting the *Copper Liquor* standard); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 494 (6th Cir. 2001) ("a 'money judgment' is the judgment that unconditionally entitles the prevailing party to reasonable attorney fees"); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052–53 (11th Cir. 1994) (calculating postjudgment interest from date of judgment securing entitlement to reasonable costs

and fees without announcing the amount); *Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988) ("Interest on an attorney fee award thus runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum.").

These circuits, though, largely justify their reading of § 1961 by appealing to policy or equitable concerns—not the law's text.  For example, the Eighth Circuit justifies its rule as "fully compensat[ing]" attorneys "for their successful efforts." *Jenkins*, 931 F.2d at 1277.  The Eighth Circuit feared that delaying "the accrual of post-judgment interest . . . until fee awards are quantified" may make attorneys "reluctant to take on complex and expensive litigation." *Id.*; *see also Drabik*, 250 F.3d at 494 (acknowledging that courts adopting the "entitlement" reading of § 1961 were guided by "policy" and "other equitable concerns").

But these policy considerations are unfounded.  Any losses attorneys may suffer from a delay between a merits judgment and a judgment quantifying attorneys' fees can be incorporated into the calculation of those fees. "Compensation for th[e] delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (simplified).  So these concerns can be incorporated into a lodestar calculation.  *See Eaves v. County of Cape May*, 239 F.3d 527, 541 (3d. Cir. 2001) (noting "appropriate form of a delay-in-payment adjustment to the lodestar amount" achieves complete compensation).  Thus, attorneys can be adequately compensated for any delay between the entitlement to fees and the fees award by topping up those fees.

14          THROWER V. ACADEMY MORTGAGE CORP.

More importantly, as the Supreme Court recognized in *Kaiser*, § 1961's text should be treated as "conclusive." *See Kaiser¸* 494 U.S. at 835 (simplified).   The Court thus rejected an interpretation of § 1961 as unsupported by its text even if sound policy would say otherwise. *Id.* (declining to read "date of judgment" as the date of the "verdict" even if it resulted in "the plaintiff bearing the burden of the loss of the use of the money from verdict to judgment").   Instead, the Court left policy considerations on the proper "allocation of costs accruing from litigation" as "a matter for the legislature, not the courts." *Id.*  As discussed above, running postjudgment interest from the date of entitlement to fees would contradict § 1961's plain text.

We thus decline to depart from our requirement of "a definite and certain designation of the amount which plaintiff is owed by defendant" before starting the accrual of postjudgment interest. *See Cubic Def. Sys., Inc.,* 665 F.3d at 1101 (simplified).   And we are not alone in this view. Several of our sister circuits share our conclusion.   *See Eaves*, 239 F.3d at 541 ("[P]ost-judgment interest does not begin to run until the court fixes the amount owed—in other words, it commences upon the entry of the 'money judgment.'"); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc*, 962 F.2d 1470, 1476 (10th Cir. 1992) ("Any available postjudgment interest began to accrue on . . . the date the fees were meaningfully ascertained and included in a final, appealable judgment."); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 662 (7th Cir. 1985) ("[P]laintiffs may collect interest on attorney's fees or costs only from the date that the award was entered.").

## III.

Because the May 2024 Order is the only judgment that provides "a definite and certain designation of the amount" of the attorneys' fees owed to Thrower, we affirm.

**AFFIRMED**.