J. NELSON THOMAS[*]
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York  14607-2152
Telephone:    (585) 272-0540
nthomas@theemploymentattorneys.com

[*]admitted *pro hac vice*

SANFORD JAY ROSEN – 062566
VAN SWEARINGEN – 259809
ADRIENNE PON HARROLD – 326640
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
srosen@rbgg.com
vswearingen@rbgg.com
aharrold@rbgg.com

Attorneys for Relator GWEN THROWER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GWEN THROWER,<br><br>Plaintiff,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | Case No. 16-CV-02120-EMC<br><br>**RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE**<br><br>Judge:  Hon. Edward M. Chen |

[6032929.16]

Case No. 16-CV-02120-EMC

## TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 1

ARGUMENT ................................................................................................................... 4

I.  THIS COURT HAS THE POWER TO CONDUCT A REMAND-
    CONSISTENT REVIEW OF THE LODESTAR AND SHOULD DO SO .............. 4

    A.  This Court Must Conform the Fee Award to Both the Ninth Circuit's
        Holding Here That the Multiplier Factors Belong in the Lodestar
        Analysis and New Intervening Controlling Authority in *LA
        International* ..................................................................................................... 4

    B.  The Court Has Jurisdiction to Revisit the Lodestar on Remand .................... 5

    C.  Academy's Argument as Previewed in the Joint Statement Misreads
        the Ninth Circuit's Opinion and Erroneously Relies on Res Judicata ........... 8

II. THE COURT SHOULD RECALCULATE THE LODESTAR BY
    APPLYING CURRENT MARKET RATES FOR T&S'S ATTORNEYS'
    MERITS WORK ................................................................................................... 9

CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*,
139 F.4th 773 (9th Cir. 2025) .................................................................................. 6

*Bynoe v. Baca*,
966 F.3d 972 (9th Cir. 2020) .................................................................................. 8

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
100 F.3d 691 (9th Cir. 1996) .................................................................................. 6

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ............................................................................. 5, 6

*In re Molasky*,
843 F.3d 1179 (9th Cir. 2016) ................................................................................ 8

*LA International Corporation v. Prestige Brands Holdings, Inc.*,
168 F.4th 608 (9th Cir. 2026) ................................................................................. 5

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................... 9

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ............................................................................................... 9

*Stacy v. Colvin*,
825 F.3d 563 (9th Cir. 2016) .............................................................................. 6, 7

*Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2025 WL 2998163
(N.D. Cal. Oct. 24, 2025) ...................................................................................... 10

*United States ex rel. Thrower v. Acad. Mortg. Corp.*,
172 F.4th 695 (9th Cir. 2026) ................................................................................. 9

*United States ex rel. Thrower v. Acad. Mortg. Corp.*,
172 F.4th 703 (9th Cir. 2026) ...................................................................... 3, 4, 7, 8

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995) .................................................................................... 5

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) ................................................................................ 6

*United States v. Thrasher*,
483 F.3d 977 (9th Cir. 2007) .................................................................................. 5

*United States v. United States ex rel. Thrower*,
968 F.3d 996 (9th Cir. 2020) .................................................................................. 1

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT
OF THE NINTH CIRCUIT'S MANDATE

*Wojciechowski v. Kohlberg Ventures, LLC*,
   923 F.3d 685 (9th Cir. 2019) ........................................................................................ 9


**RULES**

ABA Model R. Prof'l Conduct 1.5 ................................................................................ 5, 10

Cal. R. Prof'l Conduct 1.5 ................................................................................................ 10

Fed. R. Civ. P. 60 ............................................................................................................... 7


**OTHER AUTHORITIES**

Erin Mulvaney, *Top Lawyers' Fees Have Skyrocketed. Be Prepared to Pay $3,400
   an Hour*, WALL STREET JOURNAL (Feb. 18, 2026) ....................................................... 10

Thomson Reuters Institute and Georgetown Law Center on Ethics in the Legal
   Procession, *2025 Report on the State of the US Legal Market* .................................. 9

Thomson Reuters Institute and Georgetown Law Center on Ethics in the Legal
   Procession, *2026 Report on the State of the US Legal Market* ................................ 10

U.S. Dep't of Justice, Academy Mortgage Corporation Agrees to Pay $38.5 Million
   to Settle False Claims Act Allegations Related to Mortgages Insured by the
   Federal Housing Administration (Dec. 14, 2022) ......................................................... 2

The Court directed the parties to brief "whether the lodestar should be recalculated in light of the Ninth Circuit's mandate." ECF No. 542. The answer is "yes." The parties agree that the Court must modify the fee award; their only dispute is how to do so. To correctly apply both the panel's decision and controlling Ninth Circuit law, the Court should eliminate the 1.75 multiplier and recalculate the lodestar in light of recent, controlling Ninth Circuit law by applying appropriate market rates to the hours for which this Court awarded Relator Gwen Thrower's ("Relator") counsel, Thomas & Solomon LLP ("T&S"), for its merits work. Defendant Academy Mortgage Corporation ("Academy") asks this Court to simply eliminate the multiplier and otherwise disregard Ninth Circuit law, including the law as discussed in the panel's decision and the scope of its mandate.

If the panel had intended that this Court only eliminate the multiplier and not revisit the lodestar, it would have said so in its opinion—and certainly in its mandate. Instead, the panel issued a general remand, which requires this Court to use the correct legal standards in setting market rates. In doing this, the Court should follow intervening Ninth Circuit precedent requiring the Court to use current market rates for attorneys of comparable skill, experience, and reputation performing comparable work. The Court should therefore (1) vacate its award of a 1.75 multiplier, and (2) recalculate T&S's merits lodestar by setting attorney hourly rates at current market rates that subsume all relevant lodestar factors into the rates—including the extraordinary results factor—and that include the significant market rate increase since the Court issued the fee award over two years ago.

## FACTUAL AND PROCEDURAL BACKGROUND

Relator was the first relator in the 150-year history of the False Claims Act ("FCA") to defeat a Government motion to dismiss. The Government appealed, explaining "no court had ever permitted the continuation of a qui tam action in the United States' name that the United States sought to end." ECF No. 500 at 21 (quoting Government). The Ninth Circuit dismissed for lack of appellate jurisdiction and acknowledged the rarity of the result. *United States v. United States ex rel. Thrower*, 968 F.3d 996, 1008–09 (9th Cir. 2020) ("[T]his is the first time a district court in our circuit has *ever* found the

Government's argument for dismissal lacking."). T&S continued to litigate the case and ultimately secured a $38.5 million settlement, restoring almost $27 million to the U.S. Treasury. ECF No. 500 at 20-21. The Department of Justice lauded the victory.[1]

On January 27, 2023, the Court dismissed the merits claims pursuant to the settlement. ECF No. 438. On May 31, 2023, Relator filed her motion for statutory attorneys' fees. ECF No. 440. T&S's hourly rates were supported by her counsel's declarations, ECF Nos. 440-1, 440-2, and a fees expert's declaration that analyzed relevant market factors, ECF No. 440-3. Academy opposed the motion, prompting post-judgment fees litigation. *See* ECF Nos. 442, 448, 448-1, 448-2, 449. Relator provided additional evidence substantiating T&S's 2023 billing rates. *See* ECF Nos. 456-1, 456-2, 456-3, 456-4; *see also* ECF No. 500 at 5-6.

On January 11, 2024, the Court held a hearing on Relator's fees motion. *See* ECF No. 482. The Court noted that T&S had sought and obtained lower rates in prior cases in the same district. *See id.* at 4:11-7:12. When Relator explained that, unlike those prior cases, Relator's case was "extraordinary" and "took extraordinary skill," the Court inquired, "wouldn't the complication of the case and the results … be accounted for in the multiplier aspect as opposed to the rates?" *Id.* at 5:14-6:11. The Court later stated that "[m]any things are accounted for" in the lodestar, but "the extraordinary result" of this case may be a factor to account for with "a significant multiplier." *Id.* at 11:14-12:7.

In its May 31, 2024 fee order, the Court found that "[t]he rates requested are on the high end of the scale for large firms in the area, though not entirely out of range." ECF No. 500 at 12. The Court decided that it was "difficult to simply disregard [T&S's] sworn statements" in prior cases, requesting rates that were notably lower. *Id.* at 13. The Court pegged T&S's attorneys' rates to those T&S requested in a 2021 case in this district,

---

[1] *See* U.S. Dep't of Justice, Academy Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations Related to Mortgages Insured by the Federal Housing Administration (Dec. 14, 2022), https://www.justice.gov/opa/pr/academy-mortgage-corporation-agrees-pay-385-million-settle-false-claims-act-allegations.

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE

"increased by 20% to account for year-over-year inflation." *Id.* at 14. The Court did not find that the rates it awarded were prevailing market rates. *See generally id.* at 13-14.

The Court then applied a 1.75 multiplier to T&S's merits lodestar. *Id.* at 19-24. The Court rejected Academy's argument that the bases for the multiplier had already "been accounted for in … hourly rates," stating "the purpose of the multiplier is to account for factors that are not already incorporated into the rates that attorneys charge." *Id.* at 19-20. The Court explained enhancement was necessary "to account for T&S's substantial, successful and heroic work that kept this case alive, allowing for the unlikely, positive settlement in Relator's favor." *Id.* at 24. The Court found T&S got an exceptional result through superior attorney performance, winning a two-front "battle[]," "against stacked odds," achieving a win that "was if not the first of its kind, very rare." *Id.* at 21, 23.

Academy appealed only the multiplier. *See* ECF No. 519 at 6. On April 6, 2026, a divided Ninth Circuit panel reversed the award of the multiplier. *United States ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 703 (9th Cir. 2026). The panel majority agreed that T&S's efforts were "Herculean." *Id.* at 711. However, the majority held that "[t]he flaw in the district court's analysis was not a failure to adequately show an exceptional result or extraordinary investigative efforts," but "[t]he critical issue is that it didn't provide specific evidence for why the lodestar method could not reflect T&S's true market rate." *Id.* at 711. Thus, the majority deemed T&S's exceptional results and investigative efforts to be "already subsumed into the lodestar calculation." *Id.* at 712.

Judge M. Smith disagreed with the majority's "conclu[sion] that an exceptional result is ordinarily subsumed [in the lodestar] as a reflection of the novelty or complexity of the issues." *Id.* at 714 (internal quotation marks omitted). He concluded that "[w]here attorneys go above and beyond the ordinary levels of competence, diligence, and zealous advocacy, district courts have discretion to fashion an attorney's fee award that reflects the 'true market value' of their performance." *Id.* at 717-18.

Both the majority opinion and partial dissent noted that the lodestar was not before the Ninth Circuit. *Id.* at 708 ("Academy appeals the award of the multiplier."); *id.* at 714

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE

n.3 (Smith, M., J., concurring in part and dissenting in part) ("The lodestar calculation is not raised on appeal."). The Ninth Circuit remanded with no further instructions. *Id.* at 713 ("For these reasons, we reverse the award of a multiplier and remand.").

This Court granted Relator's administrative motion to schedule a status conference. ECF Nos. 534, 535, 537. The parties filed a joint statement setting forth their differing positions on the issues remaining on remand. ECF No. 541. The Court ordered further briefing on "whether the lodestar should be recalculated in light of the Ninth Circuit's mandate," ECF No. 542, and vacated the status conference, ECF No. 546.

## ARGUMENT

**I.    THIS COURT HAS THE POWER TO CONDUCT A REMAND-CONSISTENT REVIEW OF THE LODESTAR AND SHOULD DO SO**

**A.    This Court Must Conform the Fee Award to Both the Ninth Circuit's Holding Here That the Multiplier Factors Belong in the Lodestar Analysis and New Intervening Controlling Authority in *LA International***

Eliminating the 1.75 multiplier and reexamining the lodestar would be the most faithful execution of the Ninth Circuit's decision, to take account of the unique circumstances of this case in "a straight application of the lodestar method." *Thrower*, 172 F.4th at 707. In its fee order, this Court repeatedly explained that it did not double count the unprecedented and extraordinary result due to counsel's exceptional performance factors in the lodestar rates. *See* ECF No. 500 at 19-24. These factors were applied only to the multiplier. *See id*. The Ninth Circuit clarified that all the results and performance factors should be accounted for in the lodestar rates. *See Thrower*, 172 F.4th at 707, 709-12. Since this Court did not do that, it must revisit the lodestar on remand to ensure that its award complies with the Ninth Circuit's decision and that it is a reasonable award. Simply eliminating the multiplier and leaving T&S's rates unchanged would unreasonably omit those considerations from the fee award.

In addition, new controlling authority compels reconsideration of the T&S hourly rates determination. After this Court issued its fee award, the Ninth Circuit decided *LA International Corporation v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 625 (9th Cir.

2026), which vacated a fee award where the district court similarly "set counsel's rates based on what the attorneys had been awarded for handling a prior contract dispute, with a slight adjustment for the complexity of the case and inflation." *LA International*'s main focus was on the district court's error that small law firms should not receive Big Law rates. *Id.* at 626. But the Ninth Circuit also specifically held that a district court abuses its discretion when it determines rates by relying on rates awarded in an earlier case, even with adjustments, rather than applying market rates for attorneys of comparable skill, experience, and reputation performing comparable work. *Id.* at 624-25.

In its May 31, 2024, Order this Court incorrectly set T&S's hourly rates using rates T&S had requested in a prior and distinguishable case. *See* ECF No. 500 at 12-14. The Court derived T&S's rates solely from rates T&S proposed in a simple 2021 Fair Credit Reporting Act class action that settled in just over a year. *See id.* at 12-14 & n.4; ECF No. 456 at 9; ECF No. 456-3 at 3-5. Moreover, the attorneys' fees in that prior case were cabined as a percentage of the settlement fund; and T&S had adopted the rates of their co-counsel, which they later learned were substantially below market. *See* ECF No. 456 at 9; ECF No. 456-3 at 3-5. This Court adjusted those rates only for inflation, even though it found T&S's requested rates were within the relevant San Francisco market. ECF No. 500 at 12-14. That methodology is wholly inconsistent with *LA International*.

**B.    The Court Has Jurisdiction to Revisit the Lodestar on Remand**

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)). Under the mandate rule, this Court must execute the appellate court's mandate. *Id.* "[W]hatever was before [the Ninth Circuit], and disposed of by its decree, is considered finally settled." *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (internal quotation marks omitted). However, this Court "may consider and decide any matters left open by the mandate," including "already final determinations" if the mandate allows it. *Id.* (internal quotation marks omitted).

This Court is limited by a remand only "when the scope of the remand is clear," and

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE

may "decide anything not foreclosed by the mandate." *Hall*, 697 F.3d at 1067. "[W]hen a court is confronted with issues that the remanding court never considered, the 'mandate[ ] require[s] respect for what the higher court decided, not for what it did *not* decide.'" *Id.* (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)). Thus, the relevant inquiry here is whether granting Relator's request is consistent with the mandate and thus requires an assessment of the "scope of remand." *Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 787-88 (9th Cir. 2025). Because the Ninth Circuit issued only a general remand, and did not affirm the lodestar award, this Court must reset the lodestar in line with current Ninth Circuit case law.

Post-mandate proceedings include revisiting prior determinations, especially where reexamination is logically part of implementing the mandate or is not prohibited by it. In *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016), the remand order directed an ALJ to further evaluate "step 5" of a multi-step disability-related analysis. The ALJ on remand "did something that the mandate neither required nor prevented her from doing," which was "reconsider step 4" of the analysis, as implementing the remand order logically meant the ALJ needed to "revisit" the underlying analysis relating to the employee's ability to perform the job (step 4). *Id.* at 568-69. The Ninth Circuit held "[t]he ALJ did not exceed her authority" because the remand was "broad" and reviewing the remanding court's opinion "holistically" demonstrates that it "did not preclude the ALJ from taking new evidence relevant to the step 4 determination." *Id.*

Specifically related to fee awards, in *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697-99 (9th Cir. 1996), the Ninth Circuit vacated a fee award with a 2.0 multiplier based on the factor of contingent risk, and remanded. On remand, the district court again applied a 2.0 multiplier, relying on different factors. *Id.* at 695, 699. Back on appeal, defendants argued that the district court should have just "reduced the multiplier on remand." *Id.* at 699. The Ninth Circuit "disagree[d]" and held that "[a]s long as the district court's 2.0 multiplier can be justified on the bases it mentioned in its remand decision—without regard to contingency—it may be upheld." *Id.*

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT
OF THE NINTH CIRCUIT'S MANDATE

Here, the panel's opinion makes clear that Relator's request for a renewed lodestar fits within the scope of the remand. The Ninth Circuit did not decide that the lodestar amount was reasonable and fully compensated T&S; instead, it reversed the multiplier because this Court "didn't provide specific evidence for why the lodestar method could not reflect T&S's true market rate." *Thrower*, 172 F.4th at 711. The Ninth Circuit deemed the exceptional result due to superior attorney performance factors were "already subsumed into the lodestar calculation." *Id.* at 712. The panel did not direct this Court to just mechanically subtract the multiplier, and it expressly acknowledged the lodestar was not before it. *See id.* at 708, 713, 714 n.3. Recalculating the lodestar in light of the Ninth Circuit's reversal is "something that the mandate neither required nor prevented [this Court] from doing." *Stacy*, 825 F.3d at 569. If the Ninth Circuit had intended something as radical as locking this Court into its previous lodestar, even where contrary to current Ninth Circuit case law, the panel would have made that explicit in its mandate.

In addition to its authority under the Ninth Circuit mandate to recalculate the lodestar to take account of the extraordinary results factor, procedurally, the Court should also treat Relator's request as one for reconsideration or relief from the prior fees order under Federal Rule of Civil Procedure 60(b) so that it can apply applicable fees calculation law. Rule 60(b) permits a court to relieve a party from a final judgment for specified reasons, including where "it is based on an earlier judgment that has been reversed," "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ P. 60(b)(5), (6). Here, the Ninth Circuit reversed the fee award in material part and changed the applicable legal framework by holding that the factors previously used to support the multiplier cannot support an enhancement because they must be subsumed in the lodestar. If those factors are not properly accounted for in the lodestar, the result would be an inequitable and incomplete fee award, contrary to Congress's intent that Relator's counsel be reasonably compensated.

That inequity is highlighted by the "post-judgment change[] in law" in *LA International*, which independently warrants relief under Rule 60(b)(6). *Bynoe v. Baca*,

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT
OF THE NINTH CIRCUIT'S MANDATE

966 F.3d 972, 983 (9th Cir. 2020).  Given that *LA International* clarified the law governing the setting of billing rates, making it clear that this Court did not set T&S's rates using the correct criteria, the "nature of the legal change" and the "relationship between the change in law and the challenged judgment" require the Court to reconsider T&S's billing rates. *Id.*  Relator also "exercised diligence," *id.*, alerting the Ninth Circuit of this decision.  *See* ECF No. 533-1 at ¶ 2, Ex. A (Relator's Rule 28(j) letter).  The Ninth Circuit panel opinions did not address *LA International*.  Thus, this Court must consider the application of this new precedent in the first instance.[2]

### C.    Academy's Argument as Previewed in the Joint Statement Misreads the Ninth Circuit's Opinion and Erroneously Relies on Res Judicata

Academy reads too much into the panel's statement that the relevant considerations were subsumed in the lodestar.  *See* ECF No. 541 at 13-14.  Those statements actually support Relator's request that this Court should expressly subsume all relevant factors into calculating the hourly rate, including the effort and results of counsel.  Notably, the only issue Academy appealed was the multiplier.  The panel did state that the district court had "made no finding" that the lodestar undervalued T&S's market value, the evidentiary showing necessary to justify an enhancement.  *Thrower*, 172 F.4th at 709-12.  But the absence of such a finding does not amount to an appellate holding that the hourly rates were set under the correct methodology, much less that the rates satisfy the intervening requirements of *LA International*.  The panel majority's analysis established that the extraordinary-result consideration belongs within the lodestar and could not be counted through a multiplier.[3]

Res judicata, which Academy relies on in the Joint Statement, has no relevance here.  *See* ECF No. 541 at 11-12.  Claim preclusion concerns the effect of a final judgment

---

[2] Intervening controlling authority is also a recognized exception to law of the case and the rule of mandate.  *See In re Molasky*, 843 F.3d 1179, 1184 n.5 (9th Cir. 2016).

[3] The panel majority separately analyzed T&S's investigation efforts and held T&S's investigative time and labor were compensated through the hours awarded.  *See id.* at 11-12.  Relator does not seek compensation for additional hours on remand.

in a later action; it does not restrict the courts' authority to reconsider determinations within the same action. *See Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019). Relator's request is in the same action, following appellate remand. The relevant question is therefore whether the requested relief is foreclosed by the appellate mandate or barred by law of the case. It is legally irrelevant that Relator did not appeal the lodestar. The panel majority only reversed the multiplier and did not hold that the underlying lodestar was consistent with fees law.

## II.   THE COURT SHOULD RECALCULATE THE LODESTAR BY APPLYING CURRENT MARKET RATES FOR T&S'S ATTORNEYS' MERITS WORK

To make an award fully consistent with the Ninth Circuit's mandate and *LA International*, the Court should set T&S's attorneys' rates to include the factors of (1) year-over-year increases in attorney rates and delays in payment, and (2) extraordinary results due to superior attorney performance. The Court can start with T&S's requested 2023 rates, as the Court already found they were fully supported by extensive evidence. *See* ECF No. 500 at 5-6, 11-12; *see also* ECF Nos. 440, 440-1, 440-2, 440-3, 456, 456-1, 456-2, 456-3, 456-4.

If the starting point is T&S's requested 2023 rates, "[c]ompensation for th[e] delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *United States ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 695, 702 (9th Cir. 2026) (post-judgement interest opinion) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010)); *see Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). Recent data confirms that relevant market billing rates increased at least 20% since 2023. For example, Thomson Reuters reported average worked-rate growth of 6.5% in 2024 and another 7.3% in 2025.[4] Reporting in 2026 shows

---

[4] Thomson Reuters Institute and Georgetown Law Center on Ethics in the Legal Procession, *2025 Report on the State of the US Legal Market*, at 7, https://www.thomsonreuters.com/en-us/posts/wp-content/uploads/sites/20/2025/01/State-of-the-US-Legal-Market-Report-2025.pdf; Thomson Reuters Institute and Georgetown (footnote continued)

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE

this trend has accelerated with partners rates having increased 30% or more over the last three years.[5]  Notably, the increases in market rates alone do not include the extraordinary results factor that the Ninth Circuit panel held should be included in the lodestar because those data are for fees for services, the results of which usually are not known until after bills are presented and paid.  To adjust T&S's requested 2023 rates to closely approximate relevant and appropriate market rates in 2026—that take into account T&S's superior attorney performance that caused an extraordinary result—the Court should apply at least a 30% increase to the base requested 2023 rates.  The spreadsheet appended to this brief calculates present-day comparable market rates by using T&S's 2023 rates and increasing them by 30%, considering all the appropriate factors, including the extraordinary result.[6]

Relator's calculations carefully preserve all of the Court's reductions: **(1)** Relator's application of the increased rates account for the Court's reductions to the hours awarded (by applying the same proportion of reduction of hours).  *See* ECF No. 500 at 25-30.  **(2)** Relator applied the Court's decision that T&S attorney Jonathan Ferris be compensated at an associate rate rather than a partner rate.  *See id.* at 14.  Based on our research, his 2026 non-partner rate should be at least $850.[7]  **(3)** To simplify matters, Relator does not ask the Court to revisit its reduction of **(a)** paralegal work recovery, ECF No. 500 at 16-17;

---

Law Center on Ethics in the Legal Procession, *2026 Report on the State of the US Legal Market*, at 6, https://www.thomsonreuters.com/en-us/posts/wp-content/uploads/sites/20/2026/01/2026-State-of-the-US-Legal-Market.pdf.

[5] *See, e.g.*, Erin Mulvaney, *Top Lawyers' Fees Have Skyrocketed. Be Prepared to Pay $3,400 an Hour*, WALL STREET JOURNAL (Feb. 18, 2026), https://www.wsj.com/business/lawyer-hourly-rate-bill-3400-807cf6ce (describing that partner rates among top firms "increased by 16% on average last year").

[6] Moreover, in the fee-paying private legal marketplace, clients may increase their attorneys' compensation if they achieve extraordinary results, as is permitted by the Rules of Professional Conduct.  *See* Cal. R. Prof'l Conduct 1.5 ("results obtained" is a factor in determining whether rates are reasonable); ABA Model R. Prof'l Conduct 1.5 (same).

[7] *See* ECF No. 500 at 14 (identifying Mr. Ferris is a 2012 law school graduate); *see e.g.*, *Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2025 WL 2998163, at *6-*7 (N.D. Cal. Oct. 24, 2025) (order approving attorneys' fees, including awarding requested rates); ECF No. 1058 at 35, 43, No. 17-CV-03962-HSG (in 2025, counsel declaration requesting $925 for a 2009 law school graduate and $850 for 2015 law school graduate, both of whom were not partners).

RELATOR'S BRIEF REGARDING WHETHER THE LODESTAR SHOULD BE RECALCULATED IN LIGHT OF THE NINTH CIRCUIT'S MANDATE

**(b)** Rosen Bien Galvan & Grunfeld LLP merits work fees, *id.* at 17-19; or **(c)** any fees for work on the fees application that preceded the Ninth Circuit appeal, *id.* at 30-36; *see also* ECF No. 519 at 5-10.[8]

In the spreadsheet, Relator applied the 30% rate increase to all the Court-awarded attorneys' fees included in its May 31, 2024 Order, with no reduction in the new lodestar amount due to Academy having paid the originally awarded lodestar amount in July 2024. The Court may want to conduct further proceedings or order further briefing and evidence concerning current rates, how the private market treats extraordinary results in setting rates, and any impact the partial payment should have in determining the dollar amount of any additional lodestar fees that Academy would pay Relator's attorneys.

## CONCLUSION

Relator respectfully requests the Court to (1) eliminate the multiplier portion of the award; and (2) recalculate T&S's merits work lodestar by applying current attorney market rates that take account of the extraordinary result in the case, increasing the lodestar by $2,950,618.33, or order such additional proceedings as the Court deems appropriate to determine the appropriate lodestar award.

DATED:  July 22, 2026                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Sanford Jay Rosen*
      Sanford Jay Rosen

Attorneys for Relator GWEN THROWER

---

[8]  Only if the merits lodestar is recalculated would Relator apply by later motion for reasonable fees for work to secure such result.

## RELATOR'S PROPOSED ADJUSTMENTS TO T&S'S MERITS LODESTAR USING CURRENT MARKET HOURLY RATES, INCLUDING ACCOUNTING FOR EXTRAORDINARY RESULT

**Table 1: Relator's Requested 2023 Rates and Proposed 2026 Rates**

| Timekeeper | Role/ Class | Hours Requested in 2023 Fee Motion | Rate Requested in 2023 Fee Motion | Increase to Account for Extraordinary Result and Delay in Payment* | Adjusted 2026 Rate | Total at New Rates | Court-Awarded Rates in Fees Order | Total Under May 31, 2024 Fees Order |
|---|---|---|---|---|---|---|---|---|
| J. Nelson Thomas | Partner/ 1993 | 2,558.5 | $1,200 | 30% | $1,560.00 | $3,991,260.00 | $888 | $2,271,948.00 |
| Jonathan Ferris** | Associate/ 2012 | 2,956.9 | $800 | -- | $850.00 | $2,513,365.00 | $630 | $1,862,847.00 |
| Michael Lingle | Partner/ 2000 | 512.8 | $1,000 | 30% | $1,300.00 | $666,640.00 | $860 | $441,008.00 |
| Jessica Lukasiewicz | Partner/ 2008 | 74.0 | $925 | 30% | $1,202.50 | $88,985.00 | $840 | $62,160.00 |
| Conor Tallet | Associate/ 2018 | 623.2 | $550 | 30% | $715.00 | $445,588.00 | $437.5 | $272,650.00 |
| **Total Attorney Recovery (Before Reduction in Hours)** | | | | | | $7,705,838.00 | | $4,910,613.00 |
| **Paralegal Recovery in Fees Order*** | | | | | | $178,681.00 | | $178,681.00 |
| **Total T&S Merits Lodestar Before Reduction in Hours** | | | | | | $7,884,519.00 | | $5,089,294.00 |

\* Relator's brief (at pages 9-11) sets forth how 30% is the appropriate adjustment to bring Relator's rates requested in her 2023 fee motion to current market rates, and to account for the extraordinary results due to superior attorney performance and delay in payment.

\*\* Relator's brief explains (at page 10, footnote 7) the methodology for determining Mr. Ferris's 2026 associate-level rate.

\*\*\* This is the same paralegal recovery set forth in May 31, 2024 fees order, with no adjustments.

**Table 2: Applying Reductions in May 31, 2024 Fees Order**

| Item | May 31, 2024 Fees Order | 2026 Rates Calculation |
|---|---|---|
| T&S Merits Lodestar Before Reductions | $5,089,294.00 | $7,884,519.00 |
| Adjustment Factor (Renewed Calculation / Fees Order Lodestar) | | 1.55 |

| Prior Reduction Category | Reduction in May 31, 2024 Fees Order | Proportional Adjustment Factor | Updated Proportional Adjustment |
|---|---|---|---|
| Email entry reductions | $2,740.00 | 1.55 | $4,244.91 |
| Redundant work on initial complaint | $242,920.75 | 1.55 | $376,341.64 |
| Time spent locating trial counsel | $115,400.00 | 1.55 | $178,781.87 |
| **Total Reduction** | $361,060.75 | 1.41 | **$559,368.42** |

**Table 3: Total Requested in Recalculation**

| Calculation | Amount |
|---|---|
| Total T&S merits lodestar using | $7,884,519.00 |
| Less reductions previously | ($559,368.42) |
| Updated T&S lodestar | $7,325,150.58 |
| Prior T&S merits lodestar in May | $4,374,532.25 |
| **Delta between awarded lodestar in May 31, 2024 fees order and Relator's proposed adjustment to lodestar (additional amount not yet paid by Academy)** | **$2,950,618.33** |

\* Final T&S lodestar, after reductions and pre-multiplier, in May 31, 2024 fees order table (ECF No. 500 at 2).

[6040512.1]